UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2008 JUL 24  AM 9:38
LORETTA G. WHYTE
CLERK

| | |
|---|---|
| STEPHEN MARSHALL GABARICK AND BERNARD ATTRIDGE, on behalf of themselves and all others similarly situated, | * * * * |
| Plaintiffs | * * |
| versus | * * |
| LAURIN MARITIME (AMERICA) INC., WHITEFIN SHIPPING CO. LIMITED, D.R.D. TOWING COMPANY, LLC, AMERICAN COMMERCIAL LINES, INC., AND THE NEW ORLEANS-BATON ROUGE STEAMSHIP PILOTS ASSOCIATION, | * * * * * * |
| Defendants. | * * |

CASE NO.

**08-4007**
**SECT. I  MAG. 4**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CLASS ACTION COMPLAINT

Plaintiffs, Stephen Marshall Gabarick and Bernard Attridge ("Plaintiffs"), individually and as representatives of the class defined herein, bring this action against the Defendants identified below (collectively, "Defendants"), and aver as follows:

### INTRODUCTION

1.

This is a class action, brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, to recover damages suffered by Plaintiffs and the Class Members as a result of the collision that occurred on July 23, 2008, at about 1:30 a.m. on the Mississippi River, at Mile Marker 97, when the M/V TINTOMARA, a 600-foot Liberian-flagged tanker rammed into the 61-foot BARGE DM932, which was being towed by the tug M/V MEL OLIVER, causing the barge to split in half and release approximately

-1-

Fee $350
Process
X Dktd
CtRmDep
Doc. No

500,000 gallons of No. 6 Heavy Fuel oil which had been recently loaded at the John W. Stone Oil Distributor in Gretna, Louisiana.

## PARTIES

2.

Plaintiff, Stephen Marshall Gabarick, is a citizen of Louisiana who resides within this district in New Orleans, Louisiana. As a result of the collision, Plaintiff suffered the damages described below.

Plaintiff, Bernard Attridge, is a citizen of Louisiana who resides within this district in New Orleans, Louisiana. As a result of the collision, Plaintiff suffered the damages described below.

3.

Made Defendants herein (collectively "Defendants") are:

a. LAURIN MARITIME (AMERICA) INC. ("Laurin Maritime"), a foreign corporation with its principal place of business at 15600 John F. Kennedy Blvd., Suite 650, Houston, TX 77032. Laurin Maritime is the manager/operator of the M/V TINTOMARA.

b. WHITEFIN SHIPPING CO. LIMITED ("Whitefin"), a foreign corporation with its principal place of business at Irish Road 28, Gibraltar. Whitefin is the owner of the M/V TINTOMARA.

c. D.R.D. TOWING GROUP, LLC ("DRD Towing"), a domestic corporation with its principal place of business at 3701 Day Street, Harvey, Louisiana 70058. DRD Towing is the owner/operator of the tug M/V MEL OLIVER.

d. AMERICAN COMMERCIAL LINES, INC. ("ACL"), a foreign corporation

with its principal place of business at 1701 E. Market Street, Jeffersonville, Indiana 47130. ACL is the owner/operator of the BARGE DM932.

e. The New Orleans-Baton Rouge Steamship Pilots Association ("NOBRA-Pilots") is a domestic corporation with its principal place of business at 2805 Harvard Avenue, Suite 102, Metairie, LA 70006. NOBRA-Pilots provided a yet unidentified pilot who was in command of the M/V TINTOMARA at the time of the collision.

## JURISDICTION AND VENUE

4.

This Court has jurisdiction over this class action pursuant to: (1) 28 U.S.C. § 1332(d)(2), as amended by the Class Action Fairness Act of 2005, Pub. L. 109-2, because the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and it is a class action brought by the citizens of a State that is different from the State where at least one of the Defendants is incorporated or does business; (2) 28 U.S.C. § 1331, because the claims asserted herein arise under the laws of the United States of America, including the General Maritime Law and the Oil Pollution Act, Pub. L. 101-380; 33 U.S.C. § 2701 *et seq.* All the general maritime claims are brought on the law side of the Court with a trial by jury.

