UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| STEVEN ,MARSHALL GABAGICK AND BERNARD ATTRIDGE, on behalf of themselves and all others similarly situated,<br>      Plaintiffs | * * * * * | CIVIL ACTION |
| VERSUS | * * * | NO. 08-4007<br>and consolidated actions |
| LAURIN MARITIME (AMERICA), INC., WHITEFIN SHIPPING CO. LIMITED, D.R.D. TOWING COMPANY, LLC, AMERICAN COMMERCIAL LINES, INC., AND THE NEW ORLEANS-BATON STEAMSHIP PILOTS ASSOCIATION,<br>      Defendants | * * * * * * * * | ALL CASES<br><br>SECTION: I<br><br>MAGISTRATE: 4 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CLAIM

NOW INTO COURT, through undersigned counsel, come our plaintiffs, Tri Native Contractors, Inc., Russell Easley d/b/a K and R Pipeline Services and Brandon Cavallier (hereinafter collectively the "Claimants"), and assert claims against the petitioner in Civil Action No. 08-4600, American Commercial Lines, LLC ("Limitation Petitioners"),for all the damages suffered by Claimants as a result of the collision that occurred on July 23, 2008, at about 1:30 a.m. on the Mississippi River, at Mile Marker 97, when the M/V TINTOMARA, a 600-foot Liberian-flagged tanker rammed into the 61-foot BARGE DM932, which was being towed by the tug M/V MEL OLIVER, causing the barge to split in half and release approximately 400,000 gallons of No. 6

1

Heavy Fuel oil loaded at the John W. Stone Oil Distributor in Gretna, Louisiana, and in support of their claims aver:

1.

Claimants are citizens and residents of Louisiana, of the age of majority (or minors represented by persons of the age of majority), who reside within this district in Jefferson Parish, Louisiana, and who suffered the damages described below.

2.

On July 23, 2008, at approximately 1:30 a.m., the M/V TINTOMARA, a 600-foot tanker which was carrying styrene and biodiesel fuel, was headed down river at the Mile Marker 97 of the Mississippi River near the Crescent City Connection, when it collided with the BARGE DM932, which was in tow of the M/V MEL OLIVER. The BARGE DM932 was carrying 9,938 barrels, or approximately 400,000 gallons, of No. 6 Heavy Fuel Oil, which it had loaded at the John W. Stone Oil Distributor in Gretna, Louisiana.

3.

At the time of the collision, the M/V TINTOMARA was under the command of its captain or master, who was being assisted by a pilot employed by the New Orleans-Baton Rouge Steamship Pilots Association ("NOBRA-Pilots").

4.

The M.V MEL OLIVER was under the command of an operator who only had an apprentice mate's license. No one aboard had a master's license, which is required to operate the tug on the river. The owners, owners *pro-hac-vice* and operators of the M/V MEL OLIVER knowingly allowed (and they have a history of allowing) the vessel to be operated without the required master on board.

5.

As a result of the collision, the BARGE DM932 split in two, releasing all of its cargo consisting of approximately 400,000 gallons of No. 6 Heavy Fuel Oil.

6.

The No. 6 Heavy Fuel Oil released during the collision is unrefined, tar-like oil, and is so thick that it would not simply evaporate off of the surface. As a result, the oil caused serious and dangerous environmental contamination of the Mississippi River and its shorelines, damaging sensitive wetlands as it drifted down river.

7.

The released oil traveled down the Mississippi River past Mile Marker 60, around Point-A-La-Hache, and a 80-mile stretch of the Mississippi River was closed to navigation preventing vessels from using this waterway.

8.

As a result of the prevailing winds, toxic gases from the spilled oil spread from the site of the collision to the French Quarter and to the Uptown Area of New Orleans, and Claimants were exposed to them.

9.

The oil spill and the contamination have caused and will continue to cause loss of revenue to Claimants, because after the collision they were not able to operate their businesses.

10.

The water intakes for Algiers, Gretna, St. Bernard Parish, and Plaquemines Parish were closed to prevent contamination of the drinking water supply for those communities.

11.

There are many other effects from the oil spill that have not yet become known, and Claimants reserve the right to amend this claim once additional information becomes available.

### FIRST CAUSE OF ACTION (NEGLIGENCE)

12.

Claimants repeat, reiterate and reallege each and every allegation set forth above with the same force and effect as if copied herein.

