**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **STEPHEN MARSHALL GABARICK, et al** | **CIVIL ACTION** |
| | **No. 08-4007** |
| **VERSUS** | **REF: 08-4156** |
| **LAURIN MARITIME (AMERICA), INC., et al.** | **SECTION: I/4** |

<u>ORDER AND REASONS</u>

Before the Court is a Rule 12(c)motion for judgment on the pleadings filed by American Commercial Lines LLC and American Commercial Lines, Inc. (collectively "ACL"), seeking to dismiss the complaint for interpleader and declaratory relief filed by Indemnity Insurance Company of North America ("IINA"). For the following reasons, ACL's motion is **GRANTED IN PART AND DENIED IN PART.**

<u>BACKGROUND</u>

On July 23, 2008, the M/V TINTOMARA and the Barge DM-932, which was being towed by the M/V MEL OLIVER, collided on the Mississippi River, causing oil to spill into the river. As a result, several lawsuits were filed against ACL, the owner of the barge, DRD Towing Company, Inc. ("DRD"), the operator of the towboat, and Whitefin Shipping Co., Ltd., Laurin Maritime (America), Inc., Laurin Maritime AB; and Anglo-Atlantic Steamship Limited (collectively "the TINTOMARA interests"), the owners of

1

the M/V TINTOMARA. The parties have filed four limitation proceedings with respect to these vessels.

IINA issued an insurance policy to DRD, in effect at the time of the collision, which included Hull and Machinery coverage for damage to vessels identified in the policy's schedule/description of vessels. The policy also provided Protection and Indemnity (P&I) coverage for "costs, charges, and expenses reasonably incurred and paid by the Assured in defense against any liabilities insured against...in respect of the vessel named herein."[1] ACL contends that it is an additional insured under the policy.[2]

Following a demand from DRD for security, a demand from ACL for defense and indemnification, and demands from two law firms for defense costs, IINA initiated an interpleader action in this Court, pursuant to Rule 22 of the Federal Rules of Civil Procedure and 28 U.S.C. §1335, naming as defendants ACL, DRD, law firms retained by DRD and another entity on behalf of DRD, and several plaintiffs who had filed class actions against DRD and ACL for economic and compensatory damages.[3] IINA seeks an order from the Court enjoining the defendants from instituting or

---

[1] Civil Action No. 08-4156, Rec. Doc. No. 1, p.11.

[2] *Id.* at p. 10.

[3] The Court recently permitted the TINTOMARA interests to intervene in the interpleader action as a matter of right. Civil Action No. 08-4007, Rec. Doc. No. 531.

prosecuting any proceeding affecting the IINA policy.[4]

In its interpleader complaint, IINA alleges that its Hull and Machinery policy limits for the M/V MEL OLIVER are $850,000 and its P&I policy limits are $1 million per accident. In light of competing demands on its P&I policy by various parties and IINA's "doubt as to which, if any, of the claimants is entitled to be paid", IINA deposited $985,000, after deducting the $15,000 deductible, into the registry of the Court.[5]

IINA's complaint also requests that the Court declare, pursuant to 28 U.S.C. §2201, whether it has a duty to defend or indemnify DRD and ACL.[6] In particular, IINA requests that the Court declare (1) that the barge is not a covered vessel under the policy, (2) that any losses due to a breach of the warranty of seaworthiness or a want of due diligence by the insureds are not covered under the policy, (3) that claims against ACL or DRD for punitive or exemplary damages are not covered under the policy, and (4)that many claims against ACL and DRD are excluded from coverage under the American Institute Pollution Exclusion Clause and Buy Back Endorsement A of the Policy.[7] In the event

---

[4] Civil Action No. 08-4156, Rec. Doc. No. 1, p. 17, para. 31.

[5] Civil Action No. 08-4007, Rec. Doc. No. 34; Civil Action No. 08-4156, Rec. Doc. No. 1, p. 16, para. 29. IINA states that there have been no demands under the Hull and Machinery section of the policy. Civil Action No. 08-4156, Rec. Doc. No. 1, p. 19, para. 35.

[6] *Id.* at p. 17.

