# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **STEPHEN MARSHALL GABARICK et al.** | **CIVIL ACTION** |
| | **No. 08-4007** |
| **VERSUS** | **REF: All Cases** |
| **LAURIN MARITIME (AMERICA) INC. et al.** | **SECTION I/4** |

## ORDER AND REASONS

Before the Court are three motions to dismiss, filed on behalf of petitioners in limitation, DRD Towing Company, LLC ("DRD"),[1] TINTOMARA interests,[2] and American Commercial Lines, LLC ("ACL").[3] DRD's motion is opposed by ACL.[4] TINTOMARA interests' motion is also opposed by ACL.[5] ACL's motion is opposed by Bunge North America, Inc. ("Bunge")[6];

---

[1] R. Doc. No. 224.

[2] R. Doc. No. 262. TINTOMARA interests include Laurin Maritime (America) Inc.; Laurin Maritime AB; Whitefin Shipping Co. Ltd.; and Anglo-Atlantic Steamship Limited. For simplicity, the Court will sometimes refer to TINTOMARA interests as "TINTOMARA."

[3] R. Doc. No. 444. ACL filed an initial motion to dismiss on November 25, 2008. R. Doc. No. 258. On December 2, 2008, ACL filed a second motion to dismiss. R. Doc. No. 444. On January 8, 2009, counsel for ACL confirmed to the Court that the second motion superseded the first motion. Therefore, **IT IS ORDERED** that ACL's first motion to dismiss, R. Doc. No. 258, is **DISMISSED AS MOOT**.

[4] R. Doc. No. 478. Crescent Towing & Salvage, Inc. ("Crescent") and Cooper/T.Smith Mooring Co., Inc. ("Cooper") have filed an opposition to both DRD's and ACL's motions. The Court will consider Crescent and Cooper's opposition in its discussion of ACL's motion.

[5] R. Doc. No. 488.

[6] R. Doc. No. 469.

AEP River Operations LLC and AEP Elmwood LLC (collectively "AEP")[7]; Ingram Barge Company ("Ingram")[8]; Shell Trading (U.S.) Company ("STUSCO") and Motiva Enterprises LLC ("Motiva")[9]; New Orleans Steamboat Company, MUR Shipping BV, Amsterdam, K-Sea Operating Partnership, L.P., Thoresen Shipping Singapore Pte. Ltd., Prince Rupert Shipping, LTD., Felicidad Lines Corporation, Dowa Line Panama, Inc., Dampskibsselskapet Norden A/S, and Meridian Bulk Carriers, Ltd.[10]; United Maritime Group ("UMG")[11]; and Crescent and Cooper.[12] The Plaintiffs' Steering Committee ("PSC") declined to file an opposition to these three motions. For the following reasons, DRD's motion is **GRANTED**, TINTOMARA interests' motion is **GRANTED**, and ACL's motion is **GRANTED**.

## BACKGROUND

On July 23, 2008, the M/V TINTOMARA and the barge DM-932, which was being towed by the M/V MEL OLIVER, collided on the Mississippi River, causing oil to spill into the river. ACL, the barge owner, DRD, the towboat operator, and TINTOMARA interests, the owners of the M/V TINTOMARA, each filed limitation complaints in this Court. Numerous claims have been filed in those limitations, including claims for relief pursuant to the Oil Pollution Act of 1990 ("OPA").

---

[7] R. Doc. No. 471.

[8] R. Doc. No. 477.

[9] R. Doc. No. 479.

[10] R. Doc. No. 480.

[11] R. Doc. No. 483.

[12] R. Doc. No. 484.

2

The Claims Adjudication Division of the United States Coast Guard ("Coast Guard"), in a letter dated July 24, 2008 and addressed to ACL, formally designated the DM-932 as the source of the oil discharge.[13] The letter stated that "[ACL] may be liable as a responsible party for the resulting removal costs and damages."[14] The Coast Guard directed ACL to fulfill its statutory obligation to advertise the designation of the DM-932 and to advertise procedures by which claims could be submitted to ACL.

ACL responded to the Coast Guard's directive by publishing an "Advertisement of Designation" fourteen times during a thirty-day period in August 2008.[15] In its advertisement, ACL designated Worley Catastrophe Response, LLC ("Worley") as its third party claims administrator to which claims should be submitted.

On November 25, 2008, this Court ruled that OPA claims were not subject to the Limitation of Shipowner's Liability Act of 1851 ("Limitation Act"), and that, therefore, they were not subject to the deadlines imposed for filing claims in those proceedings.[16] ACL, DRD, and TINTOMARA now challenge the OPA claims pending in this Court. ACL argues that this Court lacks subject matter jurisdiction over those claims. DRD and TINTOMARA each argue that they are not a "responsible party" within the meaning of OPA. The Court considers the motion of each defendant in turn.

