UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STEPHEN MARSHALL GABARICK, ET AL | CIVIL ACTION |
| VERSUS | NO. 08-4007 Consolidated cases |
| LAURIN MARITIME (AMERICA) INC., ET AL | REF: All Cases SECTION: "B" (4) |

### ORDER AND REASONS

On April 16, 2009, oral argument was held before the Court on Motions to Dismiss General Maritime Claims Based on OPA Preemption filed by ACL and Tintomara. (Rec. Docs. 576, 580). The motions are opposed by Weeks Marine, Inc. ("Weeks") (Rec. Docs. 604, 609, 611)[1], Crescent Towing & Salvage, Inc. ("Crescent") and Cooper/T. Smith Mooring Co., Inc. ("Cooper") (Rec. Doc. 606), U.S. United Maritime Group, LLC and its subsidiaries (collectively "UMG")(Rec. Docs. 607, 658), Claimants Steering Committee ("CSC")(Rec. Doc. 615), and AEP River Operations LLC and AEP Elmwood LLC (collectively "AEP")(Rec. Doc. 617). After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that the Motions to Dismiss General Maritime

---

[1] Rec. Docs. 604 and 609 oppose ACL's Motion, and Rec. Doc. 611 opposes Tintomara's motion.

1

Claims based on the Preemptive Effect of OPA are **GRANTED** and that all claims covered under 33 U.S.C. § 2702 are **DISMISSED without prejudice.**

**BACKGROUND**

On July 23, 2008, the M/V TINTOMARA and the barge DM-932, which was being towed by the M/V MEL OLIVER, collided on the Mississippi River, causing oil to spill into the river. ACL, the barge owner, DRD, the towboat operator, and TINTOMARA interests, the owners of the M/V TINTOMARA, each filed limitation complaints in this Court. Numerous claims have been filed in those limitations, including claims for relief pursuant to the Oil Pollution Act of 1990 ("OPA") and other claims for damages as a result of the oil spill.

The Claims Adjudication Division of the United States Coast Guard ("Coast Guard"), in a letter dated July 24, 2008 and addressed to ACL, formally designated the DM-932 as the source of the oil discharge. (See Rec. Doc. 444-5, Ex. 2). The letter stated that "[ACL] may be liable as a responsible party for the resulting removal costs and damages." *Id*. The Coast Guard directed ACL to fulfill its statutory obligation to advertise the designation of the DM-932 and to advertise procedures by which claims could be submitted to ACL. ACL responded to the Coast Guard's directive by publishing an "Advertisement of Designation" fourteen times during a thirty-day period in August 2008. (See Rec. Doc. 444-5, Exs. 2, 3). In its advertisement, ACL designated Worley Catastrophe Response, LLC

2

("Worley") as its third party claims administrator to which claims should be submitted. On November 25, 2008, Judge Lance Africk[2] ruled that OPA claims were not subject to the Limitation of Shipowner's Liability Act of 1851 ("Limitation Act"), and that, therefore, they were not subject to the deadlines imposed for filing claims in those proceedings. (Rec. Doc. 251)(See also Rec. Doc. 568 at 3)(stating the ruling in Rec. Doc. 251 in Background Facts section).

ACL, DRD, and TINTOMARA filed motions to dismiss OPA claims then pending before Judge Africk. The motions to dismiss were granted, and on January 12, 2009, Judge Africk dismissed without prejudice all OPA claims filed in this Court. (Rec. Doc. 568). The present motions to dismiss seek to dismiss all claims for damages that are recoverable under OPA on the basis of preemption.[3] ACL argues that the mandatory language of OPA requires that damages recoverable under OPA, specifically those enumerated in 33 U.S.C. § 2702(b)(2)(A)-(F), are subject to and must be pursued according to OPA. Claimants argue that OPA is not preemptive but supplemental and assert that they are entitled to choose to pursue their claims under General Maritime Law rather than under OPA.

---

[2]Judge Lance Africk recused himself from the subject litigation after discovering that a law firm of record here interviewed his spouse for an attorney position with the firm while this lawsuit was pending before the Court. (Rec. Doc. 591).

