| | |
|---|---|
| **STEPHEN MARSHALL GABARICK,** **ET AL** | **CIVIL ACTION** |
| | **NO. 08-4007** |
| **VERSUS** | **Consolidated cases** |
| **LAURIN MARITIME (AMERICA)** **INC., ET AL** | **REF: All Cases** |
| | **SECTION: "B" (4)** |

## ORDER AND REASONS

On April 16, 2009, oral argument was held before the Court on Motions for the Release/Disbursal of Funds filed by DRD Towing, ACL, and Daigle, Fisse & Kessenich ("DFK"). (Rec. Doc. Nos. 160, 570, 578). The Court took the matter under advisement and invited further briefing on various issues. At issue are the insurer's responsibility to reimburse DRD, ACL, and DFK for defense costs and a request for disbursement from those funds deposited by IINA insurance into the Registry of the Court for expenses to date, minus deductible. After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that DFK's Motion is **DENIED**.

**IT IS FURTHER ORDERED** that DRD's motion is **GRANTED** with respect to those sums paid for medical and maintenance and cure of DRD's injured crew members and **DISMISSED** without prejudice in all other

1

respects.

**IT IS FURTHER ORDERED** that ACL's motion is **DENIED.**

## BACKGROUND

On July 23, 2008, the M/V TINTOMARA and the Barge DM-932, which was being towed by the M/V MEL OLIVER, collided on the Mississippi River, causing oil to spill into the river. As a result, several lawsuits were filed against ACL, the owner of the barge, DRD Towing Company, Inc. ("DRD"), the operator of the towboat, and Whitefin Shipping Co., Ltd., Laurin Maritime (America), Inc., Laurin Maritime AB; and Anglo-Atlantic Steamship Limited (collectively "the Tintomara interests"), the owners of the M/V TINTOMARA. The parties have filed four limitation proceedings with respect to these vessels.

IINA issued an insurance policy to DRD, which was in effect at the time of the collision and included Hull and Machinery coverage for damage to vessels identified in the policy's schedule/description of vessels. The policy also provided Protection and Indemnity (P&I) coverage for "costs, charges, and expenses reasonably incurred and paid by the Assured in defense against any liabilities insured against...in respect of the vessel named herein."[1] ACL contends that it is an additional insured under the policy.[2]

Following a demand from DRD for security, a demand from ACL for

---

[1] Civil Action No. 08-4156, Rec. Doc. No. 1, p.11.

[2] *Id.* at p. 10.

2

defense and indemnification, and demands from two law firms for defense costs, IINA initiated an interpleader action in this Court, pursuant to Rule 22 of the Federal Rules of Civil Procedure and 28 U.S.C. §1335, naming as defendants ACL, DRD, law firms retained by DRD and by insurance broker Marsh USA on behalf of DRD, and several plaintiffs who had filed class actions against DRD and ACL for economic and compensatory damages.[3]

In its interpleader complaint, IINA alleges that its Hull and Machinery policy limits for the M/V MEL OLIVER are $850,000 and its P&I policy limits are $1 million per accident. In light of competing demands on its P&I policy by various parties and IINA's "doubt as to which, if any, of the claimants is entitled to be paid," IINA deposited $985,000, after deducting the $15,000 deductible, into the registry of the Court.

On January 7, 2009, the Court granted in part and denied in part ACL's motion seeking to dismiss the interpleader complaint, denying ACL's motion to dismiss the complaint for declaratory relief with respect to IINA's obligation to indemnify ACL and DRD[4] and dismissing the complaint with prejudice with respect to the implied warranty of seaworthiness and the issue of coverage of the barge, at least as to

---

[3] In December 2008, the Court permitted the TINTOMARA interests to intervene in the interpleader action as a matter of right. (Rec. Doc. No. 530).

[4] The Court noted that it may consider delaying any ruling on the declaratory judgment action in light of the pending limitation proceedings. (Rec. Doc. 558 at 23 n. 31).

DRD.[5]  (Rec. Doc. 558).  The Court also found that IINA "does not have a duty to defend but only an obligation to reimburse incurred costs," thereby denying ACL's motion on that issue.  *Id*. at 10.

DFK, a law firm hired by Marsh USA, DRD's insurance broker, immediately following the collision, alleges that it performed defense work on behalf of both DRD and IINA and now moves for reimbursement of its fees, costs, and expenses from the funds deposited into the Court's Registry by IINA.  DRD and ACL seek reimbursement for defense costs incurred thus far, and DRD also seeks reimbursement for amounts paid for maintenance and cure on behalf of three injured crew members.  DFK, DRD, and ACL all argue that reimbursement for defense costs are outside the policy limits and should be paid contemporaneously.  DRD also argues that IINA has a duty to reimburse all defense costs, not just the costs to defend covered liabilities.

