UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| STEPHEN MARSHALL GABARICK, AND BERNARD ATTRIDGE ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED | * * * * * | CIVIL ACTION |
| | * | NO. 08-4007 |
| VERSUS | * | c/w 08-4156; |
| | * | 08-4023; 08-4025; |
| LAURIN MARITIME (AMERICA) INC.; | * | 08-4031; 08-4046; |
| WHITEFIN SHIPPING CO. LIMITED; | * | 08-4055; 08-4058; |
| D.R.D. TOWING COMPANY, LLC; | * | 08-4059; 08-4060; |
| AMERICAN COMMERCIAL LINES, INC; | * | 08-4012; 08-4261; |
| AND THE NEW ORLEANS-BATON ROUGE | * | 08-4317; 08-4505 |
| STEAMSHIP PILOTS ASSOCIATION | * | 08-4600; 08-4701 |
| | * | |
| | * | SECTION "B"(4) |

## ORDER AND REASONS

I. Facts and Procedural History

Before the Court is (1) American Commercial Lines LLC's ("ACL") Motion for Reconsideration of this Court's June 21, 2010 Order wherein the Court granted partial summary judgment as to the *In Rem* Liability of the Tug Mel Oliver in favor of Laurin Maritime (America) Inc.; Laurin Maritime AB; Whitefin Shipping Co. Ltd.; and Anglo-Atlantic Steamship Limited's (collectively "Tintomara Interests") (Rec. Doc. No. 960) and the related responsive pleadings; and (2) DRD Towing's Motion for Reconsideration of the same Order adopting all points of ACL's Memorandum in Support of its Motion for Reconsideration except any reference to alleged fraud on DRD's part (Rec. Doc. No. 962) and the related responsive pleadings.

1

On July 23, 2008, the M/V TINTOMARA and the barge DM-932, which was being towed by the M/V MEL OLIVER, collided on the Mississippi River, causing oil to spill into the river.  ACL, the barge owner, DRD, the towboat operator, and TINTOMARA interests, the owners of the M/V TINTOMARA, each filed limitation complaints in this Court.  Numerous claims have been filed in those limitations, including claims for relief pursuant to the Oil Pollution Act of 1990 ("OPA") and other claims for damages as a result of the oil spill.

On March 31, 2010, Tintomara Interests filed a Motion for Partial Summary Judgment as to In Rem Liability of the Tug Mel Oliver (Rec. Doc. No. 878).  Defendants DRD Towing and ACL both filed opposition thereto (Rec. Doc. Nos. 881, 896 respectively) to which Tintomara Interests replied (Rec. Doc. Nos. 911, 912 respectively).  The Court held oral argument on April 28, 2010, and in an Order issued on July 21, 2010 granted partial summary judgment as to *in rem* liability of the Tug Mel Oliver.

## II. Contentions of the Parties

Both ACL and DRD contend the Court should reconsider it's order granting summary judgment as to the *in rem* liability of the M/V Mel Oliver, Rec. Doc. No. 941.  ACL contests a portion of the Court's Order arguing that ACL never made the concessions at oral

argument which the order states it did; DRD in its own Motion for Reconsideration (Rec. Doc. No. 962) adopts all of ACL's Motion for Reconsideration except those parts alleging fraud on the part of DRD.  Additionally, in it's Reply Memorandum in Support of DRD's Motion for Reconsideration (Rec. Doc. No. 1030), DRD argues that, although DRD signed a factual basis in a related criminal case[1], the factual basis does not establish that the Steersman of the MEL OLVIER at the time of the collision, John Bavaret was in lawful possession of the boat, a necessary element, they claim, to establish *in rem* liability.  Both positions will be addressed in turn.

    A. *Contentions of ACL*

Movant ACL first contends that reconsideration should be granted to correct a clear error of law or prevent manifest injustice and objects to two portions of this Court's June 21, 2010 Order.

The Court's Order, Rec. Doc. No. 941, states that "ACL concedes that its posting of the security at the outset of the limitation action would allow for a finding of in rem liability against the vessel by this Court."  ACL argues that, the Court overlooked the limited nature of ACL's concession made in its Memo in Opposition to Tintomara Interests' Motion for Partial Summary Judgment as to the *IN REM* Liability of the Tug Mel Oliver (Rec.

