UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **STEPHEN MARSHALL GABARICK, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 08-4007**<br>**c/w** 08-4012; 08-4023; 08-4025;<br>08-4031; 08-4046; 08-4055;<br>08-4058; 08-4059; 08-4060;<br>08-4156; 08-4261; 08-4317;<br>08-4505; 08-4600; 08-4701 |
| **LAURIN MARITIME (AMERICA), INC., ET AL.** | **SECTION: "B" (4)** |

### ORDER

Before the Court is a **Motion to Quash Subpoenas to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Civil Action (R. Doc. 1101)** filed by D.R.D. Towing Company, L.L.C. ("DRD") seeking an Order quashing the subpoenas served on their accountant and attorney. On March 22, 2011, Laurin Maritime AB, Whitefin Shipping Co. Ltd., and Anglo-Atlantic Steamship Limited (collectively, "the Tintomara Interests") filed a response in opposition. (R. Doc. 1113.) This motion was heard with oral argument on **Wednesday, March 30, 2011.**

### I.   Background

On July 24, 2008, Plaintiffs Stephen Marshall Gabarick and Bernard Attridge filed this class action Complaint. (R. Doc. 1, p. 1.) On August 6, 2008, the case was consolidated with several other

cases resulting from the same underlying incident.[1] (*See* R. Doc. 10).

On July 23, 2008, the M/V Tintomara, a tanker, collided into Barge DM932 while traveling near Mile Marker 97 of the Mississippi River near the Crescent City Connection. (R. Doc. 1, ¶¶ 1, 5.) The barge was towed by the M/V Mel Oliver. *Id.* As a result of the collision, Barge DM932 split in half, causing a spill of 500,000 gallons of No. 6 Heavy Fuel oil which had recently been loaded on the barge at the St. W. Stone Oil Distributer located in Gretna, Louisiana. *Id.* As a result of the spilled oil, Plaintiffs allege that serious and dangerous environmental contamination of the Mississippi River occurred, and an 80 mile stretch of the Mississippi River has been closed to navigation. Plaintiffs also complain that prevailing winds have caused toxic gases from the oil to spread from the site of the collision to the French Quarter and the Uptown Area of New Orleans, exposing class members. Class members also complain that lost revenues have resulted from the closure of portions of the Mississippi River caused from the oil spill. Class members further complain that water intakes for Algiers, Gretna, St. Bernard Parish, and Plaquemines Parish have closed in order to prevent contamination from drinking water. (R. Doc. 1, ¶¶ 10-13.)

As to the instant motion, on March 2, 2011, the Tintomara Interests issued subpoenas for the production of documents to DRD's lawyer, A. Albert Ajubita, and DRD's accountant, Jon S. Folse, which required compliance by March 17, 2011, at 4:00 P.M. DRD contends that the requests for documents contained in the subpoena are overly broad, seek irrelevant information, and are otherwise

---

[1] The instant case was consolidated with the following cases: Civil Action No. 08-4012, *Austin Sicard, et al. v. Laurin Maritime (America) Inc., et al.,* Civil Action No. 08-4023, *Whitefin Shipping Co. Limited, as owner of the M/V Tintomara, petitioning for Exoneration from or Limitation of Liability,* Civl Action 08-4025, *George C. McGee et al. v. Laurin Maritime (America) Inc., et al*, Civil Action 08-4031, *Bernadette Glover v. Laurin Maritime (American) Inc., et al*, Civil Action No. 08-4046, *American Commercial Lines, LLC as owner of Barge DM-932, Praying for Exoneration from or Limitation of Liability*, Civil Action No. 08-4055, *Jefferson Magee et al. v. American Commercial Lines, Inc., et al*, Civil Action 08-4058, *James Roussell et al v. Laurin Maritime (America) Inc., et al*, Civil Action No. 08-4059, *James Joseph v. Laurin maritime (America) Inc., et al*, and Civil Action 08-4050, *Vincent Grillo et al v. American Commercial Lines, Inc., et al*.

privileged. The Tintomara Interests oppose the motion.

## II.     Standard of Review

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando,* 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. Amer. Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(c), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(2)(c). In assessing whether the burden of the discovery outweighs the benefit, a court must account for: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id*.

