UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **STEPHEN MARSHALL GABARICK, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO:  08-4007** |
| | **c/w  08-4012; 08-4023; 08-4025; 08-4031; 08-4046; 08-4055; 08-4058; 08-4059; 08-4060; 08-4156; 08-4261; 08-4317; 08-4505; 08-4600; 08-4701** |
| **LAURIN MARITIME (AMERICA), INC., ET AL.** | **SECTION: "B" (4)** |

### ORDER

Before the Court is a **Motion to Quash Notice of Deposition and Alternatively for Protective Order (R. Doc. 1191)** filed by American Commercial Lines ("ACL") seeking to quash the Notice of Deposition of its former in house attorney, Angelina Zinn ("Zinn").  Alternatively, ACL seeks a protective order related to her deposition.  Laurin Maritime (America) Inc., Laurin Maritime AB, Whitefin Shipping Co. Limited, and Anglo-Atlantic Steamship Limited (collectively, "the Tintomara Interests") oppose the motion.  (R. Doc. 1201).  On June 20, 2011, ACL filed a memorandum in support of its motion.  (R. Doc. 1211.)  This motion was heard with oral argument on **Wednesday, June 22, 2011**.  During the hearing, the parties sought leave to file supplemental briefing which was permitted by the Court.  Both parties filed their supplemental briefing on June 29, 2011.  (*See* R. Doc. 1233, 1235.)

I.   **Background**

On July 24, 2008, Plaintiffs Stephen Marshall Gabarick and Bernard Attridge filed this class action Complaint. (R. Doc. 1, p. 1.) On August 6, 2008, the case was consolidated with several other cases resulting from the same underlying incident.[1] (*See* R. Doc. 10).

On July 23, 2008, the M/V Tintomara, a tanker, collided into a Barge DM932 while traveling near Mile Marker 97 of the Mississippi River near the Crescent City Connection. (R. Doc. 1, ¶¶ 1, 5.) The barge was towed by the M/V Mel Oliver. *Id.* As a result of the collision, Barge DM932 split in half, causing a spill of 500,000 gallons of No. 6 Heavy Fuel oil which had recently been loaded on the barge at the St. W. Stone Oil Distributer located in Gretna, Louisiana. *Id.* As a result of the spilled oil, Plaintiffs allege that serious and dangerous environmental contamination of the Mississippi River occurred, and an 80 mile stretch of the Mississippi River has been closed to navigation. Plaintiffs also complain that prevailing winds have caused toxic gases from the oil to spread from the site of the collision to the French Quarter and the Uptown Area of New Orleans, exposing class members. Class members also complain that lost revenues have resulted from the closure of portions of the Mississippi River caused from the oil spill. Class members further complain that water intakes for Algiers, Gretna, St. Bernard Parish, and Plaquemines Parish have closed in order to prevent contamination from drinking water. (R. Doc. 1, ¶¶ 10-13.)

The M/V Mel Oliver was operated by DRD Towing, Inc. ("DRD") and was owned by American Commercial Lines, LLC ("ACL"). ACL contends that DRD operated the tug pursuant

---

[1]The instant case was consolidated with the following cases: Civil Action No. 08-4012, *Austin Sicard, et al. v. Laurin Maritime (America) Inc., et al.,* Civil Action No. 08-4023, *Whitefin Shipping Co. Limited, as owner of the M/V Tintomara, petitioning for Exoneration from or Limitation of Liability,* Civl Action 08-4025, *George C. McGee et al. v. Laurin Maritime (America) Inc., et al*, Civil Action 08-4031, *Bernadette Glover v. Laurin Maritime (American) Inc., et al*, Civil Action No. 08-4046, *American Commercial Lines, LLC as owner of Barge DM-932, Praying for Exoneration from or Limitation of Liability*, Civil Action No. 08-4055, *Jefferson Magee et al. v. American Commercial Lines, Inc., et al*, Civil Action 08-4058, *James Roussell et al v. Laurin Maritime (America) Inc., et al*, Civil Action No. 08-4059, *James Joseph v. Laurin maritime (America) Inc., et al*, and Civil Action 08-4050, *Vincent Grillo et al v. American Commercial Lines, Inc., et al.*

to a bareboat charter agreement. However, the Tintomara Interests contests whether a true bareboat charter agreement existed between DRD and ACL.

