UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

_____

| | |
|---|---|
| STEPHEN MARSHALL GABARICK and BERNARD ATTRIDGE On Behalf of Themselves and All Others Similarly Situated | CIVIL ACTION NO. 08-4007 Consolidated Cases Applies to 08-4023, 08-4046, 08-4261, 08-4600 and 08-4156 |
| VERSUS | |
| LAURIN MARITIME (AMERICA), INC.; WHITEFIN SHIPPING CO. LIMITED; D.R.D. TOWING COMPANY, LLC; AMERICAN COMMERCIAL LINES, INC.; and THE NEW ORLEANS-BATON ROUGE STEAMSHIP PILOTS ASSOCIATION | Section "B" – (4) JUDGE LEMELLE MAGISTRATE JUDGE ROBY |

_____

**AMERICAN COMMERCIAL LINES LLC'S MEMORANDUM IN SUPPORT OF MOTION TO WITHDRAW FUNDS FROM REGISTRY OF COURT IN <u>INTERPLEADER ACTION</u>**

**MAY IT PLEASE THE COURT:**

**INTRODUCTION**

As the Court is aware, American Commercial Lines Inc. and American Commercial Lines LLC (hereafter collectively "ACL"), were exonerated from all liability arising out of the July 27, 2008 collision and oil spill incident which involved the tug M/V MEL OLIVER, barge DM 932, and the M/V TINTOMARA.

By the Court's opinion and judgment, ACL was found to be free from fault and DRD Towing, LLC (operator of the M/V MEL OLIVER) ("DRD") was found to be 100% at fault for the collision. The M/V TINTOMARA was also found to be free from fault. ACL and the Tintomara Interests (i.e., Laurin Maritime AB, Laurin Maritime (America), Inc., Anglo-Atlantic

{N2777826.1}

Steamship Co., Ltd.; Whitefin Shipping Co., Ltd.) ("Tintomara Interests") were also exonerated from liability.  Pursuant to a damage stipulation, (R.Doc. 1368), ACL recovered judgment in the amount of $70,000,000, its stipulated damages, against DRD and the Tintomara Interests recovered a judgment in the amount of $750,000 against DRD.  (*See* R.Doc. 1436).

As the Court is also aware, Civil Action No. 08-4156 was an interpleader action filed by the primary and excess liability underwriters of DRD, Indemnity Insurance Company of North America ("IINA") and Houston Casualty Company ("Houston Casualty").  During the pendency of this action, various disbursements have been made from the funds on deposit in the interpleader action.  Presently, the sum of $405,100.13 in principal and $42,691.31 of accrued interest as of December 31, 2013 (plus interest accrued from 12/31/13 to date) remains in the registry of the Court in the interpleader action.  DRD is now bankrupt and has no assets so the Interpleader Funds represent the only funds available to satisfy ACL's judgment.

## BACKGROUND FACTS

On July 23, 2008, the MEL OLIVER was operating under an amendment to both an August 6, 2007 Master Bareboat Charter between ACL, as owner, and DRD, as charterer, and an August 6, 2007 Master Fully Found Charter between DRD, as demise owner, and ACL, as time charterer.  On that day, ACL's Barge DM-932, while being pushed by the tug MEL OLIVER in the Port of New Orleans, collided with the M/V TINTOMARA, resulting in an oil spill of some 300,000 gallons of fuel oil in the Mississippi River ("the Collision").

Limitation actions were commenced by the owners and operators of the M/V TINTOMARA (Civil Action No. 08-4023), ACL (Civil Action Nos. 08-4046 and 08-4600), and DRD (Civil Action No. 08-4261).  These actions, along with several other related actions,

were consolidated and handled as one matter (Civil Action No. 08-4007) (the "Consolidated Action").

Shortly after the commencement of the litigation, Civil Action No. 08-4156, an interpleader action, was commenced by IINA, the primary P&I insurer of D.R.D., and later joined by Houston Casualty and IINA in their capacity as excess liability insurers of DRD, by depositing the proceeds of the policies they issued covering DRD for losses, $9,985,000.00, into the Court registry. (R.Docs. 37, 886-3 and 951) (the "Interpleader Funds"). The interpleader case was consolidated with the limitation actions, and with the lead case, C.A. No. 08-4007. (R.Doc. 30). IINA and Houston Casualty correctly asserted that the claims asserted against their insured, DRD, in the Consolidated Action, far exceeded the limits of their policies.

