UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

_____

| | |
|---|---|
| STEPHEN MARSHALL GABARICK and BERNARD ATTRIDGE On Behalf of Themselves and All Others Similarly Situated | CIVIL ACTION<br><br>NO. 08-4007<br>Consolidated Cases<br>Applies to 08-4023, 08-4046, |
| VERSUS | 08-4261, 08-4600 and 08-4156 |
| LAURIN MARITIME (AMERICA), INC.; WHITEFIN SHIPPING CO. LIMITED; D.R.D. TOWING COMPANY, LLC; AMERICAN COMMERCIAL LINES, INC.; and THE NEW ORLEANS-BATON ROUGE STEAMSHIP PILOTS ASSOCIATION | Section "B" – (4)<br><br>JUDGE LEMELLE<br><br>MAGISTRATE JUDGE ROBY |

_____

**MEMORANDUM IN OPPOSITION TO TINTOMARA'S MOTION FOR SUMMARY JUDGMENT AGAINST NATIONAL LIABILITY AND FIRE INSURANCE COMPANY**

**MAY IT PLEASE THE COURT:**

### INTRODUCTION

American Commercial Lines LLC ("ACL") and National Liability and Fire Insurance Company ("National Liability"), through undersigned counsel, respectfully request that the Court deny the Tintomara Interests' motion for summary judgment against National Liability (R.Doc. 1542).

On September 26, 2008, National Liability issued a Letter of Undertaking ("LOU") on behalf of ACL in which National Liability agreed, "[i]n the event of a final decree … in favor of any claimant in [an action to be filed by American Commercial Lines LLC, as owner of the M/V MEL OLIVER, seeking exoneration from or limitation of liability], … to pay and satisfy … any

{N2780889.1}

said final decree…." (C.A. 08-4600, R.Doc. 1-1). ACL subsequently commenced an exoneration/limitation action in Civil Action No. 08-4600. National Liability's LOU was posted on behalf of ACL in Civil Action No. 08-4600, representing ACL's interest in the MEL OLIVER. The LOU was approved by the District Court as the limitation fund for ACL's exoneration/limitation action. ACL has been found to be free from fault and was exonerated from any liability for the collision and the resulting oil spill. Therefore, National Liability is not liable to any claimant in the ACL exoneration/limitation action, including the Tintomara Interests.

## BACKGROUND FACTS

This litigation arises out of a collision and oil spill which occurred on July 23, 2008 on the Mississippi River in the Port of New Orleans. The M/V TINTOMARA, a foreign flag seagoing tanker, was proceeding downriver and collided with the fully loaded tank barge DM-932, resulting in the total loss of the tank barge and a large oil spill.

Tank barge DM-932 and the oil aboard her were owned by ACL. Tank barge DM-932 was an unmanned non self-propelled barge that was being towed by the tug M/V MEL OLIVER when she was struck by the M/V TINTOMARA.

ACL was also the owner of the M/V MEL OLIVER, but at the time of the accident, the tug was crewed and operated by D.R.D. Towing Company, L.L.C. ("DRD"), who had bareboat chartered the M/V MEL OLIVER from ACL.

As a result of the collision, actions for exoneration/limitation of liability were commenced by the Tintomara Interests as owners of the M/V TINTOMARA (Civil Action No. 08-4023) and by ACL as owner of tank barge DM-932 (Civil Action No. 08-4046).

On August 22, 2008, DRD commenced Civil Action No. 08-4261 by filing a "Verified Complaint-in-Limitation" wherein DRD, as the owner *pro hac vice* of the MEL OLIVER, claimed the benefit of limitation of liability provided in 46 U.S.C. § 30501 *et seq.* and Rule F of the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure (Civil Action No. 08-4261, R.Doc. 1). In its Complaint, DRD alleged that the value of its interest in the MEL OLIVER was zero "…in that DRD Towing Company, L.L.C. did not own the vessel." (Civil Action No. 08-4261, R.Doc. 1, at ¶ 11.) DRD further alleged "…in the alternative, should Petitioner as owner *pro hac vice* or alleged owner *pro hac vice* be required to post security to the value of the vessel following the incident in suit, Petitioner avers that said value was $780,000.00" (*Id.*). DRD posted an *Ad Interim* Stipulation for the sum of zero dollars (Civil Action No. 08-4261, R.Doc. 3).