Prosecution of this action in this district is proper under 28 U.S.C. § 1391(a)(2) because all the events or omissions giving rise to the claims asserted herein occurred in this district.

## **FACTUAL ALLEGATIONS**

5.

On July 23, 2008, at approximately 1:30 a.m., the M/V TINTOMARA, a 600-foot tanker which was carrying styrene and biodiesel fuel, was headed down river at the Mile Marker 97 of the Mississippi River near the Crescent City Connection, when it collided with the BARGE DM932, which was in tow of the M/V MEL OLIVER. The BARGE DM932 was carrying 9,938 barrels, or approximately 500,000 gallons, of No. 6 Heavy Fuel Oil, which it had loaded at the John W. Stone Oil Distributor in Gretna, Louisiana.

6.

At the time of the collision, the M/V TINTOMARA was under the command of a pilot employed by NOBRA-Pilots.

7.

The M/V MEL OLIVER was under the command of an operator who only had an apprentice mate's license. No one aboard had a master's license, which is required to operate the tug on the river.

8.

As a result of the collision, the BARGE DM932 split in two, releasing all of its cargo consisting of approximately 500,000 gallons of No. 6 Heavy Fuel Oil.

9.

The No. 6 Heavy Fuel Oil released during the collision is unrefined, tar-like oil, and is so thick that it would not simply evaporate off of the surface. As a result, the oil has caused serious and dangerous environmental contamination of the Mississippi River and its shorelines, threatening sensitive wetlands as it drifts down river.

10.

The released oil has been spotted as far down river as Mile Marker 60, around Point-A-La-Hache and a 80-mile stretch of the Mississippi River has been closed to navigation.

11.

As a result of the prevailing winds, toxic gases from the oil have spread from the site of the collision to the French Quarter and to the Uptown Area of New Orleans, to which Plaintiffs and the Class Members have been exposed.

12.

The oil spill and the contamination have caused and will continue to cause loss of revenue to persons (and businesses) who are being prevented from using the Mississippi River.

13.

The water intakes for Algiers, Gretna, St. Bernard Parish, and Plaquemines Parish have been closed to prevent contamination of the drinking water supply for those communities, and residents have been asked to conserve water.

14.

There are many other potential affects from the oil spill that have not yet become known, and Plaintiffs reserve the right to amend this Complaint once additional information becomes available.

## **CLASS DEFINITION**

15.

Plaintiffs bring this action on behalf of themselves and all others similarly

situated, who are members of the following Class:

> All residents and inhabitants of New Orleans who have suffered any damages and/or losses from the collision of the M/V TINTOMARA with the BARGE DM932 on July 23, 2008.

16.

Excluded from the Class are:

a. the officers and directors of any of the Defendants;

b. any judge or judicial officer assigned to this matter and his or her immediate family; and

c. any legal representative, successor, or assign of any excluded persons or entities.

## CLASS ACTION ALLEGATIONS

17.

### a. Numerosity of the class

The proposed Class is so numerous that joinder is impractical. The disposition of the claims asserted herein through this class action will be more efficient and will benefit the parties and the Court.

### b. Predominance of Common Questions of Fact and Law

18.

There is a well-defined community of interest in that the questions of law and fact common to the Class predominate over questions affecting only individual Class Members and include, but are not limited to, the following:

a. Whether Defendants caused and/or contributed to the collision and oil spill;

    b.    Whether Defendants' actions were negligent;

    c.    Whether the collision and oil spill have caused environmental or other damage; and

    d.    The amount of damages Plaintiffs and the Class Members should receive in compensation.

### c. **Typicality**

19.

Plaintiffs and the Class Members have suffered similar harm as a result of Defendants' actions.

### d. **Adequacy of Representation**

20.

Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class because their interests do not conflict with the interests of the Class Members they seek to represent. Plaintiffs have no claims antagonistic to those of the Class. Plaintiffs have retained counsel competent and experienced in complex class actions and maritime and environmental litigation.

### e. **Superiority**

21.