13.

The collision was caused by the concurrent negligence of the Limitation Petitioners (who were acting through their masters, agents, employees and officials) and other parties that have also filed other limitation actions.

14.

Claimants aver that the collision and resultant oil spill was caused by the joint negligence and fault of the Limitation Petitioners and other parties that have also filed other limitation actions in the following non-exclusive particulars:

    a.    Failing to properly operate and steer their vessels so as to avoid the collision;

b. Operating and steering their vessels in such a manner that they collided with one another;

c. Operating their vessels at an excessive speed;

d. Failing to take adequate steps to avoid the collision after their radars warned that they were on a collision course;

e. Failing to stop their vessels;

f. Continuing in a collision course;

g. Failing to respond to radio communications;

h. Failing to properly inspect to assure that their vessels, equipment and personnel were qualified, licensed and fit for their intended purpose;

i. Acting in a careless and negligent manner without due regard for the safety of others;

j. Failing to promulgate, implement and enforce rules and regulations pertaining to the safe operations of the vessels they were operating at the time of the collision which, if they had been so promulgated, implemented and enforced, would have averted said collision;

k. Operating their vessels with untrained and unlicensed personnel;

l. Inadequate and negligent training and hiring;

m. Failing to take appropriate action to avoid or mitigate the accident;

n. Negligent implementation of policies and procedures to safely transport their cargo on the Mississippi River;

o. Employing untrained or poorly trained employees and failing to properly train their employees;

p.  Failing to ascertain that their vessels and equipment were free from defects and/or in proper working order;

q.  Failure to timely warn;

r.  Failure to timely bring the oil spill under control;

s.  Failure to provide appropriate accident prevent equipment;

t.  Failure to observe and read gauges, radars and other warning devices;

u.  Failure to react to danger warnings and signs; and

v.  Such other acts of negligence and omissions as will be shown at the trial of this matter.

All of these acts are in violation of the maritime laws, federal laws and the laws of Louisiana applicable to waterways, and were committed with the knowledge, consent and approval of the Limitation Petitioners.

15.

In addition, and in the alternative, the collision and resultant oil release were caused by defective equipment which was in the care, custody, and control of Limitation Petitioners and over which the Limitation Petitioners had *garde*. The Limitation Petitioners knew or should have known of these defects and they are therefore liable for the damage caused.

16.

The injuries to Claimants were also caused or aggravated by the fact that the Limitation Petitioners failed to properly respond to the oil release and take necessary actions to mitigate the danger to the surrounding community and/or to timely and adequately warn of the release of oil.

17.

In addition to the negligent actions described above, and in the alternative thereto, the injuries and damages suffered by Claimants were caused by the acts and/or omissions of the Limitation Petitioners that are beyond proof by the Claimants, but which were within the knowledge and control of the Limitation Petitioners, there being no other possible conclusion than the collision and release of oil resulted from the negligence of the Limitation Petitioners. Furthermore, the collision and the resultant oil release would not have occurred had Litigation Petitioners exercised the high degree of care imposed on them due to the nature of the cargo carried in their vessels and their vessels' use of the navigable waterways, and thus Claimants plead the doctrine of *res ipsa loquitur*.

18.

As a result of the exposure to the toxic gases from the oil spill caused by the Limitation Petitioners, Claimants suffered serious injuries and damages. Claimants further fear that as a result of their exposure they will suffer continuing adverse health consequences and/or disabling diseases in the future.

19.

All of the above considerations have caused considerable fear, anguish, discomfort, and inconvenience to Claimants as well as pain and suffering, mental anguish, emotional distress, and psychiatric and psychological damages.

20.

Claimants are entitled to a judgment denying limitation and/or exoneration from liability, and finding the Limitation Petitioners liable to Claimants for damages suffered

as a result of the Limitation Petitioners' negligence and awarding Claimants adequate compensation therefor in amounts determined by the trier of fact.

## SECOND CAUSE OF ACTION
## (OIL POLLUTION ACT)

21.

Claimants aver that their claims under the Oil Pollution Act ("OPA") described below are not subject to the limitation of liability sought by the Limitation Petitioners, and that they are entitled to prosecute their OPA claims outside of these limitation of liability proceedings. However, out of an abundance of caution Claimants set forth those claims below.

22.