[7] *Id.*, pp. 17-18.

that the Court finds that the IINA policy covers claims by or against DRD or ACL, IINA requests that the Court declare that its liability cannot exceed the $985,000 P&I policy limits.[8]

ACL filed this motion to dismiss IINA's interpleader action on the basis that IINA may not avoid its obligation to defend by initiating an interpleader action and depositing its policy limits. ACL also contends that IINA is not entitled to a declaratory judgment finding that the barge is not covered under the policy or that coverage is excluded for any losses due to unseaworthiness. Finally, ACL argues that declaratory relief with respect to IINA's obligation to indemnify ACL is premature.

## LAW AND ANALYSIS

### I. STANDARD OF LAW

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A Rule 12(c) motion is subject to the same standard applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

According to the United States Court of Appeals for the Fifth Circuit, "'A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a

---

[8] *Id*. at pp. 18-19.

4

judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.'" *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (citing *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)). When analyzing such a claim, "'[p]leadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain.'" *Id.* (citing *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)). Further, a district court "may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). The Court evaluates the complaint in the light most favorable to the plaintiff and accepts "all well-pleaded facts as true." *Id.*

Pursuant to Rule 12(c), the movant must clearly establish that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law. *Greenberg v. Gen. Mills Fun Group, Inc.*, 478 F.2d 254, 256 (5th Cir. 1973). The issue is whether the plaintiff is entitled to offer evidence to support his claim, not whether he will ultimately prevail on the merits. *Great Plains Trust Co.*, 313 F.3d at 313 (citing *Jones*, 188 F.3d at 324).

**II. <u>DISCUSSION</u>**

## A. Defense Obligations and the Interpleader Action

ACL argues that IINA has a duty to defend ACL and that IINA cannot escape this obligation by depositing its policy limits into the Court's registry. In support of its argument, ACL cites *Anchor Cas. Co. v. McCaleb,* where the Fifth Circuit held that there were no policy provisions "that give appellant the right to avoid this obligation by paying into court any definite sum of money." 178 F.2d 322, 325 (5th Cir. 1949); *see also The Complaint of Guey*, No. 93-61, 1993 WL 262691, at *2 (E.D. La. July 2, 1993)(Clement, J.) ("[M]ost courts to address the question have held that an insurer does not relieve itself of its duty to defend by merely depositing its policy limits into the registry of the court.").

IINA does not argue that it can avoid a duty to defend by filing an interpleader action. Instead, IINA contends that the language of the policy, unlike the cases cited by ACL, does not provide for a defense. According to IINA, the policy merely agrees to reimburse the insured for defense costs incurred, subject to the policy limits. IINA directs the Court's attention to language in the P&I section that provides:

> The Assurer hereby undertakes to make good to the Assured...all such loss and/or damage and/or expense as the Assured shall have become liable to pay and shall pay on account of the liabilities, risks, events and/or happenings set forth:
> (14)Costs, charges, and expenses reasonably incurred and paid by the Assured in defense against any liabilities insured hereunder in respect of the vessel named herein, subject to the agreed deductibles applicable, and subject further to the conditions and

6

limitations hereinafter provided.[9]

Louisiana law provides that an insurance policy is a contract between the parties and should be construed using the general rules of contract interpretation set forth in the Louisiana Civil Code. *Bonin v. Westport Ins. Corp.*, 930 So. 2d 906, 910 (La. 2006); *see also Coleman v. Sch. Bd. of Richland Parish*, 418 F.3d 511, 516 (5th Cir. 2005). As with any contract, the judiciary's role in interpreting an insurance policy is to ascertain the common intent of the parties. *Coleman*, 418 F.3d at 516; *Bonin*, 930 So.2d at 910; *see also* La. Civ. Code Ann. art. 2045.