---

[13] R. Doc. No. 444-5, ex. 2.

[14] Id.

[15] R. Doc. No. 444-5, exs. 2, 3.

[16] R. Doc. No. 251.

*LAW AND ANALYSIS*

**I.     Oil Pollution Act of 1990**

Following the Exxon Valdez oil spill, Congress passed the Oil Pollution Act of 1990, comprehensive legislation to address oil spill liability and compensation. See 33 U.S.C. §§ 2701 et seq.. When an oil spill occurs on U.S. navigable waters, the Coast Guard determines the source of the discharge and notifies a responsible party for that source.[17] A responsible party for a vessel from which oil is discharged is strictly liable for removal costs and damages.[18]

There are three complete defenses to the strict liability imposed by the Act: if the discharge of oil was caused solely by (1) an act of God; (2) an act of war; or (3) an act or omission of a third party. 33 U.S.C. § 2703(a). A party involved in an incident could be a responsible party, a sole cause third party, or a non-sole cause third party. The OPA also creates a statutory right to seek contribution from any liable or potentially liable person, and it establishes its own statute of limitations. 33 U.S.C. §§ 2709, 2717.

**II.    ACL's Motion to Dismiss**

ACL argues that the claimants identified in an exhibit attached to its motion have failed

---

[17] 33 C.F.R. § 136.305 provides: (a) When information of an incident is received, the source or sources of the discharge or threat are designated, where possible and appropriate. If the designated source is a vessel or facility, the responsible party and the guarantor, if known, are notified by telephone, telefax, or other rapid means of that designation. The designation will be confirmed by a written Notice of Designation. . . .

[18] OPA defines "responsible party," in relation to a vessel, at 33 U.S.C. § 2701(32):

> . . . "responsible party" means the following:
> **(A) Vessels**
> In the case of a vessel, any person owning, operating, or demise chartering the vessel.

4

to satisfy OPA's claim presentment requirement, as set forth at 33 U.S.C. § 2713.[19] Section 2713 permits an OPA claimant to commence an action in court when one of two circumstances have been met. First, an action may be commenced if "each person to whom the [OPA] claim is presented denies all liability for the claim." 33 U.S.C. § 2713(c)(1). Or, second, an action may be commenced if "the claim is not settled by any person by payment within 90 days after the date upon which (A) the claim was presented, or (B) advertising was begun . . ., whichever is

---

[19] Section 2713 states, in pertinent part:

§ 2713. Claims procedure

(a) Presentation
Except as provided in subsection (b) of this section, all claims for removal costs or damages shall be presented first to the responsible party or guarantor of the source designated under section 2714(a) of this title.
(b) Presentation to Fund
    (1) In general
    Claims for removal costs or damages may be presented first to the Fund--
        (A) if the President has advertised or otherwise notified claimants in accordance with section 2714(c) of this title;
        (B) by a responsible party who may assert a claim under section 2708 of this title;
        (C) by the Governor of a State for removal costs incurred by that State; or
        (D) by a United States claimant in a case where a foreign offshore unit has discharged oil causing damage for which the Fund is liable under section 2712(a) of this title.
    (2) Limitation on presenting claim
    No claim of a person against the Fund may be approved or certified during the pendency of an action by the person in court to recover costs which are the subject of the claim.
(c) Election
If a claim is presented in accordance with subsection (a) of this section and--
    (1) each person to whom the claim is presented denies all liability for the claim, or
    (2) the claim is not settled by any person by payment within 90 days after the date upon which (A) the claim was presented, or (B) advertising was begun pursuant to section 2714(b) of this title, whichever is later,
the claimant may elect to commence an action in court against the responsible party or guarantor or to present the claim to the Fund.

5

later." 33 U.S.C. § 2713(c)(2). ACL states (and no party disputes) that advertising began on August 2, 2008.[20]

*A.     Denial of Liability*

Other than AEP, no claimant argues that ninety days have elapsed since the claim was presented.[21] Instead, those claimants opposed to ACL's motion argue that ACL has denied all liability for the claim, which permits them to proceed in this Court. As evidence of this alleged denial, they cite language from ACL's limitation complaint, filed on July 28, 2008:

> The aforesaid casualty and all consequent property loss and damages and/or any personal injuries arising therefrom was not due to any fault of [ACL], Barge DM-932, or of any person for whose actions [ACL] is responsible . . . . [ACL] alleges that it has valid defenses to any and all claims and is not liable therefor.[22]

Claimants contend that this language constitutes a denial pursuant to § 2713(c)(1), which entitles them to pursue their OPA claims in court. However, as ACL points out, claimants have not cited any legal authority for the proposition that a denial contained in a limitation complaint is

---

[20] R. Doc. No. 444-2, mem. supp. 3.