[3]Note that this Court, in its January 13, 2009 Minute Entry, gave ACL until January 20, 2009 to submit a motion to dismiss claims in light of any preclusive effect of OPA. (Rec. Doc. 574).

3

## DISCUSSION

**A. Background of Oil Pollution Act of 1990 ("OPA")**

Following the Exxon Valdez oil spill, Congress passed the Oil Pollution Act of 1990, comprehensive legislation to address oil spill liability and compensation. See 33 U.S.C. §§ 2701, et seq. When an oil spill occurs on U.S. navigable waters, the Coast Guard determines the source of the discharge and notifies a responsible party for that source.[4] A responsible party for a vessel from which oil is discharged is strictly liable for removal costs and damages.[5] There are three complete defenses to the strict liability imposed by the Act: if the discharge of oil was caused solely by (1) an act of God; (2) an act of war; or (3) an act or omission of a third party. 33 U.S.C. § 2703(a). A party involved in an incident could be a responsible party, a sole cause third party, or a non-sole cause third party. OPA also creates a statutory right to seek contribution from any liable or potentially liable person, and it establishes its own statute of limitations. 33 U.S.C. §§ 2709, 2717.

**B. Mandatory and Exclusive Language of OPA**

---

[4] 33 C.F.R. § 136.305 provides: (a) When information of an incident is received, the source or sources of the discharge or threat are designated, where possible and appropriate. If the designated source is a vessel or facility, the responsible party and the guarantor, if known, are notified by telephone, telefax, or other rapid means of that designation. The designation will be confirmed by a written Notice of Designation. . . .

[5] OPA defines "responsible party," in relation to a vessel, at 33 U.S.C. § 2701(32):. . . "responsible party" means the following:(A) Vessels In the case of a vessel, any person owning, operating, or demise chartering the vessel.

ACL contends that OPA is the exclusive remedy for any public or private claimant seeking recovery for "covered damages" as defined by OPA in 33 U.S.C. § 2702, which states in pertinent part:

(a) In general

<u>Notwithstanding any other provision or rule of law</u>, and subject to the provisions of this Act, <u>each responsible party for a vessel or a facility from which oil is discharged</u>, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone <u>is liable for the removal costs and damages specified in subsection (b) of this section that result from such incident.</u>

(b) Covered removal costs and damages
...

(2) Damages

The damages referred to in subsection (a) of this section are the following:

(A) Natural resources

Damages for injury to, destruction of, loss of, or loss of use of, natural resources, including the reasonable costs of assessing the damage, which shall be recoverable by a United States trustee, a State trustee, an Indian tribe trustee, or a foreign trustee.

(B) Real or personal property

Damages for injury to, or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property.

(C) Subsistence use


Damages for loss of subsistence use of natural resources, which shall be recoverable by any claimant who souses natural resources which have been injured,

> destroyed, or lost, without regard to the ownership or management of the resources.
>
> (D) Revenues
>
> Damages equal to the net loss of taxes, royalties, rents, fees, or net profit shares due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by the Government of the United States, a State, or a political subdivision thereof.
>
> (E) Profits and earning capacity
>
> Damages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by **any claimant**.
>
>
> (F) Public services
>
> Damages for net costs of providing increased or additional public services during or after removal activities, including protection from fire, safety, or health hazards, caused by a discharge of oil, which shall be recoverable by a State, or a political subdivision of a State.

33 U.S.C. § 2702 (emphasis added). OPA does not cover bodily injury claims or collision damage, thus ACL concedes that those claims, as well as the Exoneration/Limitation Petitions of ACL, DRD, and Tintomara, are not preempted by OPA and are properly before this Court.[6] (Rec. Doc. 576 at 2-3).

The text of OPA implies its mandatory and exclusive nature.

---

[6]Specifically, ACL asserts that the bodily injury claims of John Bavarette, James Pettigrew, and David Leblanc (Jones Act seamen employed by DRD) and the collision damage claims of ACL, DRD, and Tintomara, including contribution/indemnity claims and damage claims related to hull damage to M/V Tintomara, total loss of Barge DM-932, salvage/wreck removal, and related expenses are properly before the Court. (Rec. Doc. 576 at 2-3).