IINA objects to DFK's motion and argues that DFK was retained by DRD's broker to represent DRD's interests with IINA's consent and

---

[5]The parties have questioned whether Judge Africk's order included a ruling that the barge was covered as to ACL.  The Court stated in a footnote, "This Court's ruling that the barge is a non-owned vessel as to DRD and, therefore, a covered vessel under the policy does not establish that ACL is entitled to recover removal costs from IINA.  The clause limits such coverage to 'liability of the Insured arising out of or in connection with such non-owned vessels.'"  (Rec. Doc. 558 at 18 n.29).  Additionally, the Court's analysis relied upon the non-owned vessel clause of the policy.  Because ACL owns the barge, it appears that the Court's Order may not have included coverage of the barge as to ACL.  However, this Court is denying ACL's motion to disburse on other grounds and finds it unnecessary to resolve the issue of coverage of the barge with respect to ACL for evaluation of the present motion .

therefore did not represent IINA. Further, IINA argues that because it has a duty to reimburse defense costs rather than a duty to defend, it is not obligated to pay DFK directly. IINA also asserts that defense costs are within and erode the limit of liability under Section PI of the Policy. Regarding DRD's motion, all parties,[6] including Tintomara interests, agree to the disbursement of funds to pay medical and maintenance and cure for DRD's injured crew members, including reimbursement to DRD for such. Additionally, IINA agrees to payment to DRD for claims against it for bodily injury to non-employees[7] and does not object to reimbursement of DRD's defense costs and expenses reasonably incurred with respect to these injury claims. (Rec. Doc. 263 at 6). IINA does, however, object to disbursement for DRD's costs to defend liabilities IINA alleges are not covered under the policy.

IINA also objects to ACL's motion and first argues that Barge DM-932 is not an insured vessel with respect to ACL. Next IINA argues that a decision regarding payment to ACL for defense costs is premature in light of ACL's other insurance coverage and urges the Court to delay defense costs disbursements until after coverage issues have been resolved. Tintomara interests object to any disbursement for defense costs at this time due to the probable depletion of the interpleader fund. Tintomara interests submit that

---

[6]See Rec. Doc. 249 at 2 and Rec. Doc. 263 at 6.

[7] IINA does, however, object to payment for claims for punitive damages.

5

the distribution of interpleader funds "should come only after all parties have submitted the nature and amount of their claims and have set forth the basis upon which they claim to be entitled to the fund." (Rec. Doc. 249 at 3). At that point, argue Tintomara interests, the Court can determine which claims, if any, have preference and priority.

## DISCUSSION

I. **DFK's Motion for Recovery of Defense Costs and Expenses (Rec. Doc. 578).**

DFK was hired immediately following the collision by Marsh USA, DRD's insurance broker, to investigate the collision and protect the interests of DRD, and allegedly IINA as well, with respect to claims and liabilities associated with the collision. After receiving IINA's Complaint for Interpleader, DFK advised IINA in writing that it was ceasing activity in the matter on August 13, 2008. DFK seeks payment for its services rendered on behalf of DRD and allegedly on behalf of IINA from July 23, 2008 to August 13, 2008.

DFK argues that the broker, in connection with previous claims involving DRD, had prior conformity of IINA to retain DFK in the present action and further alleges that it performed actions directly at the request of IINA, namely attending and participating in the Coast Guard hearings. In its memorandum in support of its motion to disburse, DFK presents an excerpt from an August 12, 2008 correspondence of IINA (but does not include the letter as an

6

exhibit) indicating that IINA agreed not to assert the written consent provision of paragraph 4 (Law Costs)[8] of the General Conditions and/or Limitations of its PI coverage and Form SP-23.[9] (See Rec. Doc. 578-3 at 2-3). The correspondence also stated, "Of course, notwithstanding this general 'consent', reimbursement of costs paid by DRD will be made as directed by the court." *Id*.

IINA's arguments that DFK was retained by DRD's broker to represent DRD's interests with IINA's consent are valid. To the extent that DFK represented DRD, its fees and expenses are subject to the provisions of the IINA policy issued to DRD. This Court held in a January 7, 2009 Order that "IINA does not have a duty to defend but only an obligation to reimburse incurred costs." (Rec. Doc. 558 at 10). DFK attaches only invoices rather than receipts and provides no evidence that it has been paid by DRD. DRD is entitled to reimbursement of attorney's fees under its IINA policy, but DFK is not entitled to direct payment from IINA. Accordingly, DFK's motion is **DENIED**.

---

[8]Paragraph 4 states in pertinent part: Underwriters shall not be liable for the cost or expense of prosecuting or defending any suit unless the same shall have been incurred with the consent of the Underwriters. (Rec. Doc. 160-4 at 10).

[9]SP-23 Law Costs provides in pertinent part: The Assurer shall not be liable for the cost or expense of prosecuting or defending any claim or suit unless the same shall have been incurred with the written consent of the Assurer, or the Assurer shall be satisfied that such approval could not have been obtained under the circumstances without unreasonable delay, or that such costs and charges were reasonably and properly incurred. (Rec. Doc. 160-4 at 18).