---

[1] *U.S.A. v. DRD Towing Company, L.L.C.*, 10-191, Rec. Doc. No. 17.

Doc. No. 896). ACL's concession, quoting *Hartford Accident & Indem. Co. Of Hartford v. Southern Pac. Co.*, 273 U.S. 207 (1927) states "that the limitation security 'is a substitute for the vessel itself and the freight.' Therefore, a court in a limitation action 'may enter judgment in personam against the owner as well as in rem against the res, or the substituted fund." (Rec. Doc. No. 896 at 7 (internal citations omitted)). ACL submits that the Court read this concession over broadly. (Rec. Doc. No. 960-1 at 4). Quoting from their same Memo opposing Tintomara Interests' Motion for Partial Summary Judgment, ACL contends that they admitted only that "any finding of *in rem* liability by the Court <u>in a specific limitation action</u> can be satisfied out of the security posted <u>in that limitation action</u>." *Id*. (emphasis in original). After discussing a brief history of admiralty law in England, ACL concludes that the *in rem* liability created by ACL's establishment of a limitation fund "is limited to *in rem* claims arising out of acts subject to ACL's limitation action. It does not create *in rem* liability for acts that are only subject to DRD's limitation action." *Id*. at 6.

ACL next argues that, although stated in the Court's order, counsel for ACL did not concede that either the wheel house was unattended or the steersman was asleep at oral argument on April 28, 2010. (Rec. Doc. No. 960-1 at 6). The relevant part of the Court's July 21, 2010 order, Rec. Doc. No. 941 at 1-2 states:

4

> **IT IS FURTHER ORDERED** that the Motion for Partial Summary Judgment on *In Rem* Liability of MEL OLIVER (Rec. Doc. No. 878) is **GRANTED** without prejudice to DRD and ACL to seek reconsideration within sixty (60) days if they produce evidence of a material factual dispute. At the outset of the limitation action, ACL provided security for the value of the M/V MEL OLIVER and its pending freight in accordance with 46 U.S.C. § 30511(b) and Rule F(1) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions under the Federal Rules of Civil Procedure. (*See* Civ. Action No. 08-4600, Compl. filed by ACL at 4-6.) ACL concedes that its posting of the security at the outset of the limitation action would allow for a finding of in rem liability against the vessel by this Court. Because ACL and DRD conceded at oral argument on April 28, 2010 that either the wheelhouse of the M/V MEL OLIVER was unattended or the steersman was asleep, it is clear that a finding of partial summary judgment as to the liability of the M/V MEL OLIVER (but not as to apportionment of that liability) is proper.

In its reply to the Tintomara Interests' response to ACL's Motion for Reconsideration, ACL states that the Motion for Reconsideration before the Court, Rec. Doc. No. 960, "is directed to the specific statement in the Court's order that 'ACL and DRD conceded at oral argument on April 28, 2010 that either the wheelhouse of the M/V MEL OLIVER was unattended or the steersman was asleep' (Rec. Doc. No. 941, p.2) in order to show that those factual concessions were in fact never made." (Rec. Doc. No. 993 at 4-5).

In that same reply, ACL refutes Tintomara Interests' statement that the order at issue was based on a determination that the court had *in rem* jurisdiction over the tug and that either Bavaret was negligent or the tug was unseaworthy by submitting that this Court

"did not make any determinations, but rather based its decision on the alleged concessions by counsel for ACL and DRD . . . . those concessions were never made." (Rec. Doc. No. 993 at 2).

ACL's final argument requesting reconsideration contends that there exist genuine issues of material fact regarding whether DRD or John Bavaret were in lawful possession of the MEL OLIVER at the time of the collision so as to subject the tug to *in rem* liability for their actions. (Rec. Doc. No. 960-1 at 7-9). ACL argues that, to "to determine whether Bavaret was in lawful possession, the Court must . . . [f]irst decide if Bavaret was acting within the scope of his employment for DRD."[2] (Rec. Doc. No. 960-1 at 7). ACL submits that if he was not so acting, then DRD is not liable for Bavaret's actions under the doctrine of *respondeat superior* and if DRD is not liable for his actions then Bavaret was not in lawful possession of the tug. *Id*. Despite a failure to cite any supporting authority for this last step in logic, ACL goes on to argue that, even if DRD is liable for Bavaret's actions, Bavaret was still not in lawful possession of the Tug because "ACL was fraudulently induced into giving possession and control of the tug to DRD . . . DRD's possession was unlawful, just like the

---

[2]ACL never reconciles this statement with the contention in its Reply to the Supplemental Memorandum by Tintomara Interests (Rec. Doc. No. 1021), where it states "[i]n any event, the legal test of the *in rem* liability against ACL's interest in the Tug MEL OLIVER is not whether Bavaret was acting within the course and scope of his employment, but rather whether he was in lawful possession of the tug." *Id*. at 2.