In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. Fed.R.Civ.P. 30(b)(6). The named organization must then

designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. *Id.*

### III. Analysis

#### A. A. Albert Ajubita

The Tintomara Interests issued a subpoena duces tecum requesting the following from Ajubita, DRD's lawyer:

> All corporate records, meeting minutes, documents, correspondence (including but not limited to letters, faxes, e-mails, electronic or otherwise) relating to the following entities:
>
> 1. D.R.D. Towing, LLC (DRD)
> 2. DRD Towing, Co., Inc.
> 3. D.R.D.C/.LLC
> 4. JBD Marine Towing, Inc.
> 5. Margaret E. Tugs, LLC
> 6. Stacey B, LLC
> 7. Six Star Towing, Inc.
> 8. Four Marine, LLC
> 9. Oak Marine Service, Inc.
>
> between January 2005 and the present.

(R. Doc. 1101-2, p. 4.)

DRD contends that the information requested is not reasonably calculated to lead to the discovery of admissible evidence. Specifically, DRD contends that the request, as written, is vague and over broad in both time and scope. DRD further asserts that the request is not narrowly tailored or specifically detailed and therefore fails to comply with the Federal Rules of Civil Procedure.

At the hearing, DRD asserted that the information requested from the attorney is overly broad because it seeks information from nine different entities. However, out of the nine entities enumerated, only one, DRD Towing Company, LLC, is a party to the instant litigation. Further, DRD contended the request was overly broad because it seeks documentation that predates the 2008 accident at issue

in the underlying litigation. Finally, DRD contended that the Tintomara Interests failed to specifically detail which types of documents were sought and instead made a general request for "all documents."

In response, the Tintomara Interests contend that a major issue in this litigation relates to a contractual relationship between American Commercial Lines LLC ("ACL") with DRD. ACL is the owner of the Mel Oliver, the vessel which carried the oil that spilled into the Mississippi River. ACL contends that it has a contractual relationship with DRD that included a bareboat charter of the tug with mandatory time charters[2] back to ACL, which resulted with the crewing and insurance to be borne by DRD. This contractual relationship is contested. The Tintomara Interests contends that it seeks the requested information in order to test ACL's alleged bareboat charter with DRD.        At the hearing, the Tintomara Interests contended that DRD is owned by the Dantin Holding Company, which owns the nine entities listed in the notice of deposition. The Tintomara Interests are interested in seeking information as to how the various entities owned by the Dantin Holding Company treated their tugs, and how this treatment differed from DRD Towing Company, LLC's treatment of tugs. The Tintomara Interests further contended that it has been difficult to obtain information from DRD Towng Company, LLC directly because shortly after the collision at issue in the underlying transactions, many of the documents and assets of the company were transferred to Oak Marine Service, Inc. Thus, DRD Towing Company, LLC is little more than a shell corporation. The Tintomara Interests further contended that it has sought documentation from 2005 to the present because this is the time frame in which it had previously sought discovery.

The Court finds that the subpoena, as issued, is overly broad and seeks irrelevant information. The Tintomara Interests failed to demonstrate the relevance of obtaining the requested documentation

---

[2] A time charter is "[a] charter under which the shipowner continues to manage and control the vessel, but the charterer designates the ports of call and the cargo carried." *Black's Law Dictionary*, 250-51 (8th ed. 2008).

5

from the various entities held by the Dantin Holding Company. The fact that these entities are owned by the same parent company is not sufficient to demonstrate relevance. The only entities listed which are currently relevant is DRD Towing Company, LLC, the company that operated the tug in question, and Oak Marine Service, Inc., which currently holds the assets of DRD Towing Company, LLC.

Furthermore, although the Tintomara Interests has previously requested documents from 2005 to the present in previously submitted discovery requests, they failed to provide any justification for this time frame. Therefore, the Court finds that the only relevant time frame would be from the date of the contract, in 2006, to the time of the accident.

Finally, the request as written, does not make clear that the Tintomara Interests are seeking documentation that relates to the treatment of tugs. Instead, the request casts a broad net which seeks <u>all</u> documents and correspondence from these entities. This request is overly broad.

As a result, the motion to quash Ajubita's subpoena duces tecum is granted. However, the Tintomara Interests may re-issue the notice so long as the request is narrowly tailored to the information requested, is limited only to DRD Towing, LLC and Oak Marine Service, Inc., and is limited in time from the date of the contract in 2006 to July 23, 2008, the date of the accident.

### B. **Jon S. Folse**

The Tintomara Interests issued a subpoena duces tecum requesting the following from Jon S. Folse, DRD's accountant:

> All records, correspondence, faxes, e-mails, tax records, supporting documents, backups, audits, electronic or otherwise relating to the following entities:
>
> 1. D.R.D. Towing, LLC (DRD)
> 2. DRD Towing, Co., Inc.
> 3. D.R.D.C/.LLC
> 4. JBD Marine Towing, Inc.