On July 8, 2008, sixteen (16) days prior to the accident, ACL terminated its corporate counsel, Angela Zinn. Zinn served as ACL's corporate counsel beginning on November 26, 2007, until she was terminated for poor performance and insubordination. As corporate counsel, she prepared and examined contracts for ACL's Liquids Division, provided legal advice, prepared resolutions and forms, and participated in legal actions. She also reviewed Root Cause Analysis reports and provided legal advice based upon her reviews.

After her termination, Zinn filed a Sabanes Oxley[2] Complaint against her employer under the whistle blowing provisions. On November 5, 2009, the administrative law judge issued his opinion on the matter. *See Zinn v. American Commercial Lines*, No. 2009-SOX-25, 2009 WL 6470496 (Nov. 5, 2009)(Romero, J.).

In his opinion, the Administrative Law Judge summarizes Zinn's complaints, which include that she had voiced concerns relating to ACL's purported failure to properly vet its vendors, including DRD. Zinn also purportedly raised concerns that ACL had failed to report in Security and Exchange Commission filings that it was operating its business in violation of law by utilizing unlicensed personnel. *Id.* at * 6. The Judge ultimately dismissed the Complaint finding that Zinn had failed to demonstrate that she had participated in a protective activity "when she reported ACL's

---

[2]The Sabanes-Oxley Act was enacted on July 30, 2001, and is technically known as the Corporate and Criminal Fraud Accountability Act, Public Law 107-204, 18 U.S.C. § 1514A, *et seq*. It's regulations are promulgated thereunder at 29 C.F.R. Part 1980, which are employee protective provisions. Under the Act, a company, officer, employee, or agent of such company with a class of securities registered under § 12 of the Security Exchange Act of 1934, or required to file reports under § 15(d), is prohibited from discharging, harassing, or in any other manner discriminating against an employee in the terms and conditions of employment because the employee provided to the employer or Federal Government information relating to alleged violations under 18 U.S.C. §§ 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders.

alleged failure to vet vendors and the alleged failure to disclose DRD Towing's use of unlicensed [personnel] . . ." *Id.* at * 48.

As to the instant motion, on May 26, 2011, the Tintomara Interests noticed the deposition of Zinn. ACL contends that the Plaintiffs seek to depose Zinn on matters protected by the attorney-client privilege  ACL contends that it has not waived the attorney client privilege and therefore the notice should be quashed. Alternatively, ALC seeks a protective order which requires the attorneys participating in the deposition to refrain from asking questions which encroach on the attorney client privilege and directs  Zinn to honor instructions not to respond to questions which involve the attorney client privilege. If the notice is not quashed, ACL further seeks to have the deposition transcript sealed for 10 days to review the deposition to resolve any pending privilege issues. The Tintomara Interests oppose the motion.

**II.     Standard of Review**

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1).  The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*  The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Hebert v. Lando,* 441 U.S. 153, 176 (1979).  Nevertheless, discovery does have "ultimate and necessary boundaries."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court."  *Coleman v. Amer. Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(c), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(2)(c). In assessing whether the burden of the discovery outweighs the benefit, a court must account for: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id*.

### III.  **Original Pleadings**

ACL contends that the only information Zinn holds was learned from her position as in house counsel. Therefore, any information that she has is subject to the attorney client privilege. ACL further contends that a deposition of another attorney can only be sought when (1) there are no other means to obtain the information and (2) the information sought is relevant and non privileged. ACL argues that because Zinn was only employed as an attorney for the sole purpose of performing legal work, she does not hold any non-privileged information.

ACL filed a reply memorandum to the Tintomara Interest's opposition. In its reply, ACL contends that Zinn raised questions about ACL's contractual obligations and its obligations to make certain public disclosures pursuant to SEC regulations and this is clearly in the province of the attorney client relationship. ACL contends that in this matter, it has not interjected into the litigation any question as to what they were told by their attorneys, and therefore have not put any information that Zinn had at issue.