The case went to trial on the consolidated limitation actions on August 8, 2011. At the trial, in order to streamline the issue of Tintomara and ACL damages, the parties entered into a stipulation (R.Doc. 1368) that Tintomara's damages were $750,000.00 and that ACL's damages were $70,000,000.00.[1] To further simplify the damages issues, ACL agreed in the stipulation that the Tintomara Interests could recover their $750,000.00 by preference and priority out of the Interpleader Funds on deposit in the Court's registry as may be adjudged against DRD "exclusive of interest and costs." (R.Doc. 1368 at ¶ 7).

On September 28, 2012, after an extensive trial, this Court entered Judgment. (R.Doc. 1436.) The Court held in relevant part:

---

[1] The total amount of ACL's damages had not yet been quantified and ACL was permitted the opportunity to amend its claim when its damages were eventually quantified. The total amount of ACL's damages have still not been quantified.

>   (1)  D.R.D. Towing Company, LLC, *in personam* and the M/V MEL OLIVER, *in rem*, are liable to and shall pay Laurin Maritime (America), Inc., Laurin Maritime AB, Whitefin Shipping Co., Ltd., and Anglo-Atlantic Steamship Limited (TINTOMARA interests); and American Commercial Lines, Inc. and American Commercial Lines LLC (ACL) their respective stipulated recoverable damages, plus interest and costs, as set forth in Record Document Number 1368; (2) All claims by D.R.D. against TINTOMARA interests and ACL are dismissed; (3) All claims by D.R.D. for the benefit of limitation of liability are rejected and dismissed; (4) All claims by TINTOMARA interests against ACL and all claims by ACL against TINTOMARA interests are dismissed. . ..

On January 22, 2013, Tintomara moved the Court to order the Clerk to disburse to it $750,000.00 from the Interpleader Funds in satisfaction of the total principle amount of its stipulated damages against DRD.  (R.Doc. 1476.)  On March 4, 2013, the Court granted Tintomara's motion and ordered that Tintomara be paid $750,000.00, principle only, from the Interpleader Funds.  (R.Doc. 1483.)

On March 12, 2013, ACL moved the Court, without opposition, to order the Clerk to disburse to it $7,100,000.00, principle only, from the Interpleader Funds in partial satisfaction of its judgment of $70,000,000.00 against DRD (R.Doc. 1492.)  By order dated March 20, 2013, this Court granted ACL's motion.  (R.Doc. 1494.)

Tintomara and ACL agreed that the remaining balance of the Interpleader Funds, after Tintomara and ACL withdrew the aforesaid amounts, remain in the registry of the Court until after the appeals in the consolidated limitation actions were decided.  This Court's judgment was affirmed in its entirety by the United States Court of Appeals for the Fifth Circuit on January 10, 2014 and the mandate was issued on February 3, 2014.  (5th Cir. Doc. No. 00512520466.)  The amount that currently remains on deposit in the Interpleader Fund is $447,791.44, together with

additional interest that may have accrued after December 31, 2013. This amount consists of $405,100.13 in principle and $42,691.31 in accrued interest as of December 31, 2013.

ACL now moves the Court for an order disbursing to it the entire amount remaining in the Interpleader Fund. There are two parties who have judgments against DRD, Tintomara and ACL. However, Tintomara has already received 100% of the principle of its stipulated damages. ACL has only received about 10% of the principle amount of its stipulated damages. Accordingly, ACL should be entitled to the remaining balance of the Interpleader Fund. Even after receiving the full amount of the remaining funds, ACL will have only received about 11% of its stipulated damages.

In the alternative, the Court should pro-rate the remaining funds based upon the total amount of the competing claims, Tintomara $750,000.00 and ACL $70,000,000.00. The total claims against the Interpleader Funds are therefore $70,750,000.00. Of that sum, ACL's claim is $70,000.00/$70,500,000.00 or 99% of the remaining balance of the Interpleader Funds.[2]

ACL's counsel approached Tintomara's counsel to see if an agreement could be reached in the final distribution of the funds. However, an agreement could not be reached, thus requiring the filing of this motion.

## LAW AND ARGUMENT

As stated above, the Court permitted Tintomara to withdraw the full amount of its stipulated damage, $750,000.00 from the Interpleader Funds. Tintomara has been made whole for the principle amount of its damages. The Court, without objection from Tintomara, allowed

---

[2] Tintomara's claim is $750,000.00/$70,750,000.00 or 1%.

ACL to recover $7,100,000.00 of its $70,000,000.00 stipulated damages from the Interpleader Funds.[3]

As such, Tintomara has recovered 100% of its stipulated damages, but ACL has only received 10% of its stipulated damages.  Equity demands that the amount remaining in the registry, after payment of the final legal bill from DRD's counsel in the amount of $3,401.25, be paid 100% to ACL.[4]  Even with the payment of the remaining funds, ACL will only be reimbursed about 11% of the principle amount of the judgment it recovered against DRD.