By Order dated August 28, 2008, the Court approved DRD Towing's *Ad Interim* Stipulation and "zero" value limitation fund. The Court's order stated in pertinent part: "…The Complaint-in-Limitation having stated that the value of DRD Towing Company, L.L.C.'s interest in the M/V MEL OLIVER and its pending freight, if any, at the time of the incident does not exceed zero dollars and zero cents ($0.00)…" (Civil Action No. 08-4261, R.Doc. 4, at p. 1). The Order provided further that any claimant could contest DRD's assertion that its interest in the MEL OLIVER at the conclusion of the voyage was zero and could seek to require DRD to post additional security (Civil Action No. 08-4261, R.Doc. 4, at p. 2).

The Tintomara Interests answered and filed a claim in DRD's limitation action but did not contest DRD's "zero" value limitation fund. The Tintomara Interests never sought an order

from the Court increasing DRD's limitation fund or directing DRD to post a bond or other security.

On October 6, 2008, ACL filed a Complaint for Exoneration From and/or Limitation of Liability (Civil Action No. 08-4600, R.Doc. 1). ACL, as owner of the M/V MEL OLIVER, sought exoneration from all liability for the July 23, 2008 collision and oil spill. Alternatively, ACL sought to limit its liability to the value of the M/V MEL OLIVER immediately following the collision. ACL submitted a Declaration of Value from a marine surveyor who attested that the value of the tug immediately after the collision was $780,000.00 (Civil Action No. 08-4600, R.Doc. 1-1). ACL deposited the National Liability LOU with the Court to constitute the "limitation fund" in the event ACL was found to be liable for the collision and entitled to limit its liability pursuant to the Limitation of Liability Act, 46 U.S.C. § 30501 *et seq.* (the "Limitation Act").

The LOU was posted by National Liability for ACL, as owner of the M/V MEL OLIVER, because National Liability insured ACL for certain marine risks, including collision liability. The LOU was not posted for DRD in any respect. National Liability did not insure DRD in its capacity as bareboat charterer, time charterer or operator of the M/V MEL OLIVER (Ex. 1 hereto, Declaration of Paul Ferguson at ¶ 6). Rather, DRD had its own marine insurance policies issued by underwriters other than Starr Marine and National Liability.

Indeed, prior to DRD filing its limitation action, DRD's underwriters commenced an Interpleader Action (Civil Action No. 08-4156)[1] and ultimately deposited $9,985,000.00 into the

---

[1] The exoneration/limitations actions, along with the Interpleader Action filed by DRD's insurers, were consolidated with other cases under the lead case of "Gabarick v. Laurin Maritime," Civil Action No. 08-4007.

Registry of the Court, representing the policy limits of DRD's primary protection and indemnity insurance and its excess liability insurance. This amount was far in excess of the value of the M/V MEL OLIVER. With the consent of the Tintomara Interests, various disbursements have been made from the Interpleader Action with the approval of the Court. Presently, approximately $447,791.44 remains on deposit with the Registry of the Court in the Interpleader Action.[2]

Commencing on August 11, 2011, this Court conducted a trial on the merits of the consolidated exoneration/limitation actions. In its Opinion (R.Doc. 1435), the Court found that DRD was 100% liable for the collision and that DRD was not entitled to limit its liability. The Court also concluded that ACL and the Tintomara Interests were free from fault and were to be exonerated from all liability.