A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual litigation of the claims of all Class Members is impracticable. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to this Court in which individual

litigation of thousands of cases would proceed. Individual litigation presents a potential for inconsistent or contradictory judgments, and the prospect of a race for the courthouse and an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation increases the expenses and delay to all parties and the court system in resolving the legal and factual issues common to all claims related to the Defendants' conduct alleged herein. By contrast, a class action presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

22.

The various claims asserted in the action are also certifiable under the provisions of Rules 23(b)(1) and/or 23(b)(2) of the Federal Rules of Civil Procedure because:

a. The prosecution of separate actions by thousands of individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, thus establishing incompatible standards of conduct for Defendants;

b. The prosecution of separate actions by individual Class Members would also create the risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class Members who are not parties to such adjudications and would substantially impair or impede their ability to protect their interests; and

c. Defendants have acted or refused to act on grounds generally applicable to the entire Class, thereby making appropriate final declaratory and injunctive relief with respect to the Class as a whole appropriate.

## FIRST CAUSE OF ACTION (NEGLIGENCE)

23.

Plaintiffs, on behalf of themselves and the Class Members, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if copied herein.

24.

The collision was caused by the concurrent negligence of the Defendants.

25.

Upon information and belief, Plaintiffs aver that the collision and resultant oil spill was caused by the joint negligence and fault of the Defendants in the following non-exclusive particulars:

   a. Failing to properly operate and steer their vessels so as to avoid the collision;

   b. Operating and steering their vessels in such a manner that they collided with one another;

   c. Failing to properly inspect to assure that their vessels, equipment and personnel were fit for their intended purpose;

   d. Acting in a careless and negligent manner without due regard for the safety of others;

   e. Failing to promulgate, implement and enforce rules and regulations pertaining to the safe operations of the vessels they were operating at the time of the collision which, if they had been so promulgated, implemented and enforced, would have averted said collision;

 f. Operating the vessel with untrained and unlicensed personnel;

 g. Inadequate and negligent training and hiring;

 h. Failing to take appropriate action to avoid or mitigate the accident;

 i. Negligent implementation of policies and procedures to safely transport their cargo on the Mississippi River;

 j. Employing untrained or poorly trained employees and failing to properly train their employees;

 k. Failing to ascertain that their vessels and equipment were free from defects and/or in proper working order;

 l. Failure to timely warn;

 m. Failure to timely bring the release under control;

 n. Failure to provide appropriate accident prevent equipment;

 o. Failure to observe and read gauges;

 p. Failure to react to danger signs; and

 q. Such other acts of negligence and omissions as will be shown at the trial of this matter. All of which acts are in violation of the laws of Louisiana.

26.

In addition, and in the alternative, the collision and resultant oil release was caused by defective equipment which was in the care, custody, and control of Defendants and over which the Defendants had *garde*. Defendants knew or should have known of these defects and Defendants are, therefore, liable for them.

27.

The injuries to Plaintiffs and the Class Members were also caused by or

aggravated by the fact that Defendants failed to properly respond to the release and take necessary actions to mitigate the danger to the surrounding community and/or to timely and adequately warn of the release of oil.

28.

In addition to the negligent actions described above, and in the alternative thereto, the injuries and damages suffered by Plaintiffs and the Class Members were caused by the acts and/or omissions of the Defendants that are beyond proof by the Plaintiffs and the Class Members, but which were within the knowledge and control of the Defendants, there being no other possible conclusion than that the collision and release of oil resulted from the negligence of Defendants. Furthermore, the collision and the resultant oil release would not have occurred had the Defendants exercised the high degree of care imposed on them and Plaintiffs, therefore, plead the doctrine of *res ipsa loquitur*.

29.

As a result of the exposure to the toxic gases from the oil spill caused by the Defendants, Plaintiffs and the Class Members suffered serious injuries. Plaintiffs and the Class Members further fear that, as a result of their exposure, they will suffer continuing adverse health consequences and/or disabling diseases in the future.

30.

All of the above considerations have caused considerable fear, anguish, discomfort, and inconvenience to Plaintiffs and the Class Members, as well as pain and suffering, mental anguish, emotional distress, and psychiatric and psychological damages.