Claimants repeat, reiterate and reallege each and every allegation set forth above with the same force and effect as if fully copied herein.

23.

OPA imposes liability upon a "responsible party for a vessel…from which oil is discharged…into or upon navigable waters or adjoining shorelines" for the "damages that result from such incident." 33 U.S.C. 2702.

24.

Section 2702(b)(2)(C) provides for the recovery of "[d]amages for subsistence use of natural resources, which shall be recoverable by any claimant who so uses natural resources which have been injured, destroyed, or lost, without regard to the ownership or management of the resources."

25.

Therefore, the Limitation Petitioners are jointly, severaly and *in solido* liable to the Claimants pursuant to Section 2702 for all the damages caused by the collision and the oil spill.

26.

As a result of the collision and oil spill, Claimants have not been able to use natural resources (air, water, wetlands and other areas and spaces that were contaminated by the spilled oil) for their subsistence, and they are entitled to recover from the Limitation Petitioners, jointly, severally and *in solido* for such damages in amounts to be determined by the trier of fact.

27.

Section 2702(b)(2)(E) provides for the recovery of "[d]amages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant."

28.

As a result of the collision and oil spill, Claimants have suffered the type of damages that may be recovered pursuant to Section 2702(b)(2)(E), and they demand compensation therefor from the Limitation Petitioners, jointly, severally, and *in solido* in amounts to be determined by the trier of fact.

29.

The damages that Claimants may recover under section 2702 may not be limited by and are not subject to the limitation actions that have been brought by the Limitation Petitioners.

**DAMAGES**

30.

As a result of reckless, intentional and/or negligent conduct of the Limitation Petitioners, all Claimants have suffered and will continue to suffer damage of property, cost of restoration, loss of use of property, increased living expenses, diminution of property value, ecological damages, loss of income, lost profits, lost business opportunity, inconvenience, mental anguish, emotional distress, bodily harm and past and future medical expenses.

31.

Claimants are entitled to a judgment denying the Limitation Petitioners' request for limitation and/or exoneration from liability, finding the Limitation Petitioners liable to Claimants for all the damages they have suffered, and awarding Claimants adequate compensation therefor in amounts determined by the trier of fact.

32.

Claimants request a trial by jury.

29.

The damages that Claimants may recover under section 2702 may not be limited by and are not subject to the limitation actions that have been brought by the Limitation Petitioners.

**DAMAGES**

30.

As a result of reckless, intentional and/or negligent conduct of the Limitation Petitioners, all Claimants have suffered and will continue to suffer damage of property, cost of restoration, loss of use of property, increased living expenses, diminution of property value, ecological damages, loss of income, lost profits, lost business opportunity, inconvenience, mental anguish, emotional distress, bodily harm and past and future medical expenses.

31.

Claimants are entitled to a judgment denying the Limitation Petitioners' request for limitation and/or exoneration from liability, finding the Limitation Petitioners liable to Claimants for all the damages they have suffered, and awarding Claimants adequate compensation therefor in amounts determined by the trier of fact.

32.

Claimants request a trial by jury.

33.

Claimants reserve the right to raise additional allegations once discovery is conducted.

## **PRAYER FOR RELIEF**

WHEREFORE, Claimants demand judgment against the Limitation Petitioners, jointly, severally and *in solido*, awarding them:

    a.    Economic and compensatory damages in amounts to be determined at trial;

    b.    Punitive damages;

    c.    Pre-judgment and post-judgment interest at the maximum rate allowable by law;

    d.    Attorneys' fees and costs of litigation;

    e.    Such other and further relief available under all applicable maritime, state and federal laws, and any relief the Court deems just and appropriate; and

    f.    A trial by jury.

Respectfully submitted,

/s/Laura L. Catlett
Robert J. Diliberto (LA 24783)
Damon A. Kirin (LA 24729)
Laura L. Catlett (LA 31431)
DILIBERTO & KIRIN, L.L.C.
3636 S. I-10 Service Rd. West, Suite 210
Metairie, LA 70001
Telephone:   (504) 828-1600
Fax:              (504) 828-1555
Diliberto@attorneys-louisiana.com
Kirin@attorneys-louisiana.com
Catlett@attorneys-louisiana.com

## Certificate of Service

Claimants certify that they have served this document on all parties via the Pacer/ECF system this 1st day of December, 2008.

/s/ Laura L. Catlett