The words used in an insurance policy must be given their generally prevailing meaning. *Coleman*, 418 F.3d at 516; *Bonin*, 930 So.2d at 910; *see* La. Civ. Code Ann. art. 2047. Where these words are "clear and explicit and lead to no absurd consequences, the [policy's] meaning and the intent of the parties must be sought within the four corners of the document and cannot be explained or contradicted by extrinsic evidence." *In re Liljeberg Enters., Inc.*, 304 F.3d 410, 440 (5th Cir. 2002)(quoting *Am. Totalisator Co. v. Fair Grounds Corp.*, 3 F.3d 810, 813 (5th Cir. 1993)); *Coleman*, 418 F.3d at 518 (quoting *La. Ins. Guar. Ass'n v. Interstate Fire & Cas.*

---

[9] Rec. Doc. No.162-4, pp. 8-11. Because ACL submits the insurance policy with its motion for judgment on the pleadings and the policy is both referred to within and central to IINA's complaint for interpleader and declaratory relief, the Court may consider the policy as part of the pleadings. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

*Co.*, 630 So. 2d 759, 764 (La. 1994) ("[W]hen the 'language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation.'"). Each provision of an insurance policy "must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Coleman*, 418 F.3d at 517; La. Civ. Code Ann. art. 2050.

An insurance policy "should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." *Bonin*, 930 So.2d at 910; *Coleman*, 418 F.3d at 516. Should ambiguities remain in an insurance policy after applying the general rules of contract interpretation, they are to be strictly construed against the insurer and in favor of coverage. *Bonin*, 930 So. 2d at 911; La. Civ. Code Ann. art. 2056. However, an insurance policy is ambiguous only when it is susceptible to two or more interpretations and each of the alternative interpretations is reasonable. *Id.; Tex. E. Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998)(quoting *Lloyds of London*, 101 F.3d 425, 429 (5th Cir. 1996) ("[A] contract is ambiguous, under Louisiana law, 'when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances....'"). An ambiguity is not created simply because one of the parties to an

insurance policy can create a dispute in hindsight. *Id.*

IINA's P&I policy covers "costs...reasonably incurred and paid" by the insured.[10] This language clearly and explicitly provides coverage for amounts already expended by the insured in defense against liabilities. However, missing from the policy is any language suggesting an additional duty to defend. ACL does not direct the Court to any such provision.

The cases cited by ACL involve policies that specifically state the insurer's obligation to pay defense costs *and* the insurer's obligation to defend. For instance, in *Anchor Casualty Co.*, the policy provided, "It is further agreed that as respects insurance afforded by this policy the company shall *** (b)defend in his name and behalf any suit against the insured...The company agrees to pay the amounts incurred...." 178 F.2d at 325; *see also Guey*, 1993 WL 262691, at *2 ("In this case, the insurance policy obligates Gulf to defend Guey and to pay 'costs' incurred in defending Guey.").

Similar P&I policies that discuss the insurer's obligation to pay for "costs and expenses incurred," without mentioning the insurer's obligation to defend, have been construed as limited to reimbursement of defense costs. *Bd. of Comm'rs of Port of New Orleans v. M/V Rachael Guidry*, 425 F. Supp. 661, 663-64 (E.D. La. 1977) (Rubin, J.)("Under a P & I Policy of this type, the policy

---

[10] Rec. Doc. No. 162-4, p. 11.

does not obligate the insurer to defend the insured...But this merely means that, as between the insurer and the insured, it is the duty of the insured to defend. After it does so, the insurer is liable for 'costs and expenses, incurred....'"); *see also Blair v. Suard Barge Servs., Inc.*, No. 03-909, 2004 WL 325428, at *8 (E.D. La. Feb. 18, 2004) (Berrigan, J.).

To interpret the language of IINA's P&I policy as extending coverage to an obligation to defend when the language refers only to "costs...incurred and paid" would require the Court to read terms into the policy that do not exist and to improperly expand policy coverage.[11] Because IINA does not have a duty to defend but only an obligation to reimburse incurred costs, it is entitled to deposit its policy limits into the Court's registry[12] and the motion

---

[11] IINA asserts that its obligation to reimburse defense costs is subject to its policy limits and that any payment "erodes the limit of liability under the Policy," which has become subject to multiple, competing demands. Civil Action No. 08-4007, Rec. Doc. No. 267, p. 11. ACL responds that both the "Costs and charges" clause and the "Law costs" clause in the P&I policy are silent as to whether defense costs are deductible from the policy limits and that the ambiguity should be construed in favor of coverage. Rec. Doc. No. 461, p. 3. This issue did not arise as part of ACL's initial motion, which seeks dismissal of the interpleader action based on IINA's obligation to defend, but instead came before the Court in IINA's response memorandum and ACL's reply memorandum. Although the Court recognizes the significance of this issue, it has no bearing on the Court's analysis of whether the interpleader complaint should be dismissed. If not resolved, the parties may raise and fully brief this issue to the Court at a later date.