[21] AEP alleges that it submitted a claim to Worley on August 8, 2008. AEP has submitted an invoice dated August 8, 2008 and correspondence from Worley dated October 6, 2008. R. Doc. Nos. 471-2, 471-3, exs. A, B. ACL challenges the sufficiency of the August 8 invoice as a proper "claim" pursuant to OPA.
    Pursuant to 33 U.S.C. § 2701(2), a "'claim' means a request, made in writing for a sum certain, for compensation for damages or removal costs resulting from an incident." Furthermore, "[t]he Coast Guard regulations state that a[n OPA] claim must provide, inter alia, a general description of the nature and extent of the impact of the oil spill and the associated damages, a list of the damages with a 'sum certain' attributed to each type of damage listed, and evidence to support the claim." Johnson v. Colonial Pipeline Co., 830 F. Supp. 309, 311 (E.D. Va. 1993) (citing 33 C.F.R. §§ 136.105, 136.109).
    The Court finds that AEP's invoice satisfies neither the statutory requirements for a proper claim nor those set forth in Johnson. In its invoice, AEP has not described the manner in which the oil spill impacted it, nor has it cited evidence in support of its purported claim.

[22] Civil Action No. 08-4046, R. Doc. No. 1, limitation compl. ¶12.

6

equivalent to a denial for purposes of § 2713(c)(1).

This Court declines to endorse claimants' interpretation of the statute. To do so would nullify the very administrative process established by OPA. Under claimants' view, they would be entitled to bring an action in court as soon as they had submitted an OPA claim to Worley, relying on the language in ACL's limitation complaint as a "denial" for purposes of § 2713(c)(1). Such an interpretation of the statute would render the entire claims submission process superfluous in any case where a potential OPA defendant had previously denied liability in blanket fashion..

"The purpose of the claim presentation procedure is to promote settlement and avoid litigation." Johnson v. Colonial Pipeline Co., 830 F. Supp. 309, 310 (E.D. Va. 1993) (emphasis added). Under claimants' reading, the statute would achieve the reverse: promote litigation and avoid settlement. In their view, an OPA claimant could entirely avoid the administrative process and resort immediately to the courts. "Congress believed that lawsuits against parties are appropriate only 'where attempts to reach a settlement with the responsible party . . . were unsuccessful.'" Id. (quoting OPA legislative history).

B.  *Jurisdictional Condition Precedent*

ACL contends that the §2713(c) presentment requirement is jurisdictional and, therefore, that the OPA claims should be dismissed without prejudice, rather than stayed, as desired by certain claimants. In Boca Ciega Hotel, Inc. v. Bouchard Transp. Co., 51 F.3d 235 (11th Cir. 1995), the Eleventh Circuit held "that the clear text of § 2713 creates a mandatory condition precedent barring all OPA claims unless and until a claimant has presented her claim" in

7

accordance with the statute. Id. at 240; see also Turner v. Murphy Oil USA, Inc., No. 05-4206, 2007 WL 4208986, at *2 (E.D. La. Nov. 21, 2007) (Fallon, J.); Marathon Pipe Line Co. v. LaRoche Industries Inc., 944 F. Supp. 476, 477 (E.D. La. 1996) (Clement, J.) ("The Court agrees that § 2713's presentation requirement is jurisdictional and mandates dismissal when that provision is applicable and not complied with by the claimant.").

Having failed to comply with §2713(c)'s mandatory condition precedent to a lawsuit, claimants' OPA claims must be dismissed without prejudice. "When a plaintiff fails under the . . . OPA notice/presentment requirements, and his claim is dismissed, the plaintiff may refile his claim after giving proper notice/presentment and waiting the prescribed amount of time." Abundiz v. Explorer Pipeline Co., 2003 WL 23594054, at *2 (N.D. Tex. Mar. 7, 2003).

Accordingly, ACL's motion to dismiss is **GRANTED** and the OPA claims identified by ACL in its exhibit are **DISMISSED WITHOUT PREJUDICE**.

### III. DRD's Motion to Dismiss

DRD argues that it is not a "responsible party" as defined by OPA and that, therefore, no claimant has a remedy against it pursuant to OPA. According to DRD, all OPA claims against it, with the exception of ACL's claim for contribution, should be dismissed without prejudice. Other than ACL, no party has opposed DRD's motion. The Court will proceed to consider ACL's arguments against dismissal.

ACL identifies two pertinent allegations in its claim in DRD's limitation proceeding. First, it alleges that "[DRD] is the responsible party and is liable for all removal costs and

damages pursuant to OPA."[23] Second, ACL "demands contribution from [DRD], pursuant to OPA and/or the General Maritime Law of the United States for the claims made against it by third parties and for all costs and expenses related to the oil spill."[24] As stated in its brief, DRD does not seek dismissal of the second allegation.