6

Section 2702(a) mandates the strict liability of the responsible party for the damages enumerated in section(b), "[n]otwithstanding any other provision or rule of law, and subject to the provisions of this Act." Section 2713 of the Act specifies the claims procedure and § 2713(a) states:

> (a) Presentation
>
> Except as provided in subsection (b) of this section, all claims for removal costs or damages shall be presented first to the responsible party or guarantor of the source designated under section 2714(a) of this title.[7]

Section 2713(a) uses the absolute words "all" and "shall," directing the course of action for "all claims" and mandating that they "shall" be presented first to the responsible party. Section 2713(c) indicates when suit in federal court is appropriate:

> (c) Election
>
> If a claim is presented in accordance with subsection (a) of this section and--
>
> **(1)** each person to whom the claim is presented denies all liability for the claim, or
>
> **(2)** the claim is not settled by any person by payment within 90 days after the date upon which (A) the claim was presented, or (B) advertising was begun pursuant to section 2714(b) of this title, whichever is later,
>
> the claimant may elect to commence an action in court against the responsible party or guarantor or to present the claim to the Fund.

---

[7] Subsection (b) deals with presentation to the Oil Spill Liability Trust Fund established in 26 U.S.C. § 9509. ACL asserts that this is inapplicable in the present case.

Judge Africk in the present case and Judge Clement in *Tanguis v. M/V Westchester*, 153 F.Supp. 2d 859, 867 (E.D. La. 2001) have described OPA as <u>comprehensive</u> legislation addressing marine oil spill liability and compensation. (Rec. Doc. 568 at 4). Judge Clement went on to recognize, "This new scheme includes new remedies, which, in many respects, preempt traditional maritime remedies. This result is reflected in the first clause of OPA's admiralty and maritime savings provision: '*Except as otherwise provided in this chapter*, this chapter does not affect ... admiralty and maritime law....'" *Id*. The savings provision to which Judge Clement refers is set forth in 33 U.S.C. § 2751 and states in pertinent part:

(e) Admiralty and maritime law

Except as otherwise provided in this Act, this Act does not affect–

**(1)** admiralty and maritime law; or

**(2)** the jurisdiction of the district courts of the United States with respect to civil actions under admiralty and maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

Claimants refer to the savings provision as a basis for their argument that OPA is a supplemental rather than exclusive avenue for the damages it covers. However, Claimants' memoranda ignores the first part of section (e) - "except as otherwise provided in this Act." Additionally, Claimants often cloud the issue at bar by arguing that OPA does not preempt general maritime law claims rather than focusing on preemption solely of the damages specifically

8

covered by OPA. This Court, like Judge Clement, recognizes the plain language of the statutory text and its implications. OPA does not affect admiralty and maritime law except as provided in the Act. The Act applies to the damages listed in § 2702, which also specifically references its exclusive nature with respect to other provisions of law: "<u>Notwithstanding any other provision or rule of law</u>, and subject to the provisions of this Act...." 33 U.S.C. § 2702(a). The Act also uses the absolute words "all" and "shall," stating that "<u>all</u> claims for ... damages <u>shall</u> be presented first to the responsible party," and allows for suit after exhaustion of the claims process as outlined in § 2713(c). 33 U.S.C. § 2713 (emphasis added). Hence, the plain language of the statute indicates its mandatory and exclusive nature with respect to its covered damages.

**C. General Maritime Law and the Constitution**

CSC presents an argument under Article III, clause 2 of the Constitution and its creation of the basis for admiralty and maritime law of the United States. CSC seems to argue that because the federal courts are constitutionally afforded jurisdiction over maritime law that Congress cannot change, or that there is an extremely, almost unreachably high bar to, changing, i.e. preempting, long standing, judge created general maritime law. However, as recognized by Tintomara, the Constitution reserves jurisdiction. Furthermore, Congress has the power to legislate in the area of maritime law and has created legislation which has affected general

9

maritime law with the passage of such statutes as the Limitation of Liability Act, the Harter Act, the Jones Act, the Oil Pollution Act of 1924, the Federal Water Pollution Control Act, and the Clean Water Act.