**II.  Motions of DRD and ACL and Objections of Tintomara Interests and**

**IINA**

A.  Medical and Maintenance and Cure

In light of the agreement of all parties[10] to the disbursement of funds to pay medical and maintenance and cure of DRD's injured crew members and reimbursement to DRD for such, the Court orders that DRD's motion for disbursement is **GRANTED** with respect to payment for those claims.  A separate Order will be issued authorizing the disbursal of those undisputed amounts from the interpleader fund.

The Court also notes IINA's consent to the payment for claims against DRD for bodily injury to non-employees and objection to payment for claims for punitive damages.  (Rec. Doc. 263 at 6).

B.  Defense Costs and Erosion of the Limit of Liability under Section PI of the Policy

It is the general "law and practice in Protection and Indemnity insurance for legal expenses incurred in defending a liability covered by the policy to be treated as part of the overall claim. That claim [inclusive of legal expenses] is limited by the amount insured in the primary policy." *Exxon Corp. v. St. Paul Fire and Marine Insurance Co.*, 129 F.3d 781, 787 (5th Cir. 1997)(*quoting Taylor v. Lloyd's Underwriters of London*, 1994 WL 118303 (E.D. La. March 25, 1994)).  Furthermore, courts have often found that defense

---

[10]See Rec. Doc. 249 at 2 and Rec. Doc. 263 at 6.

costs are deducted from the policy limits in cases in which the insurer has no duty to defend. *See Board of Commissioners of the Port of New Orleans v. M/V RACHAEL GUIDRY*, 425 F.Supp. 661 (E.D. La. 1977), aff'd 564 F.2d 95 (5th Cir. 1977) (holding that under the PI policy at issue, the insurer was entitled to deduct defense costs from the policy limits because the insurer had no independent duty to defend under the policy); *Taylor*, 1994 WL 118303 at *13 (evaluating *M/V Rachael Guidry* and finding that, with respect to the policy at issue in *Taylor*, deduction from the policy limit for costs for attorney's fees was proper under the Excess Marine policy[11] because that policy contained no separate duty to defend).

Louisiana law provides that an insurance policy is a contract between the parties and should be construed using the general rules of contract interpretation set forth in the Louisiana Civil Code. *Bonin v. Westport Ins. Corp.*, 930 So. 2d 906, 910 (La. 2006); *see also Coleman v. Sch. Bd. of Richland Parish*, 418 F.3d 511, 516 (5th Cir. 2005). As with any contract, the judiciary's role in interpreting an insurance policy is to ascertain the common intent of the parties. *Coleman*, 418 F.3d at 516; *Bonin*, 930 So.2d at 910; see also La. Civ. Code Ann. art. 2045.

---

[11]The court also commented that authority indicating that the defense costs were limited by the amount insured in the primary policy was persuasive with respect to both the P&I policy, which also incorporated the SP-23, and the Excess Marine policy. However the P&I policy was not before the court on the issue of whether its limits were properly exhausted. 1994 WL 118303, at *7, *13.

The words used in an insurance policy must be given their generally prevailing meaning. *Coleman*, 418 F.3d at 516; *Bonin*, 930 So.2d at 910; see La. Civ. Code Ann. art. 2047. Where these words are "clear and explicit and lead to no absurd consequences, the [policy's] meaning and the intent of the parties must be sought within the four corners of the document and cannot be explained or contradicted by extrinsic evidence." *In re Liljeberg Enters., Inc.*, 304 F.3d 410, 440 (5th Cir. 2002)(*quoting Am. Totalisator Co. v. Fair Grounds Corp.*, 3 F.3d 810, 813 (5th Cir. 1993)); *Coleman*, 418 F.3d at 518 (*quoting La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 764 (La. 1994) ("[W]hen the 'language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation.'")). Each provision of an insurance policy "must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Coleman*, 418 F.3d at 517; La. Civ. Code Ann. art. 2050.

An insurance policy "should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." *Bonin*, 930 So.2d at 910; *Coleman*, 418 F.3d at 516. Should ambiguities remain in an insurance policy after applying the general rules of contract interpretation, they are to be strictly construed against the insurer and in favor of

coverage. *Bonin*, 930 So. 2d at 911; La. Civ. Code Ann. art. 2056.

However, an insurance policy is ambiguous only when it is susceptible

to two or more interpretations and each of the alternative

interpretations is reasonable. *Id.*; *Tex. E. Transmission Corp. v.

Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998)(*quoting Lloyds

of London*, 101 F.3d 425, 429 (5th Cir. 1996) ("[A] contract is

ambiguous, under Louisiana law, 'when it is uncertain as to the

parties' intentions and susceptible to more than one reasonable

meaning under the circumstances....'"). An ambiguity is not created

simply because one of the parties to an insurance policy can create

a dispute in hindsight. *Id*.