6

possession by a thief or pirate" and thus, DRD was without authority to "turn over lawful possession to Bavaret." *Id*. However, after an argument that appears to iterate a version of the well known idea *nemo dat quod non habet*, at no other point does ACL detail how DRD fraudulently induced ACL to relinquish possession of the MEL OLIVER to them.

ACL does not admit that Bavaret was acting within the course and scope of his employment and argues that DRD's admission in the factual basis in the related criminal case discussed *infra* is not binding on ACL.[3] (Rec. Doc. No. 1021 at 2). Supporting this contention, ACL cites to the transcript of the September 1, 2010 hearing before this Court at which the Court, in discussing what the factual basis may or may not contain stated "[t]he other thing that, of course, is not binding is to the extent they may say, well, you know, a third party did such and such. That isn't necessarily binding on that third party because they're not the ones before the Court pleading guilty admitting to those facts." (Rec. Doc. No. 1050 at 11-12). ACL appears to cite no other legal authority for this proposition.

   B. *Contentions of DRD*

---

[3]The factual basis also states that "On July 22, 2008, at approximately 11:00 p.m., DRD's customer contacted Employee B by cell phone and instructed him to pick up red-flag tanker barge DM392 . . . ." (Rec. Doc. No. 1015-1 at 8). Were Employee B to be John Bavaret, then DRD's customer on that date would presumptively be ACL.

DRD's Motion for Reconsideration (Rec. Doc. No. 962) adopts all points of ACL's Memorandum in Support of its Motion for Reconsideration (Rec. Doc. No. 960-1) except any reference to alleged fraud on DRD's part, this adoption would include ACL's argument that concessions allegedly made at oral argument as stated in the Court's order did not occur; however, at no point does DRD explicitly make this statement.  In its Reply Memorandum in Support of the Motion for Reconsideration (Rec. Doc. No. 1030), DRD does not address the April 28, 2010 oral argument.  However, it appears from the transcript of oral argument that counsel for DRD did state that the steersman was asleep.

Ultimately, concessions made by Mr. Emmett at oral argument before this Court may now be immaterial as DRD has pled guilty and signed a factual basis in *USA v. DRD Towing Company, L.L.C.*, 10-191 attached to ACL's Supplemental Memorandum in Support of the instant motion (Rec. Doc. No. 1015) which states "[Bavaret] had lost situation awareness and allowed the head of the M/V MEL OLIVER tow - tanker barge DM392 to negligently swing out into the Mississippi River and cross the path of the M/V Tintomara . . . [Bavaret's] attempt to back down on the throttle . . . came too late to avert the collision."  (Rec. Doc. No. 1015-1 at 9).  DRD admits in the same document that Bavaret was acting within the scope of his employment for DRD.  Specifically, the factual basis states "DRD

Towing, by and through its employees, specifically [Bavaret] who was acting knowingly and within the scope of his employment for the benefit of defendant, caused the discharge of a pollutant . . . ." (Rec. Doc. No. 1015-1 at 9).

Additionally, on September 8, 2010 DRD pled guilty to both counts of the two count indictment, count one of which states in pertinent part:

> Between on or about January 1, 2007 through on or about July 23, 2008, in the Eastern District of Louisiana and elsewhere, defendant DRD Towing did willfully and knowingly violate the Ports and Waterways Safety Act as follows:
> (a) by assigning, and causing to be assigned, <u>employees</u> without appropriate licenses and qualification to critical positions to <u>unlawfully operate certain vessels as the master or mate</u>, thereby creating hazardous conditions under the PWSA aboard these towing vessels . . . .