        5. Margaret E. Tugs, LLC
        6. Stacey B, LLC
        7. Six Star Towing, Inc.
        8. Four Marine, LLC
        9. Oak Marine Service, Inc.

(R. Doc. 1101-2, p. 8.)

      DRD contends that the request for financial records from the accountant is irrelevant to the instant matter. DRD contends that DRD Towing is the only entity enumerated that is a party to the instant action, and therefore the information relating to the other entities is extraneous. This is especially true because there have been no allegations in this case which seek to pierce the corporate veil. Further, to the degree that the Tintomara Interests seek this information to evaluate DRD's ability to pay a judgment, DRD contends that the request is premature as no judgment has been entered in the case against them.

      DRD also disputes the subpoena issued to the accountant because it demands the production of "tax records" and "audits." DRD contends that these documents contain confidential information and are therefore privileged.

      The Tintomara Interests contends that the records sought from the accountant are appropriately requested. The Tintomara Interests contends that it seeks to determine the accounting treatment of the vessels and related expenses because this may lead to evidence which demonstrates the extent that the parties considered the bareboat charters to be true demise transfers of the vessels. The Tintomara Interests contends that the tax treatment of these vessels will demonstrate the legitimacy of the bareboat charters. To the extent that any of the requested documentation is privileged, the Tintomara Interests contends that the motion should not be quashed, and instead, a privilege log should be provided.

      For the reasons discussed in Section A, above, the Court finds that the request, insofar as it

seeks documents from all nine listed entities, is overly broad. The request should be limited only to DRD Towing, LLC and Oak Marine Service, Inc. Furthermore, the request, insofar as it seeks documents which predate the underlying contract is overly broad in scope. Therefore, the request should be limited from the date of the underlying contract in 2006, until December 31, 2006, the end of the year in which the incident at issue in the underlying litigation occurred.

Further, for the reasons discussed above, the type of documents requested, and described in the subpoena, is overly broad. At the hearing, the Tintomara Interests indicated that it seeks financial documents in order to evaluate how DRD Towing treated their tugs from a financial standpoint. However, as written, the subpoena also requests "all records, correspondence, faxes, and e-mails" which are related in any manner to the listed entities. (R. Doc. 1101-2, p. 8.)

As a result, the Court requested that the Tintomara Interests specifically identify what information they sought from the accountant. The Tintomara Interests responded that it seeks information related to whether or not DRD took deductions for, or depreciated any of their vessels. They also seek information for how maintenance and repairs to the vessels were treated from a financial standpoint. Finally, the Tintomara Interests informed the Court that it seeks information on whether or not any of the tugs or contracts were used as collateral for a loan.

The Court find that the information relating to how the vessels, and their maintenance and repairs, were treated from a financial standpoint is reasonably calculated to lead to the discovery of admissible evidence and therefore is relevant. The financial treatment of the tugs can clearly provide evidence which either supports or rebuts the assertion that DRD and ACL had a true bareboat charter agreement. However, this information is not relevant, insofar as the Tintomara Interests seeks information regarding the financial treatment of every tug operated by DRD. Instead, the only financial information that is relevant is treatment of ACL owned tugs which were operated by DRD.

8

These tugs include the: (1) Mel Oliver; (2) Regina Ann; (3) Pam D; (4) Pitno; and (5) Celese McKinney. (R. Doc. 1120-1, p. 2.) However, to the extent that the Tintomara Interests seeks information relating to whether any of these five vessels were used as collateral for a loan, the Court finds that the relevancy of this information has not been established.

Because the Court finds that the subpoena, as noticed, is overly broad and seeks irrelevant information, DRD's motion to quash the subpoena is granted. However, the Tintomara Interests may re-issue the notice so long as the request is narrowly tailored to the information requested, is limited only to DRD Towing, LLC and Oak Marine Service, Inc's financial documents regarding the Mel Oliver, Regina Ann, Pam D, Pinto, and Celese McKinney, and is limited in scope from the date of the contract in 2006 to December 31, 2008.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that the **Motion to Quash Subpoenas to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (R. Doc. 1101)** is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that the subpoenas issued by the Tintomara Interest and served on A. Albert Ajubita and Jon S. Folse are hereby **QUASHED.**

New Orleans, Louisiana, this 5th day of April 2011

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**