In response, the Tintomara Interests acknowledge that the general rule is to preclude a

party's attorney from being called as a witness. However, it contends that an exception exists where opposing counsel has independent knowledge of the underlying dispute. The Tintomara Interests contends that Zinn has independent knowledge as to the issue of when ACL learned or should have been aware of the fact that DRD was utilizing unlicensed personnel to operate tugs. Further, because ACL has made a claim that DRD fraudulently induced ACL into entering a contract because they never disclosed their use of unlicensed personnel, this information is highly relevant. The Tintomara Interests further contend that Zinn is not counsel of record and was fired prior to this incident, therefore she was not involved in developing any claims, defenses, or legal strategies in the above captioned matter.

The Tintomara Interests contends that there are no other means in which to acquire this information because ACL vehemently argued in the Department of Labor hearing that Zinn was making up her vetting claims and that her alleged conversations regarding DRD's use of unlicensed personnel never occurred. Because the conversations are disputed, Zinn is the only person who can provide information as to this issue. The Tintomara Interests contends that the information sought is not privileged because her testimony is fact specific and does not relate to ACL seeking legal advice or Zinn's offer of counsel.

At the hearing, the Tintomara Interests conceded that it could not obtain any information from Zinn related to her advice or legal services rendered to ACL. The Tintomara Interests further indicated that they did not seek to question Zinn on her analysis of Root Cause Analysis reports and any advice she rendered therefrom. Instead, the Tintomara Interests seek a limited deposition of Zinn relating to the factual basis for Zinn's assertion that DRD did not properly vet its vendors and DRD's use of unlicensed personnel.

The Court noted that neither party had addressed in their briefing whether Zinn's testimony as to the underlying facts as to her knowledge that DRD did not properly vet its vendors and DRD's use of unlicensed personnel was protected by the attorney-client privilege. As such, the parties provided supplemental briefing after the hearing.

## IV.     Supplemental Briefing

In its supplemental memorandum, ACL concedes that "ACL employees' communication of alleged 'facts' to Ms. Zinn in her capacity as in-house counsel does not, admittedly, make those 'facts' themselves immune to discovery." (R. Doc. 1233, p. 5.) ACL contends that it is not attempting to prevent discovery from the underlying facts; it contends instead that Zinn is not the proper source to obtain information relating to the underlying facts. ACL argues that the Supreme Court, in *Upjohn Co. v. U.S.*, 449 U.S. 383, 395 (1981), held that the attorney-client privilege does not prevent the underlying facts from being discoverable simply because those facts have been communicated to an attorney. ACL contends that Zinn, however, is not the source of these underlying facts.

ACL further contends that, if the Court looks to Texas law, the discovery of the factual elements of an attorney-client communication is expressly protected under Texas Rules of Evidence 503(b). ACL contends that this language mirrors proposed Federal Rule of Evidence 503. ACL contends that because Zinn only obtained information regarding underlying facts through confidential communications with ACL's employees. Because these communications were confidential, the underlying facts are not discoverable.

In contrast, the Tintomara Interests cite to *Hickman v. Taylor*, 329 U.S. 495, 511, for the proposition that the underlying facts, even if included in an attorney's file, are discoverable when

essential for the preparation of the case.

**V.     Analysis**

The underlying purpose of the attorney-client privilege is to "'encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). This purpose enables clients to make full disclosure to their attorneys to obtain "the aid of persons having knowledge of the law and [who are] skilled in its practice." *Hunt v. Blackburn*, 128 U.S. 464, 470, (1888). However, because the assertion of privileges inhibits the search for truth, the attorney-client privilege is generally construed narrowly by courts. *Trammel v. United States*, 445 U.S. 40, 50 (1980).

This Court has federal question jurisdiction over this matter. Therefore, the attorney client privilege is analyzed under federal law. Under federal law, the elements of the attorney-client privilege are "(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (I) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." *In re Grand Jury Proceedings*, 517 F.2d 666, 670 (5th Cir.1975). Based upon these considerations, it is clear the privilege "only protects disclosure of confidential communications between the client and attorney; it does not protect the disclosure of underlying facts." *Upjohn, Co.*, 449 U.S. at 395-396. Thus,

pre-existing facts that underlie the client's confidential communications are not privileged simply because the client disclosed them to an attorney for the purpose of obtaining legal services. *See id.* This inquiry is highly fact-specific, and the party asserting the privilege bears the burden of proving its applicability. *United States v. Kelly*, 569 F.2d 928, 938 (5th Cir.1978).