Should this Court determine that the remaining Interpleader Funds be disbursed on some other basis than that set forth above, then the Court should order that the funds be disbursed on a pro-rata basis with ACL to receive 99% and Tintomara 1% of the remaining Interpleader Funds.

The proceeds in the registry are the total limits of insurance provided to DRD, a bankrupt, by IINA and Houston Casualty, to cover all claims against DRD arising out of the collision.  The only two remaining claimants are ACL and Tintomara, both have equally ranking competing claims based upon the judgment in their favor against DRD.  In the absence of a specific and controlling federal rule, the interpretation of marine insurance policies and issues are "to be determined by reference to appropriate state law." *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 34845 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955); *Albany Ins. Co. v. Kier*, 972 F.2d 882,

---

[3] ACL and Tintomara agreed to allow the balance to remain in the registry until the appeals were decided.

[4] Attached as Exhibit 1 is a redacted final bill of Waits, Emmett, Popp & Teich ("Waits") dated February 18, 2014.  ACL and Waits agreed that their bill be reduced by $1,500.00 for a total of $3,401.25 and that amount may be paid in its entirety from the Interpleader Funds.  ACL's counsel attempted to have Tintomara agree to this, but as of the filing of this motion, has not received Tintomara's reply.

886 (5th Cir. 1991). Louisiana law should apply as the policies were issued here to DRD, a Louisiana resident, and the accident occurred here.

Under Louisiana law when there are insufficient proceeds from a tortfeasor's policy covering all claims by claimants then the proceeds are divided pro-rata to the claimants. This is true especially where the insured is insolvent, such as in this case. *Johnson v. State of Louisiana*, 450 So.2d 386 (La.App. 1st Cir.) cert denied, 450 So.2d 1311 (La. 1984); 15 La. Civ. L. Treatise, Insurance Law & Practice § 7:23 (4th Ed.): "When multiple claimants are entitled to awards which exceed liability coverage, then the judgment should pro-rate the liability limits among the claimants in the proportion that the award in favor of each bears to the total award." (*See also 12 Couch on Ins.* § 170:27).

Accordingly, should the Court decide that ACL is not entitled to 100% of the remaining Interpleader Funds because Tintomara has already received 100% of the principle amount of its stipulated damages, then the Court should pro-rate the remaining balance. The pro-ration should be in the "proportion that the award in favor of each bears to the total award." Here the total principle award to ACL and Tintomara was $70,750,000.00. ACL is entitled to $70,000,000.00/$70,750,000.00 or 99% of the remaining balance.

Should the Court decide to look to maritime law to determine the priority of distribution of the claims, then the Interpleader Funds would be analogous to a limitation fund since DRD has no other assets to satisfy the judgment.

If the limitation funds available "are insufficient to pay all claims … all claimants shall be paid in proportion to their respective losses …." 46 U.S.C. § 30507. The funds "shall be divided pro rata … among the several claimants in proportion to the amounts of their respective

claims, duly proved, saving however, to all parties any priority to which they may be legally entitled." Supplemental Rule F(8) for Admiralty and Maritime Claims. The pro rata distribution principle applies to all claims subject to limitation. Since the claims of the Tintomara Interests and ACL are of equal rank and each has been found free from fault, the distribution of funds under maritime principals would be pro-rata. *Butler v. Boston & S. S.S. Co.*, 130 U.S. 527 (1889).

## CONCLUSION

For the reasons set forth above, the Court should grant ACL's motion and disburse the remaining balance of the Interpleader Funds, after payment of the Waits fees and expenses, to ACL. Alternatively, the Court should apportion that amount, disbursing 99% to ACL.

Respectfully submitted,

*/s/ Glenn G. Goodier*
GLENN G. GOODIER, T.A. (#06130)
RICHARD D. BERTRAM (#17881)
Jones Walker LLP
201 St. Charles Avenue – 48th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8174
Fax: (504) 589-8174
ggoodier@joneswalker.com
*Attorneys for American Commercial Lines Inc. and American Commercial Lines LLC*

Of Counsel:

John A. V. Nicoletti
Terry L. Stoltz
NICOLETTI HORNIG & SWEENEY
Wall Street Plaza, 88 Pine Street, 7th Floor
New York, New York 10005-1801
Tel: (212) 220-3830 Fax: (212) 220-3780
jnicoletti@nicolettihornig.com
tstoltz@nicolettihornig.com

{N2777826.1}

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 25th day of February, 2014 served a copy of the foregoing pleading on counsel for all parties to this proceeding by electronic filing, facsimile, hand delivery, and/or by mailing the same by United States mail, properly addressed and first class postage prepaid.

*/s/ Glenn G. Goodier*
GLENN G. GOODIER