The parties entered into a stipulation on recoverable damages that agreed that the Tintomara Interests' damages were $750,000 and that ACL's damages were $70 million. Accordingly, judgment was entered in favor of the Tintomara Interests and ACL against DRD and the M/V MEL OLIVER *in rem* for $750,000 and $70 million, respectively (R.Doc. 1436). The Opinion and Judgment were affirmed by the Fifth Circuit on January 8, 2014 and the mandate of the Court of Appeals was issued on February 3, 2014.

On March 5, 2013, DRD filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Eastern District of Louisiana (Case No. 13-10524). DRD is defunct and the only funds

---

[2] ACL has recently filed a motion of disbursement of funds from the Interpleader Action (R.Doc. 545), which is pending on the Court's docket.

remaining to satisfy the Judgment against DRD in favor of the Tintomara Interests and ACL are the balance of insurance proceeds on deposit in the Interpleader Action.

## ARGUMENT

The Tintomara Interests cannot execute their *in rem* Judgment against the LOU issued by National Liability because the LOU is only security for successful claims in ACL's exoneration/limitation action. ACL was exonerated from any liability. Therefore, no liability attaches to National Liability under the LOU.

## POINT I

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is only appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. of Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden under Fed.R.Civ.P. Rule 56(c) of demonstrating the absence of a genuine issue of material fact. *Asset Funding Group, L.L.C. v. Adams & Reese,* No. 07-2965, 2009 WL 3849904 at *1 (E.D.La., Nov. 13, 2009) (citing *Imperial Trading Co., Inc. v. Travelers Prop. Cas. Co. of Am.*, 638 F.Supp.2d 692, 696 (E.D.La., 2009)). "A 'material fact' is one which, given its resolution in favor of one party or another, might affect the outcome of the suit under applicable law." *Faith Productions, LLC v. St. Paul Travelers Ins.*, No. 07-4726, 2009 WL 2823654 at *2 (E.D.La., Aug. 27, 2009) (citing *Disaster Relief Services of North Carolina, LLC v. Employers Mut. Cas. Ins. Co.*, No. 07-1925, 2009 WL 935963 at *2 (W.D. La., Apr. 6, 2009)). Likewise, "[a]n issue is considered 'genuine' when the evidence leaves open the possibility that a rational

trier of fact might still return judgment in favor of the nonmoving party." *Services of North Carolina, LLC*, 2009 WL 935963 at *2 (citing *Hamilton v. Segue Software*, Inc., 232 F.3d 473, 477 (5th Cir. 2000)).

## POINT II

### NATIONAL LIABILITY'S LOU DOES NOT RESPOND TO THE TINTOMARA'S JUDGMENT

#### A.     Limitation Is A Personal Defense

The Limitation Act was enacted in 1851 to promote the development of the American Merchant Marine and to put American shipowners on a footing equal to shipowners hailing from other commercial seafaring nations.  U.S. shipowners were intended to be the immediate and specific beneficiaries of this legislation.  *Maryland Casualty Co. v. Cushing*, 347 U.S. 409, 74 S.Ct. 608, 98 L. Ed. 806 (1954); *The Aquitania*, 20 F.2d 457 (2d Cir. 1927); *Lake Tankers Corp. v. Hen*, 354 U.S. 147, 77 S.Ct. 1269, 1 L.Ed. 2d 1246 (1957).

A shipowner's right to limitation of liability in the United States derives from the admiralty practice in England.  Historically, the English Admiralty Court could only exercise jurisdiction *in rem*, while the Court of Chancery heard actions *in personam*.  See F.L. Wiswall Jr., *The Development of Admiralty Jurisdiction and Practice since 1800* 17, 179 (Cambridge University Press 1970); *see also,* Thomas P. Adams, Comment, Foreclosing on the Eclipse Doctrine – A Plea for Equity in Admiralty, 11 Marl 301, 302 (1986) ("The [courts of admiralty] were traditionally confined to adjudication of claims in rem, since these were outside the purview of the chancery courts");  *Shelby v. Bacon*, 51 U.S. 56, 1850 WL 6933, at *1 n.2 (1850) (stating that the English Court of Chancery acts *in personam*).  Shipowner limitation of liability actions were heard only under the *in personam* jurisdiction of the English Court of

Chancery.  *See* Wiswall, *supra* 22.  Thus, the history of the Limitation Act establishes that a limitation action is a personal defense.