31.

Plaintiffs and the Class Members are entitled to a judgment finding Defendants liable to Plaintiffs and the Class Members for damages suffered as a result of Defendants' negligence and awarding Plaintiffs and the Class Members adequate compensation therefor in amounts determined by the trier of fact.

## SECOND CAUSE OF ACTION
## (OIL POLLUTION ACT)

32.

Plaintiffs, on behalf of themselves and the Class Members, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if fully copied herein.

33.

The Oil Pollution Act imposes liability upon a "responsible party for a vessel...from which oil is discharged...into or upon navigable waters or adjoining shorelines" for the "damages that result from such incident." 33 U.S.C. § 2702.

34.

Section 2702(b)(2)(C) provides for the recovery of "[d]amages for subsistence use of natural resources, which shall be recoverable by any claimant who so uses natural resources which have been injured, destroyed, or lost, without regard to the ownership or management of the resources."

35.

DRD Towing and ACL were responsible for the BARGE DM932 from which oil was discharged. Therefore, they are jointly liable pursuant to Section 2702 for all the

damages that result from the collision and the oil spill.

36.

As a result of the collision and oil spill, Plaintiffs and the Class Members have not been able to use natural resources (air and water, and potentially wetlands and other areas and spaces that may have become contaminated by the spilled oil) for their subsistence, and they are entitled to recover from DRD Towing and ACL, joint, severally and *in solido* for such damages in amounts to be determined by the trier of fact.

37.

Section 2702(b)(2)(E) provides for the recover of "[d]amages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant."

38.

As a result of the collision and oil spill, Plaintiffs and the Class Members have suffered the type of damages that may be recovered pursuant to Section 2702(b)(2)(E), and they demand compensation therefor from DRD Towing and ACL, jointly, severally, and *in solido* in amounts to be determined by the trier of fact.

39.

The damages that Plaintiffs and the Class Members may recover under section 2702 may not be reduced by any limitation action that may be brought by the owners of the vessels that collided.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class Members demand judgment against Defendants, jointly, severally and *in solido*, as follows:

a. An order certifying the Class for the purpose of going forward with any one or all of the causes of action alleged herein; appointing Plaintiffs as Class Representatives; and appointing undersigned counsel as counsel for the Class;

b. Economic and compensatory damages in amounts to be determined at trial, but not less than the $5,000,000.00 required by the Class Action Fairness Act which establishes this Court's jurisdiction to hear this case;

c. Punitive damages;

d. Pre-judgment and post-judgment interest at the maximum rate allowable by law;

e. Attorney's fees and costs of litigation;

f. Such other and further relief available under all applicable state and federal laws and any relief the Court deems just and appropriate; and

g. A trial by jury as to all Defendants.

Respectfully submitted,

*Camilo K. Salas*
CAMILO K. SALAS, III (#11657)
Salas & Co., L.C.
650 Poydras Street, Suite 1650
New Orleans, LA 70130
Telephone: 504-799-3080
Facsimile: 504-799-3085

E-mail: csalas@salaslaw.com

Daniel E. Becnel, Jr. (#2926)
Darryl J. Becnel (#22943)
Kevin P. Klibert (#26954)
Matthew B. Moreland (#24567)
Law Offices of Daniel E. Becnel, Jr.
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Telephone: 985-536-1186
Facsimile: 985-536-1186
E-mail: dbecnel@becnellaw.com

Jerrold S. Parker, Esq. (NY Bar No. 1894666)
Andres F. Alonso, Esq. (NY Bar No. 2679231)
Parker Waichman Alonso, LLP
111 Great Neck Road
Great Neck, NY 11021
Telephone: 516-466-6500
Facsimile: 516-466-6665

**PLEASE WITHHOLD SERVICE:**

LAURIN MARITIME (AMERICA) INC.

WHITEFIN SHIPPING CO. LIMITED

D.R.D. TOWING COMPANY, LLC

AMERICAN COMMERCIAL LINES INC.

THE NEW ORLEANS-BATON ROUGE STEAMSHIP PILOTS ASSOCIATION