[12] Deposit of property in controversy into the Court's registry is a jurisdictional predicate to an interpleader action pursuant to 28 U.S.C. 1335. *Austin v. Texas-Ohio Gas Co.*, 218 F.2d 739, 744 (5th Cir. 1955). IINA initiated this interpleader action under both 28 U.S.C. 1335 and Rule 22 of the Federal Rules of Civil Procedure. Civil Action No. 08-4156, Rec. Doc. No. 1, p. 4. ACL and IINA stipulate that the Court has maritime jurisdiction over this action pursuant to 28 U.S.C. 1333. Civil Action No. 08-4007, Rec. Doc. No. 531. Because the Court's jurisdiction over the interpleader action is not dependent on 28 U.S.C. 1335, IINA is not required to deposit any amount into the Court's registry. *Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1159 (5th

to dismiss the interpleader complaint on this ground is **DENIED.**

### B. Action for Declaratory Relief

#### 1. The Implied Warranty of Seaworthiness

As part of its complaint, IINA seeks a declaratory judgment that the policy excludes coverage for any loss sought by DRD and ACL that resulted from a breach of the warranty of seaworthiness.[13] ACL, however, contends that such argument should be dismissed because P&I policies, unlike Hull & Machinery policies, do not imply a warranty of seaworthiness.

"A warranty of seaworthiness by the owner is implied in every hull insurance policy unless expressly waived." *Ins. Co. Of N. America v. Bd. of Comm'rs of Port of New Orleans*, 733 F.2d 1161, 1165 (5th Cir. 1984). A breach of this warranty results in "denial of liability for loss or damage caused proximately by such unseaworthiness." *Id.* However, courts have found that this implied warranty does not extend to P&I policies. *See, e.g., Sorenson v. Boston Ins. Co.*, 20 F.2d 640, 643 (4th Cir. 1927); *Texaco, Inc. v. Universal Marine, Inc.*, 400 F. Supp. 311, 322-23 (E.D. La. 1975) (Gordon, J.). Another section of this Court has explained that implying a warranty of seaworthiness in a P&I policy would "negate coverage under a policy whose purpose is to protect for the

---

Cir. 1976) ("Fed.R.Civ.P.Rule 22 interpleader does not require a 'deposit.'").

[13] Civil Action No. 08-4156, Rec. Doc. No. 1, p. 18, para. 34.

11

insured's own negligence." *Texaco*, 400 F. Supp. at 322.

ACL's demands on the IINA policy are limited to the P&I section of the policy.[14] Within the P&I section is a "Collision and Towers Liability Clause," which provides coverage for liability arising from the insured vessel's collision with any other vessel.[15] IINA argues that despite the clause's location in the P&I section, an implied warranty of seaworthiness exists in this coverage because collision and towers liability coverage is effectively a form of hull insurance.[16] In support of this argument, IINA cites *Insurance Company Of North America v. Board of Commisioners of Port of New Orleans*, where the Fifth Circuit held that a P&I endorsement providing excess collision and tower's liability constituted "extra hull coverage," "subject to the same implied warranty of seaworthiness applicable to all hull policies." 733 F.2d at 1166. The Fifth Circuit explained that the fact that the clause was "in the form of an endorsement to the P & I policy did not automatically transform that coverage to an enumerated P & I risk." *Id.*

The collision liability coverage in this case, however, notably differs from the policy coverage reviewed by the Fifth Circuit as well as other policies. Traditionally, collision

---

[14] Civil Action No. 08-4007, Rec. Doc. No. 531.

[15] Rec. Doc. No. 162-4, p. 5.