ACL argues that dismissal of OPA claims against DRD would be premature because the Court has not yet determined responsibility for the collision and ensuing oil spill. ACL argues that although DRD has not yet been identified as a responsible party for the spill, the liability provision of OPA clearly contemplates the possibility of more than one responsible party.[25]

Pursuant to 33 U.S.C. § 2714(a), the U.S. Coast Guard has designated the DM-932 as the source of the oil discharge. As owner of the DM-932, ACL has been designated a "responsible party." However, ACL's status as a responsible party does not foreclose the possibility that DRD may also be determined to be a responsible party. According to ACL, "[r]esponsible party liability under OPA extends beyond the owners of the vessel from which oil was discharged."[26]

---

[23] Civil Action No. 08-4261, R. Doc. No. 5, ACL's claim ¶19.

[24] Id. at ¶23.

[25] Section 2702(a) states:

> Notwithstanding any other provision or rule of law, and subject to the provisions of this Act, each responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages specified in subsection (b) of this section that result from such incident.

Id. (emphasis added). The Court also notes that while the designation of the source of the discharge is initially made by the Coast Guard, the ultimate determination of which party or parties is a responsible party, within the meaning of 33 U.S.C. § 2702(a), is to be made by the court. The parties do not cite any provision of OPA that dedicates the final, binding "responsible party" determination to the discretion of the Coast Guard.

[26] R. Doc. No. 478, mem. opp'n 7.

9

ACL argues that, based on DRD's status as demise/bareboat charterer of the M/V MEL OLIVER, the towboat of the DM-932, DRD may qualify as a responsible party for the spill.

DRD concedes that ACL "can seek to have DRD identified as the responsible party."[27] This is the exact right that ACL, having alleged that DRD is a responsible party and now faced with a motion to dismiss, seeks to preserve. The Court declines to dismiss ACL's OPA claim against DRD.[28] With respect to the OPA claims of individual claimants against DRD, however, the Court has received no opposition to their dismissal. Accordingly, DRD's motion to dismiss is **GRANTED** and the OPA claims against DRD are **DISMISSED WITHOUT PREJUDICE**. ACL's allegations that DRD is the responsible party and its claim for contribution survive DRD's motion.

## IV.  TINTOMARA Interests' Motion to Dismiss

TINTOMARA interests argue, along the same lines as DRD, that they are neither responsible parties nor the sole cause of the collision. Like DRD, TINTOMARA interests do not seek dismissal of ACL's OPA claim for contribution. Other than ACL, no party has opposed TINTOMARA's motion to dismiss. ACL argues that the "responsible party" determination is premature for the Court to make at this time. For the reasons stated above in connection with

---

[27] R. Doc. No. 224-2, mem. supp. 8.

[28] The Court need not now decide whether DRD is a responsible party for the spill. The Court has, however, reviewed the cases cited by DRD and ACL. These cases do not conclusively establish that, as a matter of law, a tugboat towing a barge, can never be a "responsible party" pursuant to OPA.
    For example, in Commonwealth of Puerto Rico v. M/V EMILY S, 13 F. Supp. 2d 147 (D.P.R. 1998), the district court found that a "dumb" barge and its tow were a single entity and, for OPA purposes, were both to be considered a "discharging vessel." Id. at 150. Pursuant to this finding, the court went on to hold that the tug's owner was a "responsible party" for the oil spill. Id.
    The Court will defer ruling on whether DRD is a "responsible party" until such time as it deems appropriate, noting for the time being that the law does not appear to foreclose that possibility.

DRD's motion to dismiss, TINTOMARA interests' motion to dismiss is **GRANTED** and the OPA claims against TINTOMARA interests are **DISMISSED WITHOUT PREJUDICE**. ACL's allegations that TINTOMARA interests are responsible parties and ACL's claim for contribution survive TINTOMARA interests' motion.

V.  **Conclusion**

Accordingly,

**IT IS ORDERED** that the motions to dismiss,[29] filed on behalf of ACL, DRD, and TINTOMARA interests, are **GRANTED**. The claims filed in this Court pursuant to the Oil Pollution Act of 1990 are **DISMISSED WITHOUT PREJUDICE**, with the exception of ACL's claims against DRD and TINTOMARA interests.

**IT IS FURTHER ORDERED** that the first motion to dismiss,[30] filed on behalf of ACL, is **DISMISSED AS MOOT**.

New Orleans, Louisiana, January 12, 2009.

                                                                                    **LANCE M. AFRICK**
                                                                                    **UNITED STATES DISTRICT JUDGE**

---

[29] R. Doc. Nos. 224, 262, 444.

[30] R. Doc. No. 258.