The Supreme Court has recognized the court's obligation to recognize the laws established by Congress and stated, "when [Congress] does speak directly to a question, the courts are not free to 'supplement' Congress's answer so thoroughly that the act becomes meaningless." *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990)(*citing Mobil Oil Corp v. Higginbottham*, 436 U.S. 618, 625 91979). Furthermore, "[w]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19 (1979). When considering an issue similar to the one *sub judice*, the Supreme Court recognized the preemption of Federal Common Law and General Maritime Law by Congress's comprehensive legislation in the area of water pollution. *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1 (1981). In finding that the Federal Water Pollution Control Act preempted federal common law of nuisance in the area of ocean pollution, the Court stated, "In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate." *Id*. at 15. As recognized in the section of this Order on the mandatory and

exclusive language of the Act, OPA explicitly states the damages to which it applies and the remedy to be pursued. The courts are to recognize this direct answer of Congress rather than seek to subvert it by allowing pursuit of the types of claims covered by OPA under the general maritime law prior to proper submission of the claims as articulated in OPA.

**D. Preemption - Factors for Consideration**

The parties generally argue the issue of preemption by referencing case law and the legislative history of the Act. The Second Circuit in *U.S. v. Oswego Barge Corp.*, 664 F.2d 327 (2nd Cir. 1981) reviewed Supreme Court decisions and gleaned four factors to be considered when analyzing statutory preemption of general maritime law claims. Though *Oswego* is persuasive case law, the Fifth Circuit in *United States v. M/V Big Sam*, 681 F.2d 432, 442 (5th Cir. 1982) adopted the features of the *Oswego* court's analysis. Furthermore, the arguments presented by the parties in the present case address the *Oswego* factors and Claimants, ACL, and Tintomara have discussed preemption under the *Oswego* factors. The *Oswego* factors include the following: (1) legislative history; (2) the scope of the legislation; (3) whether judge made law would fill a gap left by Congress's silence or rewrite rules that Congress enacted; and (4) likeliness of Congress's intent to preempt "long established and familiar principles of the common law or the general maritime law." *Id*. at 344.

**(1) Legislative History**

Claimants present legislative history regarding OPA's savings provision; however these references speak to jurisdiction. For example, CSC references H.R. Conf. Repp. 101-653 (1990), reprinted in 1990 U.S.C.A.N. 779, which states that the OPA savings provision "is intended to clarify that the House bill does not supersede [Art. III, clause 2 of the Constitution], nor does it change the jurisdiction of the District Courts...." Another legislative reference states, "It is not the intent of the Conferees to change the jurisdiction in incidents that are within the admiralty and maritime laws of the United States." (Rec. Doc. 615)(quoting 1990 U.S.C.C.A.N. 779, 839).

As previously recognized by this Court, the legislative intent of OPA was to encourage settlement and reduce litigation in oil spill cases. (See Rec. Doc. 568 at 7). Consider the portions of legislative history presented by Tintomara:

> It is important to note that following enactment of this Act, liability and compensation for petroleum oil pollution damages caused by a discharge from a vessel or facility will be determined in accordance with this Act.
> H.R. Conf. Rpt, p.802.
>
> The bill requires claims to be presented in the first instance to the discharger, where known.
> Senate Rpt, p.732.3
>
> Wherever possible, the burden is to be on the discharger to first bear the costs of removal and provide compensation for any damages.
> Senate Rpt,p.732.
>
> One intent was to "provid[e] strong incentive to the discharger to undertake removal operations at its own initiative to cooperate with Federal and State authorities,

12

>     and to provide prompt compensation."
> Senate Rpt, p.732.
>
> OPA "create[s] a single Federal law providing cleanup authority, penalties, and liability for oil pollution." Senate Rpt, p.730.

The last statement seems to summarize Congress's intent in enacting OPA, the creation of a single Federal law regarding liability for oil pollution.