ACL and DRD argue that the PI policy is ambiguous on the issue

of whether defense costs erode the limit of liability and that the

alleged ambiguity should be resolved in favor of the insured. The

parties rely upon *Exxon Corp. v. St. Paul Fire and Marine Insurance

Co.*, in which the Fifth Circuit upheld the district court's finding

that the policy did not provide for deduction of defense costs from

the policy limit. The court found that because the limit of

liability clauses in the PI policy were silent as to the

deductibility of attorney's fees and defense costs, the ambiguity

should be construed in favor of the insured. *Exxon*, 129 F.3d at

787-88.

The language of the policy excerpts included in the *Exxon*

court's evaluation of this issue differ greatly from the policy

language at issue in the present case. The Court finds the present policy language is not ambiguous and is similar to the language of the policy at issue in *M/V Rachael Guidry*. The policy at issue in *M/V Rachael Guidry* listed defense costs as covered followed by paragraph (3) which stated, "Liability hereunder in respect of loss, damage, costs, fees, expenses or claims arising out of or in consequence of any one occurrence is limited to the amount hereby insured." 425 F.Supp. at 661. The *M/V Rachael Guidry* court found that paragraph to be unambiguous, clearly limiting all liability of the insurer. *Id.* The court also noted that the paragraph specifically mentioned that it included "costs, fees, (and) expenses." *Id.* The court then engaged in an analysis quoted by this Court in its January 7, 2009 Order finding that IINA did not have a duty to defend. *Id.* at 663-64. (See Rec. Doc. 558 at 10). After stating that it was the duty of the insured to defend and further finding that "[a]fter it does so, the insurer is liable for costs and expenses incurred ... of investigating and/or defending," the court held, "This means that the policy limit is comprehensive; it includes defense costs." *M/V Rachael Guidry*, 425 F.Supp. at 663-64. The *M/V Rachael Guidry* court then engaged in an analysis which concluded that it was irrelevant whether counsel was selected by the insurer or the insured but determining that a distinguishing factor between the policy at issue and those in cases cited by the insured was the insurer's duty to defend in the cases. The court expressed that

where the insurer had a duty to defend and to pay judgment against the insured and the damages exceeded the policy, the insurer could not "walk into court, toss the amount of the policy on the table, and blithely inform the insured it was up to him." *Id.* at 664. The court found the *M/V Rachael Guidry* policy to be distinct from such a scenario because the insurer had no independent duty to defend. *Id.*

Provisions in the IINA policy regarding defense costs are contained in paragraph (4) of the PI and in SP-23 included in the PI policy. Paragraph 4 provides:

> The cost of defending any suit against the Named Assured(s) or any claim, based on a liability or an alleged liability of the Named Assured(s) covered by this insurance shall be payable by Underwriters subject to the deductible; but Underwriters shall not be liable for the cost or expense of prosecuting or defending any suit unless the same shall have been incurred with the consent of the Underwriters. The cost and expense of prosecuting any claim in which Underwriters shall have any interest by subrogation or otherwise, shall be divided between the Named Assured(s) and Underwriters proportionately to the amount which they would be entitled to receive respectively, if the suit should be successful.

(Rec. Doc. 160-4 at 10).

SP-23 provides in pertinent part:

> The assurer hereby undertakes to make good to the Assured or the Assured's executors, administrators and/or successors, all such loss and/or damage and/or expense as the Assured shall have become liable to pay and shall pay on account of the liabilities, risks, events and/or happenings set forth:
>
> ...
>
> Costs and charges

> (14) Costs, charges, and expenses, reasonably
> incurred and paid by the assured in defense
> against any liabilities insured against
> hereunder in respect of the vessel named herein,
> subject to the agreed deductibles applicable,
> and subject further to the conditions and
> limitation hereinafter provided.

*Id.* at 15, 18. This provision is immediately followed by GENERAL

CONDITIONS AND/OR LIMITATIONS which includes a Law Costs paragraph.

*Id.* at 18. The general conditions section ends as follows:

> Unless otherwise agreed by endorsement to this policy,
> liability hereunder shall in no event exceed that which
> would be imposed on the Assured by law in the absence of
> the contract.
> Liability hereunder in respect of any one accident or
> occurrence is limited to the amount hereby insured.

*Id.* at 20.

Viewing the policy as a whole and giving the words therein their

generally prevailing meaning, paragraph 14 is part of an enumerated

list of liabilities upon which the Insurer shall pay. Following the

list are General Conditions and Limitations to which paragraph 14

explicitly states it is subject. *Id.* at 18. In addition to a

paragraph on Law Costs that references consent of the Assurer, the

General Conditions and Limitations section ends with a statement that

liability is limited to the amount insured. *Id.* at 20. Hence, the

clear terms of the policy limit IINA's liability for defense costs to

the limit of the policy.