*USA v. DRD Towing Company, L.L.C.*, 10-191, Rec. Doc. No. 1 at 4 (emphasis added). DRD does not address the above quoted language in its Reply Memo in Support of Motion for Reconsideration.

DRD contends in its Reply Memo in Support of Motion for Reconsideration that, although the factual basis signed by DRD in *USA v. DRD Towing Company, L.L.C.*, 10-191 is "perhaps an admission that Bavaret was acting in the course and scope of his employment, [] it is not an admission that he was in lawful possession of the vessel." (Rec. Doc. No. 1030 at 2).

DRD states that a finding of *in rem* liability requires Bavaret

to have been in lawful possession of the vessel and not that he was acting within the course and scope of his employment. *Id*. To establish lawful possession, DRD argues, they must show "some express or [sic] implied consent to the operation of the vessel by the employee." *Id*. DRD points to the portion of the factual basis which states that the Captain and Bavaret "did not inform DRD on-shore personnel that Captain [Carver] had left [Bavaret] as the only person on bard, licensed or unlicensed, to operate the MEL OLIVER from July 20, 2008 to July 23, 2008." *Id*. at 3. Thus, they contend that the record contains no evidence to support a finding that Bavaret was in lawful possession of the tug that would enable the Court to make a finding of *in rem* liability. DRD does not address the portion of the factual basis which states that Bavaret, "despite not being a properly licensed operator, was the designated relief and was serving in the position of mate" even though he "did not have a mate's license and only possessed a Coast Guard Apprentice Mate (steersman) license." (Rec. Doc. No. 1015-1 at 7-8).

C. *Contentions of Respondents*

Respondent Tintomara Interests argue that ACL neither argues nor suggests that an intervening change in controlling law has occurred, nor do they allege the existence of newly discovered evidence not previously available, nor was there an error of law or

injustice resulting from the Court's Order and thus reconsideration is unwarranted. (Rec. Doc. No. 970 at 2).

In response to ACL's contention that it did not admit that Bavaret was negligent, Respondent points to ACL's answers to interrogatories where ACL stated "D.R.D.'s fault may include . . . leaving an improperly licensed crewmember (John Bavaret) to operate the tug, . . . operational negligence of John Bavaret, including his failure to exercise good and prudent seamanship, falling asleep, violation of the Rules of the Road, the 12 hour rule, inattention to duty, and failure to avoid risk of collision with the M/V TINTOMARA . . . ." (Rec. Doc. No. 878-6 at 2-3). Respondent then cites to ACL's Reply Brief filed in the United States Court of Appeals for the Fifth Circuit a week before ACL's motion to reconsider in which ACL states "[t]he Tintomara interests repeatedly assert that John Bavaret, the steersman aboard the MEL OLIVER, was at fault for the collision. ACL agrees with that assertion."[4] (Rec. Doc. No. 970 at 4). Respondents never address the oral argument before this Court on April 28, 2010.

Tintomara Interests conclude by arguing that ACL has yet to submit any evidence that Bavaret was not acting within the course

---

[4] Respondent does not cite to the same brief in which ACL states that they "are no more liable for the faults of Bavaret than [they are] for the faults of personnel aboard the TINTOMARA." *Gabarick v. Laurin Maritime, Inc. Et al* Case No. 10-30148, Doc. 00511200589 at 29.

11

and scope of ACL's business and that ACL's dispatcher instructed Bavaret to bring ACL's barge to ACL's Marrero facility. *Id*. at 5-6. Finally, Respondents submit the *in rem* liability of the MEL OLIVER would not be effected by a finding that Bavaret acted outside the course and scope of his employment and that ACL has yet to suggest that depositions of Bavaret would introduce new evidence in addition to the testimony given at the United States Coast Guard hearing although respondents do not address the admissibility of that testimony for purposes of a motion of reconsideration. *Id*.

### III. Discussion

A. *Standard of Review - Rule 59*

The Federal Rules of Civil Procedure do not recognize a motion for reconsideration. *Bass v. U.S. Dep't of Agric.*, 211 F.3d 959, 962 (5th Cir.2000). The Fifth Circuit has held nonetheless that if such a motion is filed within twenty-eight days after entry of the judgment from which relief is being sought, the motion will be treated as motion to alter or amend under Rule 59(e). *Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n. 10 (5th Cir.1998); *see also* Rule 59(e). Because Defendant ACL filed the instant motion within twenty-eight days of the Court's Order, the motion will be subject to the standards for Rule 59(e). A Rule 59(e) motion calls into question the correctness of a judgment. *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir.2002).