The attorney-client privilege applies in a corporate setting. However, because in-house counsel has an increased level of participation in the day-to-day operations of the corporation, it is more difficult to define the scope of the privilege when a communication is made to in-house counsel. *See Upjohn Co.*, 449 U.S. at 389. Thus, in such a setting, the attorney-client privilege attaches only to communications made for the purpose of giving or obtaining legal advice or services, not business or technical advice or management decisions. *See Navigant Consulting, Inc.*, 220 F.R.D. at 474; *Borase v. M/A COM, Inc.*, 171 F.R.D. 10, 14 (D.Mass.1997); *First Wisconsin Mortgage Trust v. First Wisconsin Corp.*, 86 F.R.D. 160, 174 (D.C.Wis.1980). The critical inquiry is, therefore, whether any particular communication facilitated the rendition of predominantly legal advice or services to the client. *See Navigant Consulting, Inc.*, 220 F.R.D. at 474; *see also Neuder v. Battelle Pac. Nw. Nat'l Lab.*, 194 F.R.D. 289, 293 (D.D.C.2000); *Boca Investerings P'ship v. United States*, 31 F.Supp.2d 9, 11-13 (D.D.C.1998).

The Court finds that ACL has failed to meet their burden of demonstrating that the attorney-client privilege applies to the factual underpinnings of Zinn's knowledge as to DRD's vetting process and use of unlicensed personnel. ACL argues that Zinn can be deposed on facts obtained from sources other than confidential communications, but because she obtained her factual knowledge through confidential communication he knowledge of the facts is protected. This is not the law. In *Upjohn*, cited by ACL, the Court found that "Pre-existing facts that underlie the client's

9

confidential communications, whether oral or written, are not privileged simply because *the client disclosed them to an attorney for the purpose of obtaining legal services.*'" *Upjohn*, 499 U.S. at 395 (emphasis added). The fact that Zinn obtained her knowledge of the underlying facts for purposes of serving in her capacity as corporate counsel is irrelevant. The Defendants are entitled to discover the facts.[3]

Having found that the attorney-client privilege is not applicable to Zinn's knowledge of the underlying facts as to DRD's vetting process and use of unlicensed personnel, the Court declines to quash the notice of deposition of Zinn. However, the deposition of Zinn must be limited in scope. The Tintomara Interests are not permitted to depose Zinn as to any legal advice or opinions she rendered as to these topics.

The Court declines to seal the deposition transcript for ten (10) days after the conclusion of the deposition. In addition, the Court denies ACL's request to conduct the deposition with the undersigned present by telephone. However, the Court will make itself available by telephone in the event a dispute arises during the course of the deposition. If the parties find it necessary, they may contact the Court via telephone to resolve the dispute.

## VI.   Conclusion

Accordingly,

**IT IS ORDERED** that American Commercial Lines LLC ("ACL") **Motion to Quash Notice of Deposition and Alternatively for Protective Order (R. Doc. 1191)** is hereby **DENIED**. ACL is permitted to depose Zinn for the limited purpose of obtaining Zinn's knowledge of the underlying

---

[3] The Court notes that the Tintomara Interests alternatively argued that if the attorney-client privilege applied, such privilege was waived by ACL when it defended itself against Zinn's Sabanes-Oxley complaint. Having found that the attorney client privilege is not applicable, the Court need not address waiver.

facts as to DRD's vetting process and use of unlicensed personnel. The Tintomara Interests is prohibited from deposing Zinn on any issue relating to her advice or opinions rendered to ACL or any other matter encroaching on the attorney client privilege.

                New Orleans, Louisiana, this 14th day of July 2011

                **KAREN WELLS ROBY**
                **UNITED STATES MAGISTRATE JUDGE**