As in England, the early courts addressing the issue in the United States also held that an action for limitation of liability is a defense personal to those entitled to seek such relief pursuant to the Limitation Act.  *See, e.g., The Rebecca*, 20 F.Cas. 373, 377, 2007 A.M.C. 1193 (D.Me. 1831) (by the general maritime law of Europe, vessel owners that abandon ship and freight to a creditor thereby discharge themselves from all personal responsibility for the wrongful acts of the master); *Ohio Transp. Co. v. Davidson S.S. Co.*, 148 F. 185, 187 (7th Cir. 1906) ("[c]ongress gave the unoffending owner of an offending vessel the absolute right to relieve himself of personal liability by turning over the vessel and her freight…").

Fifth Circuit case law also holds that limitation of liability is a "personal defense" available to a vessel owner.  *See Olympic Towing Corp. v. Nebel Towing Co., Inc.*, 419 F.2d 230, 238, 1969 A.M.C. 1571 (5th Cir. 1969), *rev'd by*, *Crown Zellerbach Corp. v. Ingram Indus., Inc.*, 783 F.2d 1296, 1986 A.M.C. 1471 (5th Cir. 1986).[3]

The liabilities to be limited by the Limitation Act are those liabilities peculiar to the individual as a shipowner.  *Great Lakes Towing Co. v. Mill Transportation Co.*, 155 F. 11 (6th Cir. 1907); *In the Matter of Independent Towing Co.*, 242 F.Supp. 950 (E.D. La. 1965).

---

[3] While *Crown Zellerbach* reversed *Nebel Towing*, it did so in the context of applying the Louisiana Direct Action Statute where an insurer was not claiming the statutory right of its assured.  The Court in *Crown Zellerbach* ultimately held that an insurer may seek limitation in connection with defenses personal to the insurer (this holding does not affect, nor is it relevant to, the instant motion).  783 F.2d at 1303-04.  Stated another way, "*Olympic Towing* has been overruled to the extent that where a provision of the applicable policy fixes the maximum liability to that of the tug owner's judicially declared limitation of liability, that provision is valid."  *Moody v. Callon Petroleum Operating Co.*, 37 F.Supp.2d 805, 811 n.2 (E.D.La. 1999).

> "A petition for exoneration from or limitation of liability has always been construed as a defensive action and the proceeding apparently one *in personam*." *3 Benedict on Admiralty*, 479, p. 342 (1940 E.D.); *In re: Putnam*, 55 F.2d 73 (2d Cir. 1932); *Learned Hand, J.* that it is *in personam* is further supported by Chief Justice Lombard's opinion in *Moore McCormick Lines, Inc. v. Richardson*, 295 F.2d 583 (2d Cir. 1961), cert. denied, 368 U.S. 989, 82 S.Ct. 606, 7 L. Ed. 2d 526, cert. denied, 370 U.S. 937, 82 S.Ct. 1577, 8 L.Ed. 2d 806, rehearing denied, 370 U.S. 965, 82 S.Ct. 1580, 8 L.Ed. 2d 835, and authorities cited therein. In that decision, the limitation proceeding was described as the administration of equity in an admiralty court. It was also stated that 'all the ease with which rights can be adjusted and equity is intended to be given to the proceeding.' 295 F.2d at p. 597. *See also, Hartford Accident and Indemnity Co. of Hartford v. Southern Pacific Co.*, 273 U.S. 407, 47 S.Ct. 357, 71 L.Ed. 612 (1927).

*In The Matter of Independent Towing*, 242 F.Supp. at 953-954.

In other words, the limitation fund created by ACL via the LOU is limited to responding to a decree arising out of ACL's exoneration/limitation action. Liability is not created under the LOU for a decree arising out of DRD's limitation action.