[16] Rec. Doc. No. 267, p. 14.

liability clauses cover liability for damages to third party vessels and are incorporated into Hull & Machinery policies, which typically cover damage to the insured's vessels. P&I policies cover additional risks "outside the scope of coverage under standard hull policies." *Employers Ins. Of Wassau v. Int'l Marine Towing*, 864 F.2d 1224, 1225 (5th Cir. 1989) (noting that there is a "traditional practice of assigning liabilities arising out of collision and towage to the Hull Policy."); *Navigators Ins. Co. v. Am. Home Assurance Co.*, No. 97-2650, 1999 WL 681161, at *3 (S.D.N.Y. Sept. 1, 1999)("Often, in addition to covering damage to the insured vessel itself, a hull insurance policy will provide for collision liability.").

The policy considered by the Fifth Circuit in *Insurance Company of North America* conformed to the tradition of providing collision and tower's liability coverage in the hull section and a P&I endorsement merely provided *excess* collision coverage. 733 F.2d at 1166.[17] IINA's policy, however, deviates from "the traditional practice" of covering collision liability in its Hull & Machinery policy by specifically deleting the collision liability clause from the Hull & Machinery section and inserting it in the P&I section.[18]

---

[17] The district court in that *Insurance Company of North America* explained that the insured purchased "'extra protection' to the collision and tower's liability included in the hull policy by way of an endorsement that provides excess collision and tower's liability in the P&I policy." *Ins. Co. of N. America v. John J. Bordlee Contractors*, 543 F. Supp. 597, 600 (E.D. La. May 24, 1982) (Schwartz, J.).

[18] Rec. Doc. No. 162-3, p. 1.

Because there is no collision coverage provided in IINA's Hull & Machinery section, which only covers damage to vessels listed in the policy's schedule,[19] the collision and towers liability clause in IINA's P&I section does not provide *excess* hull coverage. Instead, the collision and towers liability clause is a provision wholly separate from the Hull & Machinery section, providing coverage for damage to third party vessels and property. Therefore, the Court does not run the risk of "transform[ing] that coverage to an enumerated P&I risk;" collision coverage is solely enumerated as a P&I risk. *See id.*[20] Accordingly, the motion to dismiss the complaint for declaratory relief is **GRANTED** with respect to the implied warranty of seaworthiness.

### 2. Covered Vessels

ACL argues that IINA's declaratory relief claim that the barge is not a covered vessel under the IINA policy should be dismissed because the barge's tow, the M/V MEL OLIVER, is a scheduled vessel.[21] ACL directs the Court to cases where a barge and its tow were deemed one unit in light of the fact that a barge without

---

[19] Civil Action No. 08-4156, Rec. Doc. No. 1, para. 18.

[20] The Court also notes that the a warranty of seaworthiness implied in the Hull & Machinery section does not extend to the P&I section in light of policy language specifically exempting P&I coverage from the terms and conditions of the Hull & Machinery policy. The IINA policy provides that the P&I section is a "separate insurance, but is subject always to the other terms and conditions stated in this Policy, except for the terms and conditions attached to and forming part of Section HM." Rec. Doc. No. 162-3, p. 30.

[21] The M/V MEL OLIVER was added to the schedule of vessels by endorsement in June, 2008. Rec. Doc. No. 162-4, p. 31.

self-propulsion or a crew is entirely dependent on its tow for navigation. *See, e.g., Steelmet, Inc. v. Caribe Towing Corp.*, 842 F.2d 1237, 1241-42 (11th Cir. 1998); *Puerto Rico v. M/V Emily S*, 13 F. Supp. 2d 147, 150 (D. P.R. 1998); *Olympic Tug & Barge Co. v. United States*, Nos. 88-978, 89-1361, 1990 WL 166368, at *2 (W.D. Wash. Mar. 5, 1990)("A tug is thus a necessary adjunct to a barge, and it seems natural to consider the two as a single entity."). However, these cases do not convince the Court that the relationship of the barge to the tow compels a finding that the barge, as a matter of law, is a covered vessel under the IINA policy. None of the cases cited by ACL consider the particular circumstance of this case where a policy lists a tow as the scheduled vessel instead of a barge. Furthermore, these cases conclude that a barge and its tow are a single unit because *the tow* is a necessary incident to the barge, not vice versa.[22] It does not necessarily follow that a barge is as essential or indispensable to a tow as a tow may be to a non-self propelled barge.