### (2) Scope of the Legislation

OPA defines its scope explicitly through its statutory text. It defines what damages are covered and the process for pursuing a claim, and allows suit in federal court should that process be unsuccessful. OPA also has accompanying regulations. See 33 C.F.R. § 153.101, et seq.

### (3) Whether judge made law would fill a gap left by Congress's silence or rewrite rules that Congress enacted;

This issue was basically addressed in the section of this Order on Article III, clause 2, of the Constitution and Congress's powers to enact maritime statutes in the face of existing general maritime law. Claimants argue that "applying the judge-made general maritime law allows the claimant to pursue claims that are not covered under OPA." (Rec. Doc. 615 at 7). When looking at OPA preemption only with respect to the damages it states as covered, there is no gap. Preemption by OPA of the claims covered by OPA still allows the claimant to pursue claims not covered by OPA under general maritime

13

law.  OPA expressly leaves claims not addressed by the Act to general maritime and admiralty law.  See savings provision of OPA, 33 U.S.C. § 2751 .

**(4) Likeliness of Congress's intent to preempt "long established and familiar principles of the common law or the general maritime law."**

Claimants basically argue that because the statutory language of OPA does not contain an explicit preemption cause or otherwise expressly preempt the general maritime law, that preemption of general maritime claims for the damages covered under OPA was not the intent of Congress.  Claimants cite Senate Report No. 101-94 in support of its assertion that OPA is simply a package of complementary laws.  This approach ignores other statements of Congress regarding its intent and previous laws preempting maritime rules, specifically law relating to water pollution. *See City of Milwaukee v. Illinois and Michigan*, 451 U.S. 304 (1981), and *Middlesex County Sewerage Authority v. National Sea Clammers Assoc.*, 453 U.S. 1 (1981)(both addressing the Federal Water Pollution Control Act, 62 Stat. 1155, et seq.); *see also United States v. Dixie Carriers, Inc.*, 462 F.Supp. 1126 (E.D. La. 1978), aff'd 627 F.2d 736 (5th Cir. 1980)(finding that recovery under general maritime law would violate the structure of the Clean Water Act, 80 Stat. 1246, et seq.).

The Supreme Court recently addressed preemption in *Altria Group,*

14

*Inc. v. Good*, 129 S.Ct. 538 (December 15, 2008). The case involved possible preemption of a state statute by a federal law, specifically whether the Federal Cigarette Labeling and Advertising Act ("Labeling Act") preempted a claim of deceptive advertising under Maine's Unfair Trade Practices Act (MUTPA). The Labeling Act contained two express pre-emption provisions. The provision at issue provided that "no requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provision of this chapter." *Id*. at 544. The Court held that the Labeling Act did not preempt MUTPA, finding that the Act's purpose of informing the public of the health risks of smoking would not be served by limiting the States' authority to prohibit deceptive statements in cigarette advertising.

*Altria* provides some general guidance on preemption, emphasizing the importance of the purpose of Congress on inquiries into preemptive effect of a statute and noting that "Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose." *Id*. at 143. The Court also acknowledged that pre-emptive intent may be inferred.[8] *Id*. Although the Court

---

[8] Although the Court evaluated implied preemption, its analysis focused on the petitioners' argument that a finding of no preemption would present an obstacle to the FTC's long standing policy of promoting the development of low tar cigarettes. *See Altria*, 129 S.Ct. at 549-551. The analysis was very specific to the statutes and policies at issue in that case and is not very helpful for evaluation of the present issue in *Gabarick*.

15

discussed an assumption against preemption and ultimately found no preemptive effect in that case, the presumption and discussion was specific to federal preemption of the States rather than a general discussion about preemption or a discussion specific to statutory preemption of federal judge made law. *Id*.

The relationship between the statutes at issue in *Altria* is distinct from the relationship between OPA and the general maritime law. In *Altria*, the Court found that although the federally mandated health warnings might "bear on the materiality of [the] allegedly fraudulent statements" prohibited under the state deceptive advertising statute, that did not change the case from one about fraudulent statements to one about health warnings. This tangential relationship between the statutes in *Altria* is quite distinct from the present case which involves claims that are explicitly covered by OPA rather than tangentially related.