Additionally, the limitation language at issue is very similar

to that considered in *M/V Rachael Guidry*. Aside from the specific

14

enumeration of "loss, damage, costs, etc," paragraph (3) in the *M/V Rachael Guidry* policy is exactly the same as the final paragraph of the General Conditions and Limitations section of SP-23 in the present case. (Rec. Doc. 160-4 at 10). Although this last paragraph does not specifically mention "costs, fees, and expenses" as *M/V Rachael Guidry's* did, paragraph 14 in the SP-23 specifically states that it is "subject further to the conditions and limitations hereinafter provided" and is directly followed by said conditions and limitations. Also as in *M/V Rachael Guidry*, IINA has no duty to defend, only to reimburse costs for defense. *See also Taylor v. Lloyd's Underwriters of London*, 1994 WL 118303, at *13 (E.D. La. March 25, 1994). Hence the Court finds the policy at issue is not ambiguous and that defense costs erode the policy limit.

## C. Defense Costs for Liabilities Not Covered by the Policy

DRD contends that if one claim is covered, then the insurer is obligated to defend the entire action. Alternatively, DRD argues that the issue is moot for the present motion as it involves reimbursement for the covered claims of personal injury and collision damage. IINA contends that pollution, fishermen, and punitive damage claims are not covered and it only has a duty to reimburse defense costs for covered claims. IINA does not object to the payment of costs for defending the covered personal injury claims.[12]

---

[12]IINA lists specific line item objections to particular defense costs entries. (Rec. Doc. 263 at 7-10). However, IINA notes that the list is not exhaustive and states that "other charges

In the cases originally cited by DRD, the insurer had a duty to defend. The Court requested additional briefing by the parties regarding this "defend one, defend all" concept in the context of an indemnity policy as opposed to one in which the insurer had a duty to defend. DRD cited *Steptore v. Masco Construction Co., Inc.*, 9302064 (La. 8/18/94); 643 So.2d 1213, in an effort to support its proposition that the insurer is required to reimburse all defense costs if one of the claims defended against is a covered claim. *Steptore*, however, does not support this proposition as the court described the insurer as having a duty to defend under the policy. 643 So.2d at 1218 (stating, "Under the terms of its protection and indemnity policy, the insurer contractually agreed to provide a legal defense for liability claims against the insured within the scope of the policy"). Furthermore, the court's decision was predicated upon the insurer's waiver of any right it may have had to deny its duty to defend. *Id.* (holding that the insurer waived its coverage defense by undertaking the defense without reserving its right to deny coverage). *Steptore*, is helpful, however, in confirming that analysis of coverage of defense costs begins with the terms of the policy. *Id.*

As noted in various parts of this Order, the IINA PI policy, which includes form SP-23, provides that the insurer will reimburse "Costs, charges, and expenses, reasonably incurred and paid by the

_____

are probably also not covered." (Rec. Doc. 706 at 1-2).

assured in defense against any liabilities insured against hereunder in respect of the vessel named herein." A plain language reading of the policy makes it clear that only those costs and expenses incurred in the defense of covered liabilities is to be reimbursed. "Courts should not strain to find coverage where none exists." *Leon Lowe & Sons, Inc. v. Great American Surplus Lines Ins. Co.*, 89-1512 (La. App. 1 Cir. 11/14/90); 572 So.2d 206, 208. Another section of this Court evaluating an SP-23 Form PI policy and the Fifth Circuit evaluating the same PI policy language both found that the insurer was not responsible for reimbursing defense costs and expenses for non-covered claims. *In the Matter of Torch, Inc.*, 2000 WL 798457, *10 (E.D. La. 2000); *Randall v. Chevron U.S.A., Inc.*, 13 F.3d 888 (5th Cir. 1994), *overruled on other grounds by Bienvenu v. Texaco, Inc.*, 164 F.3d 901 (5th Cir. 1999). The Court is unconvinced by arguments that the insured should be reimbursed for the defense of non-covered claims and finds that the policy only allows for reimbursement of costs incurred in the defense of covered claims.

D.  Contemporaneous Payment and Priority of Claims

Very little case law exists on the precise issue of contemporaneous payment and the priority of defense costs claims of the insured from interpleaded funds. The Southern District of Indiana tackled the issue in *Chicago Insurance Company v. Abstract Title Guaranty Co.*, 2004 WL 2750258 (S.D. Ind. Oct. 12, 2004). The basic approach of the *Chicago Ins.* court was to first evaluate the

policy to determine whether the policy prioritized defense claims over other claims and second to consider the equitable nature of distribution from the interpleader fund. This approach is consistent with the Fifth Circuit's general approach to findings regarding priority of claims from the interpleader fund: To the extent that the priority of claims is not controlled by policy language or controlling law, determination of priority of claims "is neither a conclusion of law nor a factual finding, but is, instead, an equitable decision." *Marine Indem. Ins. Co. of America v. Lockwood Warehouse and Storage*, 115 F.3d 282, 287 (5th Cir 1997).