"Generally, there are four grounds upon which a Rule 59(e) motion can be granted: (1) to correct manifest errors of law or fact upon which judgment is based, (2) the availability of new evidence, (3) the need to prevent manifest injustice, or (4) an intervening change in controlling law." *Lines v. Fair Ins. Co.*, 2010 WL 4338636, at *1 (E.D. La. October 21, 2010) (citing *Peterson v. Cigna Group Ins.*, 2002 WL 1268404, at *2 (E.D. La. June 5, 2002).

The Court enjoys considerable discretion in granting or denying such a motion, and an amendment of judgment is an extraordinary remedy which must be used sparingly and should not be used to re-litigate old matters, raise new arguments, or present evidence that could have been raised prior to the entry of judgment. *Boyd's Bit Service, Inc. v. Specialty Rental Tool & Supply, Inc.*, 332 F.Supp.2d 938, 939 (W.D. La 2004).

B. *Concessions at Oral Argument*

ACL contends that, contrary to the Court's June 21, 2010 order, ACL never conceded that "either the wheelhouse of the M/V MEL OLIVER was unattended or the steersman was asleep" at oral argument on April 28, 2010.

A review of the transcript of that oral argument shows that although counsel for DRD made statements concerning Mr. Bavaret falling asleep, which are addressed *infra*, counsel for ACL did not

make similar statements.[5] Thus it appears that the Court could grant ACL's motion for reconsideration to correct a clear error of fact, namely that counsel did not make the aforementioned concessions at oral argument. The same cannot be said for DRD.

The transcript reveals that counsel for DRD, John F. Emmett stated "We expect to be able to prove that Mr. Bavaret is simply lying when he says that the vessel malfunctioned. What we expect occurred is, he fell asleep because he had been on duty 24 hours a day covering for the captain and lying to the company about it . . . ." (Rec. Doc. No. 960-2 at 16, ll 19-22). A few moments later, Mr. Emmett stated "Mr. Pettigrew, the deckhand, was awakened by the alarm of the ship . . . . [h]e went to the wheelhouse, saw that Mr. Bavaret was unresponsive, passed out . . . ." *Id*. at 17, ll 9-12. In response to the Court's question regarding whether any alcohol or drug testing was done, Mr. Emmett responded "Yes, I believe there was, and there was nothing found, no drug or alcohol. He simply fell asleep because he had been awake so much."[6] *Id*. at 17, ll 17-19. Thus, it would appear that counsel for DRD did in fact

---

[5]At one point, counsel for ACL stated that "ACL had absolutely nothing to do with this collision, other than the fact that it turned its vessel over to DRD who maned it, operated it, maintained it." (Rec. Doc. No. 1000 at 25-26).

[6]Later at the same hearing Mr. Emmett, again discussing Bavaret's condition, stated "[w]e say that because of [Bavaret's] misconduct, he fell asleep and we're not responsible for his misconduct, and there's a question of fact which needs to be resolved by the Court after it hears some evidence after we've taken at least one deposition." *Id*. at 21, ll 2-6.

concede at oral argument on April 28, 2010, that the steersman was asleep.

## IV. Conclusion

For the reasons heretofore enunciated, ACL's Motion for Reconsideration of the Court's Order as to the *In Rem* Liability of the Tug Mel Oliver (Rec. Doc. No. 960) is hereby **GRANTED** and that portion of this Court's Order of July 21, 2010 (Rec. Doc. No. 941) entering partial summary judgment against ACL is hereby **VACATED;** Tintomara Interests' Motion for Partial Summary Judgment (Rec. Doc. No. 878) is hereby **DENIED** as to Defendant ACL.

Furthermore, because of DRD's concessions at oral argument, execution of the factual basis, and pleas of guilty to the charges in the related criminal case as discussed *supra*, DRD's Motion for Reconsideration of the Court's Order as to the *In Rem* Liability of the Tug Mel Oliver (Rec. Doc. No. 962) is hereby **DENIED**.

New Orleans, Louisiana, this 20th day of December, 2010.

UNITED STATES DISTRICT JUDGE