### B.     The LOU Was Provided to Secure ACL's Personal Defense

The rules setting forth the procedures for the filing of a limitation action are contained in Rule F of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. A condition to maintaining an exoneration/limitation action is that the shipowner has the option to either deposit with the court a sum equal to the amount of the value of the owner's interest in the vessel and pending freight for the benefit of the claimants in its limitation action or transfer his interest and pending freight in the vessel to a court designated trustee. (F.R.C.P. Supp. F(1).) Courts have approved various types of security for the filing of an exoneration/limitation action, including cash, a bond or a letter of undertaking issued by the vessel's insurers. *See In Complaint of Dammers and Vanderheide*, 836 F.2d 750

(2d Cir. 1988); *Petition of Slobodna Plovibda*, No. M86-209 CA3, 1987 W.L. 20043 (W.D. Mich., March 26, 1987).

In the instant case, when ACL asserted its personal defense by filing its complaint for exoneration from and/or limitation of liability on October 6, 2008 (Civil Action No. 08-4600, R.Doc. 1), ACL prayed for limitation, "should it be held liable in any degree to any party," to the value of the MEL OLIVER, as required by the limitation statute and by Rule F (Civil Action No. 08-4600, R.Doc. 1 at ¶ 16). At the time it filed its exoneration/limitation action, ACL anticipated a claim by the Tintomara Interests.

In compliance with Rule F(4), ACL filed the LOU (08-4600 R.Doc. 1-1) issued by National Liability as its limitation fund. That Letter of Undertaking states in pertinent part:

> In the event after final decree (after appeal if any) may be entered in favor of any claimant described in the action in paragraph 1,[4] then the undersigned party agrees to pay and satisfy up to (and not exceeding) the sum of $780,000.00 with interest at 6%, court costs, and any final decree after appeals, if any, decreed by the court or settled between the parties where said settlement has been made with the approval of the undersigned party, without any final decree being rendered.

As can be seen from the foregoing, the LOU issued by National Liability was issued only for the benefit of a claimant in ACL's exoneration/limitation action that received a judgment (final decree after appeal, if any) against ACL. ACL has been exonerated. Accordingly, there is no liability for National Liability to satisfy under the LOU and the security should be cancelled.

---

[4] Paragraph 1 referred to the anticipated action by ACL seeking exoneration from or limitation of liability.

### C. This Court's Prior Ruling on the Issue

This is not the first time the Tintomara Interests have attempted this argument. This Court, on reconsideration of the Tintomara Interests' Motion for Partial Summary Judgment *In Rem* and based on the very same argument ACL makes in response to the current motion, denied summary judgment against ACL. In denying summary judgment *in rem* against ACL while granting summary judgment *in rem* against DRD, the Court recognized that the security posted by ACL in its exoneration/limitation action as a substitute for the MEL OLIVER, *Hartford Accid. & Indemnity Co. v. Southern Pac. Co.*, 3 F.2d 923, 925-26 (5th Cir. 1925), *aff'd*, 273 U.S. 207, 215 (1927), secured only the liability ACL may have in its exoneration/limitation action (R.Doc. 1084).

## POINT III

### IF THE NATIONAL LIABILITY LOU IS REQUIRED TO RESPOND FOR THE IN REM JUDGMENT ENTERED FOR THE FAULTS OF DRD, THEN THE TINTOMARA INTERESTS ARE ONLY ENTITLED TO A PRO RATA SHARE OF THE FUND

The Tintomara Interests are attempting to do an end run around the fact that their claim to the only funds available to satisfy their claim for interest and costs under its Judgment against DRD is, at best, subject to pro-rata sharing with ACL. The remainder of interpleader funds in the Court's registry is more than sufficient to cover the Tintomara Interests' claim.[5] However, as