---

[22]In *Olympic Tug,* where oil spilled from a "non-self propelled" barge, the court considered a barge and tug as one unit "for the purposes of determining liability" of the operator of a tug as a discharging party under the Federal Water Pollution Control Act. 1990 WL 166368 at *2. The court in *M/V EMILY S* similarly found a barge and tug to be a single entity in order to determine the responsible party pursuant to the Oil Pollution Act. 13 F. Supp. 2d at 150.

In *Steelmat,* where both a barge and a tug were listed as covered vessels in an insurance policy, the court held that even though it was the barge that had sank and the barge that had been deemed unseaworthy, the insurer was responsible to pay up to the liability limits of both the barge and the tug because an arbitration award considered the barge and tug as one unit for the purpose of determining seaworthiness and the owner's due diligence. 842 F.2d at 1241-42.

ACL also argues that the barge is covered under the IINA policy pursuant to the "Non-Owned Vessels Clause," which provides:

> Non-owned vessels on, from or in connection with which the Insured is working or providing services, or which are hired by or being used by the Insured shall be deemed to be vessels named herein, but only with respect to the liability of the Insured arising out of or in connection with such non-owned vessels.

According to ACL, the barge was in the possession and control of DRD as it was being towed by a vessel under DRD's exclusive care, custody and control and, therefore, the barge "was being used 'in connection with' work and/or services performed by the insured."[23] Further, IINA's interpleader complaint alleges that ACL owned the barge and that DRD, a named insured, was operating an insured vessel, the M/V MEL OLIVER, to tow the barge at the time of the collision.[24]

The dispute between ACL and IINA arises with respect to the meaning of "Insured." IINA contends that "Insured" includes additional insureds like ACL and because ACL owns the barge, this clause does not deem the barge a covered vessel. ACL argues that the term refers only to the named insured and because the barge is not owned by DRD, i.e. the named insured, it is a covered vessel based on its use in connection with the named insured's work.

The front page of the IINA policy states "Insured: DRD Towing

---

[23] Rec. Doc. No. 162-2, p. 17.

[24] Civil Action No. 08-4156, Rec. Doc. No. 1, pp. 5, 11.

Company, L.L.C. et al."[25] The policy does not define or list the parties encompassed by the "et al." A "Named Insured Clause," which lists thirteen other entities and individuals, provides the only suggestion of the other parties deemed to be "Insured[s]."[26]

However, there is no doubt that "Insured" includes DRD, and this fact together with the allegations that ACL owned the barge used in connection with DRD's work convince the Court that the barge is a covered vessel pursuant to the Non-Owned Vessels Clause. Both IINA's complaint and ACL's answer allege that ACL owned the barge and that it was being towed by DRD.[27] As such, an insured, i.e. DRD, used a non-owned vessel in connection with its work.

---

[25] Rec. Doc. No. 162-3, p. 1.

[26] Rec. Doc. No. 162-3, p. 6. The policy provides:
NAMED INSURED CLAUSE
DRD Towing Company, LLC; Dantin Holding, LLC; E&D, Inc.; Margaret E. Tugs, LLC; DRD C, LLC; Stacey B., LLC; JBD Marine, LLC; Daniel Dantin, Sr.; Daniel Dantin, Jr.; Randall Dantin; Carol Dantin; Julie Dantin Schmidt; Penny Dantin Boozer and Christina Brinkop.

The Named Insured shall also include all subsidiary, associated, owned, actively managed or controlled companies existing at the effective date of the policy, or acquired during the policy period and any other company controlled or actively managed by such organization or any subsidiary thereof, at the effective date of this policy, or upon the acquisition of the control or active management thereof if acquired during the policy period.

[27] Civil Action No. 08-4156, Rec. Doc. No. 1, para. 8; Civil Action 08-4007, Rec. Doc. No. 92, para. 19. ACL also alleges in a counterclaim incorporated in its answer to the complaint for interpleader and declaratory relief that "D.R.D. had no ownership interest in the Barge DM-932" and that "D.R.D. had exclusive care, custody, and control of the Barge DM-932, which was being used by D.R.D. in connection with work and/or services being performed by D.R.D. for the benefit of ACL...." Rec. Doc. No. 92, paras. 61, 62.