*M/V Big Sam* is the only Fifth Circuit preemption case cited by the parties. The court found that the Federal Water Pollution Act ("FWPA") did not preempt the maritime tort remedies of the plaintiff, United States. The court based its finding on a provision of the FWPA that expressly stated that the liabilities established by the Act "shall in no way affect any rights which ... the United States Government may have against any third party whose actions may in any way have caused or contributed to the discharge of oil or hazardous substance." *Big Fish*, 681 F.2d at 434. *M/V Big Sam* is

distinguishable from the present case because the FWPA provision and the court's holding were specific to the plaintiff United States Government.

This Court finds that an evaluation of the *Oswego* factors indicates that OPA preempts general maritime law claims that are recoverable under OPA. Furthermore, the Court finds that the intent of Congress, noted by the Supreme Court in *Altria* as "the ultimate touchstone in every pre-emption case" and articulated in both the express language of the statute and the legislative history, was to encourage settlement and reduce litigation in oil spill cases through the enactment of comprehensive federal legislation that provides "cleanup authority, penalties, and liability for oil pollution." *Altria*, 129 S.Ct. at 543; Senate Rpt, p.730.

**E. OPA preemption and claims against Tintomara.**

Tintomara is regarded as a third party in light of ACL's designation by the Coast Guard as the responsible party. Additionally, ACL is suing Tintomara as a contributor; such action regarding OPA cleanup costs and damages would be regulated under OPA's provisions for the responsible party's recovery from third parties. UMG argues that OPA does not prevent claims against third parties because 33 U.S.C. § 2709 states that a person, rather than the responsible party alone, "may bring a civil action for contribution against any other person who is liable or potentially liable under this Act or another law." AEP argues that since

17

Tintomara is not the responsible party, § 2713 does not apply to it. (Rec. Doc. 617 at 3-4). Further, Weeks Marine argues that in *National Shipping Co. of Saudi Arabia v. Moran Mid-Atlantic Corp.*, 924 F.Supp. 1436, 1448 (E.D.Va.1996), aff'd, 122F.3d 1062 (4th Cir.1997) (table), cert. denied, 523U.S. 1021, 118 S.Ct. 1301, 140 L.Ed.2d 467(1998)(cited in *Tanguis*), a party was allowed to pursue its OPA claims alongside general maritime law claims. Tintomara points out that in *National Shipping* the general maritime law claims were for contribution, which Tintomara asserts is not being sought by Claimants in the present case. Furthermore, *National Shipping* found that OPA preempted general maritime law and "only preserves admiralty claims which are not addressed in OPA, such as [a] claim for ... collision damages." *Id*. at 1447.

In light of Congress's intent to minimize piecemeal lawsuits and the mandatory language of OPA discussed earlier, it appears that Claimants should pursue claims covered under OPA only against the responsible party and in accordance with the procedures established by OPA. Then, the responsible party can take action to recover from third parties. Additionally, once claimants have exhausted the OPA administrative remedies, they are then entitled, under the statutory language expressed in OPA, to pursue their claims in federal court. One could interpret this to mean that all actions of claimants that allege damages which are covered by OPA would first go through the OPA claim process prior to any suit against any party. Such an

18

interpretation would be consistent with the plain language interpretation of the statute. For example, 33 U.S.C. § 2709 states that any person can file suit, but it does not say when. Considering the statute as a whole, a person could file suit after exhausting OPA administrative procedures as established in § 2713, which states that "all claims for ... damages shall be presented <u>first</u> to the responsible party." Additionally, it is important to note that this has no effect on damages not covered under OPA. Therefore, the Court finds that all claims that are recoverable under OPA, specifically those covered damages enumerated in 33 U.S.C. § 2702, are preempted by OPA. Accordingly,

**IT IS ORDERED** that the Motions to Dismiss General Maritime Claims based on the Preemptive Effect of OPA are **GRANTED** and that all claims covered under 33 U.S.C. § 2702 are **DISMISSED without prejudice.**

New Orleans, Louisiana, this 22nd day of April, 2009.

UNITED STATES DISTRICT JUDGE