<u>The Policy</u>

The IINA policy states in form SP-23:

> The assurer hereby undertakes to make good to the Assured or the Assured's executors, administrators and/or successors, all such loss and/or damage and/or expense as the Assured shall have become liable to pay and shall pay on account of the liabilities, risks, events and/or happenings set forth:
>
> > ...
>
> > Costs and charges
> > (14) Costs, charges, and expenses, reasonably incurred and paid by the assured in defense against any liabilities insured against hereunder in respect of the vessel named herein, subject to the agreed deductibles applicable, and subject further to the conditions and limitation hereinafter provided.

(Rec. Doc. 160-4 at 15, 18).[13]

_____

[13]The policy also provides in the Law Costs section:

The Assurer shall be liable for the excess where the amount deductible under this policy is exceeded by (A) the cost of investigating and/or successfully

DRD asserts that priority of payment is established by the policy language that "[t]he assurer ... undertakes to make good to the Assured ... all ... expense as the Assured shall have become liable to pay and shall pay." DRD argues that because the defense costs for which it has paid have met the conditions stated in the policy, the defense costs have priority over claims that have not met these conditions, i.e. "claims that have yet to be reduced to settlement or judgment."[14] (Rec. Doc. 523 at 7).

In support DRD asserts that the IINA policy language is similar to that in *In re Technical Equities Corp.*, 163 F.R. 350, 361 (Bankr. N.D. Cal. 1993), which was also evaluated by the *Chicago Ins.* court. The *Chicago Ins.* court's analysis of the policy at issue in *Technical Equities Corp.* is helpful; the court noted that the *Technical Equities* "court's implicit conclusion that the defense costs had

---

defending any claim or sit against the Assured based on a liability or an alleged liability of the Assured covered by this insurance, or (B) the amount paid by the Assured either under a judgment or an agreed settlement based on the liability covered herein including all costs, expenses of defense and taxable disbursements.

*Id.* at 18. However, none of the parties references this clause in their arguments.

[14]Tintomara interests responds by discussing what actions "trigger" the right of a direct action plaintiff to proceed against an insurer. The vestment of this right, however, provides no guidance as to whether "the policy language [leads] to the conclusion that defense costs should be paid as incurred." *Chicago Ins.*, 2004 WL 2750258, at *3. The parties also discuss *State Farm Insurance Co. v. Tashire*, 386 U.S. 523 (1967), which was relied upon by Judge Africk when allowing Tintomara interests to intervene in the interpleader action. *Tashir*e did not address priority of claims with respect to disbursement and thus has little to no impact on the issues of the present motions to disburse outside of the general legal principle that liquidated claims have to per se priority over unliquidated claims.

priority over the other claims to the interpleaded fund was based on the language of the insurance policy at issue." *Chicago Ins.*, 2004 WL 2750258, at *3. The *Technical Equities* court found that because the policy defined "loss" as "any amount which the insureds are legally obligated to pay for a claim or claims made against them" and included damages, costs, charges and expenses incurred in the defense of actions, that "the policy language led to the conclusion that defense costs should be paid as incurred." *Id*. The court continued:

> An insured becomes legally obligated to pay defense costs when the legal services are rendered. Because the policy provided for payment of defense costs as the insured became legally obligated to pay them, the policy gave the payment of defense costs priority over other claims to the policy proceeds and, thus, to the interpleaded funds.

*Id*. (citations omitted). The court further noted that "Requiring payment of defense costs as incurred ... was consistent with prevailing Ninth Circuit cases interpreting similar provisions." *Id.* (*quoting Technical Equities*, 163 B.R. at 361). The *Chicago Ins*. policy included a duty to defend and the court found that the policy language was not analogous to that evaluated in *Technical Equities* and did not support a finding of priority for defense costs.

The Court finds the reasoning of *Technical Equities* as explained in *Chicago Ins.* persuasive and applicable to the language in the IINA policy. The IINA policy provides that "[t]he assurer ... undertakes to make good to the Assured ... all ... expense <u>as the Assured shall have become liable to pay and shall pay.</u>" (Rec. Doc. 160-4 at 15)(emphasis added). DRD became liable for defense costs when the

20

services were rendered. Hence, as in *Technical Equities,* the IINA policy provides for payment of defense costs as the insured becomes legally obligated to pay them, with the additional requirement that the insured have paid the defense costs prior to reimbursement under the policy.