---

[5] Indeed, it may be because of the deposit of the interpleader funds that the Tintomara Interests did not contest the contention by DRD that the value of its interests in the MEL OLIVER was zero. However, having made that strategic decision, the Tintomara Interests have waived any right to object because there was no DRD limitation fund available to satisfy the Tintomara Interests' *in rem* Judgment. *Hartford Accid. & Indemnity Co. v. Southern Pac. Co.*, 3 F.2d 923, 925-26 (5th Cir. 1925), *aff'd*, 273 U.S. 207, 215 (1927).

is shown in ACL's Motion to Withdraw Funds from DRD's Interpleader Action (R.Doc. 1545), both the Tintomara Interests and ACL have claims based upon this Court's Judgment affirmed on appeal. The claims have equal footing and, as explained in the memorandum in support of ACL's motion to withdraw funds, since the Tintomara Interests have been fully compensated for their primary damages while ACL still is unpaid for some $63 million of its primary damages, the interpleader funds should be paid only to ACL. The best result that the Tintomara Interests could possibly achieve would be for the Court to apportion the funds on a pro-rata basis, awarding 99% to ACL and 1% to the Tintomara Interests.

Should the Tintomara Interests' argument that National Liability's LOU is available to satisfy this Court's *in rem* Judgment against the MEL OLIVER be accepted by the Court, even though the interpleader funds are available, then the apportionment of the proceeds of the LOU should be the same as the interpleader funds. ACL has equal priority to recovering the balance of its primary damages or, in the alternative, a pro-rata sharing.[6]

The most the Tintomara Interests can recover is 1% of the amount secured by the LOU. However, even this would be an absurd result because ACL has been exonerated and the LOU was only posted as security for claims against ACL in its exoneration/limitation action.

---

[6] Admittedly, it might seem strange that ACL should be allowed to collect from security posted on its behalf. However, except for slightly less than $1.5 million in first-party claims for the loss of the barge and the oil aboard her, ACL's claims are for liability payments made to third-parties for cleaning up the oil spill or for damages resulting from the spill. In return for those payments, ACL received an assignment of those claimants' rights. As such, ACL stands in the shoes of those claimants and enjoys the rights against ACL's limitation fund the same as the Tintomara Interests do.

## CONCLUSION

ACL was exonerated from all liability for the collision and the resulting oil spill. Since the National Liability LOU was only posted to secure ACL's limited liability in its exoneration/limitation action (Civil Action No. 08-4600), National Liability is not liable for the *in rem* Judgment against the MEL OLIVER. Therefore, the Tintomara Interests' motion for summary judgment to allow it to recover its outstanding interest and costs from National Liability must be denied.

If National Liability is required to respond to the *in rem* Judgment against the MEL OLIVER, then the proceeds of the LOU should be applied first to the outstanding primary balance of the Judgment in favor of ACL before it is applied to interest and costs of either the Tintomara Interests or ACL. Alternatively, if ACL is not entitled to priority to the proceeds of the LOU, then the proceeds should be shared pro-rata between the Tintomara Interests and ACL on the basis of their respective damages.

Respectfully submitted,

*/s/ Glenn G. Goodier*
GLENN G. GOODIER, T.A. (#06130)
RICHARD D. BERTRAM (#17881)
Jones Walker LLP
201 St. Charles Avenue – 48th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8174
Fax: (504) 589-8174
ggoodier@joneswalker.com
*Attorneys for American Commercial Lines LLC and National Liability and Fire Insurance Company*

{N2780889.1}

Of Counsel:

John A. V. Nicoletti
Terry L. Stoltz
NICOLETTI HORNIG & SWEENEY
Wall Street Plaza, 88 Pine Street, 7th Floor
New York, New York 10005-1801
Tel:    (212) 220-3830 Fax:  (212) 220-3780
jnicoletti@nicolettihornig.com
tstoltz@nicolettihornig.com

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 3rd day of March, 2014 served a copy of the foregoing pleading on counsel for all parties to this proceeding by electronic filing, facsimile, hand delivery, and/or by mailing the same by United States mail, properly addressed and first class postage prepaid.

*/s/ Glenn G. Goodier*
GLENN G. GOODIER