That the owner of the barge, ACL, may also be an insured does not preclude coverage of the barge. The clause was clearly designed to cover vessels used during the insured's work but not owned by the insured and, therefore, not listed in the policy's schedule. Regardless of whether "Insured" also encompasses ACL as an additional insured, the Non-Owned Vessels clause clearly provides coverage for the barge which was used by an insured, but not owned by that same insured.[28] Accordingly, the barge is a covered vessel under the IINA policy and the motion to dismiss the complaint for declaratory relief is **GRANTED** with respect to this issue.[29]

### 3. IINA's Obligation to Indemnify

IINA's complaint also seeks a declaratory judgment as to whether it has any obligation to indemnify DRD or ACL. ACL argues that the request for declaratory relief should be dismissed as premature, given that there is no judgment or order establishing liability on the part of DRD or ACL. However, IINA contends that a controversy exists in light of the direct actions filed against

---

[28] The Court also notes that the pleadings in this matter do not allege that ACL used, hired, or operated any vessel or provided any work or services in connection with any vessel. Nor do they allege that ACL used its own vessel. Instead, IINA's complaint states that DRD operated the M/V MEL OLIVER and that it was towing a barge owned by ACL.

[29] This Court's ruling that the barge is a non-owned vessel as to DRD and, therefore, a covered vessel under the policy does not establish that ACL is entitled to recover removal costs from IINA. The clause limits such coverage to "liability of the Insured arising out of or in connection with such non-owned vessels." As such, IINA's responsibility to pay removal costs is contingent on a finding of DRD's liability "arising out of or in connection" with the barge, which the Court does not decide in response to this 12(c) motion.

IINA, and a declaratory judgment as to its coverage obligations is necessary before any of these direct action plaintiffs may obtain judgment against IINA.

United States District Courts have broad discretion to retain or dismiss an action for declaratory judgment. *Bailey*, 133 F.3d at 369 (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-90 (1995)). However, a federal court will not have subject matter jurisdiction and "may not issue a declaratory judgment unless there exists an 'actual controversy.'" *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998); *see* 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."). "As a general rule, an actual controversy exists where 'a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests.'" *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000) (*quoting Middle S. Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986)). "The threat of litigation, if specific and concrete, can indeed establish a controversy upon which declaratory judgment can be based." *Id.* at 897. Where a controversy is "abstract or hypothetical," an action for declaratory judgment is premature and should be dismissed. *Id.*

(*quoting United Transp. Union v. Foster,* 205 F.3d 851, 857 (5th Cir. 2000)); *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 586-87 (5th Cir. 1987)("A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required.").

Louisiana law generally provides that until the underlying issue of liability is resolved and the defendant is cast in judgment, the issue of indemnity is premature and non-justiciable. *Coregis Ins. Co. v. Sch. Bd. of Allen Parish,* No. 07-30844, 2008 WL 2325632, at *2-3 (5th Cir. June 6, 2008)(finding a declaratory action as to an insurer's duty to indemnify dependent on factual development and, therefore, premature and subject to a stay or dismissal without prejudice); *Nat'l Union Fire Ins. Co. v. St. Bernard Parish Gov't*, No. 03-3551, 2004 WL 877379, at *2 (E.D. La. Apr. 21, 2004) (Berrigan, J.); *Seaboard Marine Ltd. v. St. Paul Fire & Marine Ins. Co.*, No. 96-2446, 1996 WL 696354 (E.D. La. Nov. 25, 1996) (Livaudais, J.)(finding a claim for indemnity premature before a determination of liability); *Couvillion v. James Pest Control, Inc.*, 729 So. 2d 172, 174 (La. Ct. App. 4th Cir. 1999)(finding that "the indemnity right was contingent upon a finding of liability, and, since plaintiffs had not yet proven liability on the part of either defendant, deciding this issue was premature; there was no justiciable controversy."); *Faucheaux v. Prytania Med. Complex Owners Ass'n.*, 642 So. 2d 242, 244-45 (La.

Ct. App. 4th Cir. 1994) ("If the plaintiffs lose, there may be no indemnification required...In sum, any decision rendered by this Court at this time would be premature and perhaps an advisory opinion, which we are not permitted to render.").