IINA's arguments against contemporaneous pay do not address this *Chicago Ins.* style analysis of the policy but instead assert that defense costs are only to be reimbursed for those expenses paid in defending covered liabilities.[15] IINA urges the Court to withhold reimbursement for defense costs until all coverage issues are determined. The Court finds that IINA's view of the policy requiring a showing on the part of the insured that the defense costs are for covered liabilities does not preclude the Court's finding that the language of the policy provides contemporaneous reimbursement of defense costs; instead the Court finds that the covered liabilities showing is simply an added requirement for reimbursement. Hence, the policy language provides that the insured is entitled to reimbursement of defense costs after the insured has demonstrated 1) that the insured is liable to pay the defenses costs, i.e. the costs were incurred; 2) that the insured has paid the defense costs; and 3) the costs for which the insured is seeking reimbursement were

---

[15]IINA specifically argues that the policy "indicates that the defense costs and expenses should not be reimbursed unless those costs and expenses were paid in defending against covered liability and unless all other conditions and limitations of the Policy have been satisfied." (Rec. Doc. 694 at 13).

incurred in the defense of covered liabilities. Defense costs meeting the preliminary condition of liability to pay, as well as the other policy requirements for defense cost reimbursement, therefore have priority over claims that have not met the preliminary condition of liability to pay. Thus, the policy gives the payment of defense costs meeting all requirements priority over claims to the policy proceeds for which the insured has not yet been found liable and, thus, priority to the interpleaded funds.[16]

IINA cites *In re Kenai*, 136 B.R. 59 (S.D.N.Y. 1992), in support of its argument that defense costs should not be reimbursed until all coverage disputes are decided. Recognizing that the policy at issue did not contain the option clause often present in policies which courts found did not require contemporaneous pay, the *Kenai* court ruled against contemporaneous pay out of concern that insurers might pay defense costs for losses not covered by the policy if forced to advance defense costs before resolution of the underlying action. *Id*. at 64. *Kenai* cites the same policy language as *Technical Equities/Chicago Ins.*, and all three cases are from outside jurisdictions. *Kenai*, however, did not involve an interpleader fund

---

[16]Note also that the Federal District Court for the Middle District of Louisiana evaluated numerous cases on the issue of contemporaneous payment of defense costs generally and concluded that most courts, not just the Ninth Circuit, "have required the insurer to pay defense costs when they are incurred by the insured." *Federal Deposit Insurance Corporation v. Booth*, 824 F.Supp. 76 at 80 n.19 (M.D. La. 1993). *FDIC,* however, did not involve an interpleader action. In *FDIC* the court examined the policy and, finding that the policy was silent on the issue, resolved the ambiguity in favor of the insured and concluded that the insurer must pay defense costs as they were incurred. *Id*. at 81.

and was decided prior to *Technical Equities* and *Chicago Ins*.

Equity

Although equitable distribution of an interpleader fund is often thought of in terms of pro rata portions, the interpleader statute "must be construed so as not to result in injustice." *Austin v. Texas-Ohio Gas Co.*, 218 F.2d 739 (5th Cir. 1955). "No one's rights are intended to be altered by paying the fund into the court, which as an impartial neutral is to determine them." *Armour Fertilizer Works v. Sanders*, 63 F.2d 902, 907 (5th Cir. 1933). In a recent Southern District of New York class action litigation distinguishing *Kenai*, the court found that the "failure to receive defense costs when they are incurred constitutes an immediate and direct injury" and stated that holding otherwise "would not provide insureds with protection from financial harm that insurance policies are presumed to give." *In re Worldcom, Inc. Securities Litigation*, 354 F.Supp. 2d 455, 469.[17] The *Worldcom* court continued:

_____

[17]In *Worldcom*, the court granted a motion for a preliminary injunction requiring the insurer to pay defense cots as incurred. Although *Worldcom* distinguished *Kenai* on the basis that the *Worldcom* policy included a provision which required the insurer to "advance defense costs ... prior to the final disposition of a claim" against the insured, the Court still finds *Worldcom*'s evaluation of the harm to the insured that would result if contemporaneous defense costs were not allowed relevant and persuasive to the present case. Furthermore, the Court finds that the IINA policy requirements for payment "as the Assured becomes liable and shall pay" indicates payment as costs are incurred and is less susceptible to multiple interpretations than the language of the *Kenai* and *Technical Equities* policies. (Under both the *Kenai* and *Technical Equities* policies the insurer "promised to pay on behalf of the insured ...against loss ... arising from any claim or claims" and "defined loss as any amount which the insureds are legally obligated to pay for a claim or claims made against them ... and shall include damages, ... costs, charges and expenses ... incurred in the defense of actions." *Chicago Ins.*, 2004 WL 2750258, at *3; *Kenai*, 136 B.R. at 64.)

> Every party, including each ... defendant, requires effective representation. It is impossible to predict or quantify the impact on a litigant of a failure to have adequate representation at this critical stage of litigation. The ability to mount a successful defense requires competent and diligent representation. The impact of an adverse judgment will have ramifications beyond the money that will necessarily be involved. There is the damage to reputation, the stress of litigation, and the risk of financial ruin--each of which is an intangible but very real burden.