However, that judgment has not yet been entered does not necessarily make an indemnity issue non-justiciable. Where coverage exclusions preclude the right to indemnity, declaratory judgment may be permissible. *See Western Heritage Ins. Co. v. River Entertainment*, 998 F.2d 311, 312-15 (5th Cir. 1993); *Bailey*, 133 F.3d at 368. "An actual controversy may exist when an insurance carrier seeks a declaratory judgment that it has a duty neither to defend nor indemnify its insured in a state court action that has not yet proceeded to judgment." *Bailey*, 133 F.3d at 368; *Liberty Mut. Ins. Co. v. Jotun Paints, Inc.*, No. 07-3114, 2008 WL 819078 (E.D. La. Mar. 25, 2008)(Africk, J.); *Scottsdale Ins. Co. v. Bayou Land & Marine*, No. 98-3668, 1999 WL 777714, at *2 (E.D. La. Sept. 30, 1999) (Vance, J.).[30]

---

[30] As this Court previously noted in *Jotun Paints,* 2008 WL 819078, at *3:

Furthermore, as many courts have acknowledged:
> The respective interests and obligations of insured and insurers, when disputed, require determination much in advance of judgment since they will designate the bearer of ultimate liability in the underlying cases and hence the bearer of the onus and risks of settlement. So viewed, the controversy is then quite proper for a judicial determination now.

*ACandS, Inc. v. Aetna Cas. & Sur. Co.*, 666 F.2d 819, 823 (3d Cir. 1981); *see, e.g.*, *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994) ("[W]e have frequently approved the use of federal declaratory judgment actions to resolve disputes over liability

The fact that ACL's liability, if any, has yet to be determined, does not compel dismissal of this declaratory judgment action. IINA seeks a declaratory judgment as to whether it has any obligation to indemnify ACL or DRD. In particular, IINA seeks a declaration that claims against ACL and DRD for punitive damages are excluded from coverage and that several other claims are excluded by the policy's American Institute Pollution Exclusion Clause and Buy Back Endorsement A. Whether these exclusions foreclose ACL's right to indemnity for certain claims is "an actual controversy" that is not necessarily dependent on a finding of liability or a judgment against ACL. *See Western Heritage*, 998 F.2d at 315; *Bailey*, 133 F.3d at 368. Whether these clauses exclude coverage is not merely a hypothetical question, but one that can be decided based on the claims currently pending against ACL, DRD and IINA in the limitation actions. *See Scottsdale*, 1999 WL 777714 at *3 (finding an action for declaratory relief from indemnity presents a justiciable controversy in light of pending state court claims). Accordingly, the motion to dismiss the complaint for declaratory relief with respect to IINA's obligation to indemnify

---

insurance coverage, even in advance of a judgment against the insured on the underlying claim for which coverage is sought."); *UNR Indus., Inc. v. Cont'l Cas. Co.*, 942 F.2d 1101, 1104 n.1 (7th Cir. 1991) ("This request for a declaration is common practice in insurance disputes, and does not impair jurisdiction."); *Nautilus Ins. Co. v. Curtis Indus. Painting Co.*, No. CIV. A. 98-339, 1998 WL 199372, at *3 (E.D. La. Apr. 23, 1998) (Vance, J.).

is **DENIED.**[31]

For the foregoing reasons,

**IT IS ORDERED** that the motion to dismiss the complaint for interpleader is **DENIED.**

**IT IS FURTHER ORDERED** that the motion to dismiss the complaint for declaratory relief is **GRANTED IN PART** and that IINA's claims for declaratory relief with respect to any losses due to a breach of the warranty of seaworthiness and with respect to coverage of the barge are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the motion to dismiss IINA's claim for declaratory relief as to whether IINA has an obligation to indemnify ACL and DRD is **DENIED.**

New Orleans, Louisiana, January 7th, 2009.

_____
**LANCE M. AFRICK**
**UNITED STATE DISTRICT JUDGE**

---

[31]However, the Court, in its discretion, may consider delaying any ruling on the declaratory judgment action in light of the limitation proceedings pending before the Court.