*Id.*

DRD has expressed that it will not be able to defend itself without contemporaneous payment of defense costs. DRD's arguments that it is the insured in privity of contract and that the purpose of the policy is to protect DRD's interests do not alone establish its priority to the interpleader funds. However, as previously discussed, the language of the policy indicates priority of covered defense claims over claims for which the insured has not yet been found liable, and the Court further finds that injustice would result if DRD were deprived of the ability to defend itself while insurance funds to which it is entitled sat gaining interest in an interpleader fund. IINA and DRD agree and the Court recognizes that defense costs and expenses for claims against DRD for personal injury are covered. (See Rec. Doc. 263 at 6). The Court finds that it is therefore equitable to disburse defense costs to DRD for these undisputably covered claims at this time. However, IINA has indicated that the present motion to disburse includes requests for funds that are not covered. Accordingly,

**IT IS ORDERED** that DRD file within fifteen (15) days a revised Motion for Disbursement for Defense Costs and Expenses that enumerates and seeks reimbursement only for defense costs for personal injury claims.[18] DRD is further allowed to submit such motions for disbursement of defense costs for these covered claims quarterly. To the extent possible, DRD is encouraged to review the payment entries and their justification with IINA to determine line item coverages prior to submission of any motion to disburse. However, given the equitable nature of this action, DRD's motions for disbursement of defense costs shall include its verified billing statements and other documentation as may be necessary to support the requests for fees and costs. The submission of DRD's verified billing statements (with any necessary redactions to protect attorney-client or work product materials) for review and comment by the objecting Claimants will not compromise DRD's privileged information or litigation strategy. Any further disbursement for defense costs outside that described by the Court above shall only be made upon the resolution of coverage issues. The Court emphasizes to DRD that its ruling here is not an automatic grant of future motions to disburse defense costs for undisputably covered claims and

---

[18]The revised motion need not include the billing statements and checks showing payment that were attached as exhibits to DRD's original motion. The motion should, however, address the line item objections raised by IINA in Rec. Doc. 263 and highlight any other defense costs entries included in the earlier exhibits that do not fall within the scope of defense for personal injury claims.

maintains that all such motions will be considered with regard to the equitable principles of an interpleader action.

E.   ACL

The Court finds that though ACL may be entitled to defense costs under the policy, it is not afforded the same priority as DRD. First, ACL has other insurance policies whose terms would need to be reconciled with the IINA policy before ACL's entitlement could be determined. *See Hodgen v. Forest Oil Corp.,* 87 F.3d 1512 (5th Cir. 1996); *Truehart v. Blandon,* 884 F.2d 223 (5th Cir. 1989); *Wilks v. Allstate Insurance Co.*, 195 So.2d 390 (La.App. 3 Cir. 1967).  This, as IINA has pointed out, requires inspection of those policies. Furthermore, with respect to equity and the interpleader fund, the Fifth Circuit has affirmed the decision of a district court that a claimant who was fully compensated for its losses by a separate insurance policy should therefore receive last priority to the interpleaded insurance policy funds.  *Marine Indem. Ins. Co.  of America v. Lockwood Warehouse and Storage*, 115 F.3d 282, 289 (5th Cir 1997).  While this Court has not evaluated all claims to the funds and is not ruling at this time that ACL has last priority, the Court recognizes that, at least to the extent that ACL is requesting defense costs to reimburse the other insurers for costs for which ACL has already been compensated, payment to ACL at this time would not be equitable.  Accordingly, ACL's motion for Disbursement of Defense Costs is **DENIED**.

For the foregoing reasons,

**IT IS ORDERED** that DFK's Motion is **DENIED.**

**IT IS FURTHER ORDERED** that DRD's motion is **GRANTED** with respect to those sums paid for medical and maintenance and cure of DRD's injured crew members and **DISMISSED** without prejudice in all other respects. DRD is given leave to file within fifteen (15) days a revised Motion for Disbursement for Defense Costs and Expenses that enumerates and seeks reimbursement only for defense costs for personal injury claims. DRD is further allowed to submit such motions for disbursement of defense costs for these covered claims quarterly. To the extent possible, DRD is encouraged to review the payment entries and their justification with IINA to determine line item coverages prior to submission of any motion to disburse. However, given the equitable nature of this action, DRD's motions for disbursement of defense costs shall include its verified billing statements and other documentation as may be necessary to support the requests for fees and costs. The submission of DRD's verified billing statements (with any necessary redactions to protect attorney-client or work product materials) for review and comment by the objecting Claimants will not compromise DRD's privileged information or litigation strategy. Any further disbursement for defense costs outside that described by the Court above shall only be made upon the resolution of coverage issues. The Court emphasizes to DRD that its ruling here is not an automatic grant of future motions

to disburse defense costs for undisputably covered claims and maintains that all such motions will be considered with regard to the equitable principles of an interpleader action.

**IT IS FURTHER ORDERED** that ACL's motion is **DENIED.**

New Orleans, Louisiana, this 13th day of May, 2009.

_____
UNITED STATES DISTRICT JUDGE